IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**UNITED STATES OF AMERICA, ex rel.**
**CAMERON JEHL**                                                                 **PLAINTIFFS**

**V.**                                                                            **NO. 3:19-CV-91-MPM-JMV**

**GGNSC SOUTHAVEN LLC D/B/A**
**GOLDEN LIVINGCENTER-SOUTHAVEN;**
**GGNSC ADMINISTRATIVE SERVICES LLC**
**D/B/A GOLDEN VENTURES;**
**GGNSC CLINICAL SERVICES LLC**
**D/B/A GOLDEN CLINICAL SERVICES**                                               **DEFENDANTS**

## ORDER

This matter is before the court on Relator's Motion to Compel and to Determine the Sufficiency of Answers and Objections [239]. As discussed in detail below, the motion is granted in limited part and denied as to the remainder.

### Background

The central issue in the instant case is whether the Defendants are responsible for making, with the requisite scienter, a false claim(s) to the government that Nurse Trofort was practicing nursing at the Southhaven Mississippi facility from April 23, 2013, to December 31, 2013, with a multistate privilege from a compact state permitting her to do so. *See* Amended Compl. [59]. In particular, Relator contends, first, that Nurse Trofort's multistate privileges from the compact state of Virginia were actually invalid because Nurse Trofort's "principal state of residence" was outside of Virginia, and secondly, that Defendants knew the privileges were invalid while she was employed at the Southaven facility.

Despite this seemingly narrow issue, this action has involved at least eight conferences to address discovery issues and an additional ten motions relating to discovery, including at least

two "emergency" motions to compel. The most recent motion to compel, the instant motion, was not filed until May 5, 2021, five days after discovery in the case concluded and well beyond the requisite time period for filing such motions required in L. U. Civ. R. 7(b)(2)(C). Moreover, the instant motion did not ripen for decision until June 22, 2021,[1] which was after the deadline for filing of Daubert and dispositive motions had expired, and such motions had been filed and are pending before the district judge. The trial is set for September 13, 2021. No trial continuance has been sought.

The instant motion is not only untimely, but it also follows a practice of unnecessarily broad and irrelevant discovery demands[2] as is discussed in more detail below.

## Untimeliness

As mentioned above, the Relator's motion to compel was made five days after the close of discovery. Pursuant to L.U. Civ. R. 7(b)(2)(C), "[a] party must file a discovery motion sufficiently in advance of the discovery deadline to allow response to the motion, ruling by the court and time to effectuate the court's order before the discovery deadline."(emphasis added) "The obvious purpose of Rule 7(b)(2)(C) is to resolve disputes over the scope of discovery while time remains to conclude it." *Gipson v. Mgmt. & Training Corp.*, 2018 WL 736265, at *6 (S.D. Miss. Feb. 6, 2018). All non-movants are afforded fourteen days to respond to any motion, and the movant has an additional seven days to file a reply or to let the Court know that he does not intend to reply.

---

[1] This motion [239] and the related filings were filed with redactions pending the Relator's motion to seal [241]. The reply was not filed in unredacted form until June 22, 2021.

[2] *See infra* p. 4 for discussion of prior discovery requests.

District Courts in this State have routinely denied discovery motions in violation of Local Rule 7(b)(2)(C). *See, e.g., Pers. v. Ford Motor Co.*, 2011 WL 13157355, at *2 (N.D. Miss. Aug. 11, 2011) (denying as untimely discovery motions filed three days prior to the close of the discovery deadline); *Gueniot-Kornegay v. Blitz U.S.A., Inc.*, 2013 WL 160259, at *1 (S.D. Miss. Jan. 15, 2013) (denying as untimely a motion to compel filed two days prior to discovery deadline); *Full House Resorts, Inc. v. Boggs & Poole Contracting Grp., Inc.*, 2015 WL 4478495, at *3 (S.D. Miss. July 22, 2015) (denying motions to compel filed six-and-eight days prior to discovery deadline); *Funches v. Mississippi Dev. Auth.*, 2018 WL 9878315, at *2 (S.D. Miss. Feb. 27, 2018) (denying as untimely a motion to compel filed four days prior to the discovery deadline). Further, District Courts in this State have routinely upheld a magistrate judge's denial of a motion to compel as untimely due to non-compliance with Local Rule 7(b)(2)(C). *See, e.g., Seiferth v. Helicopteros Atuneros*, 2008 WL 5234416 (N.D. Miss. Dec. 12, 2008) (upholding the magistrate judge's denial of a motion to compel as untimely when the motion was filed one day prior to the expiration of the discovery deadline and would not have been ripe for ruling more than 28 days after the discovery deadline); *McReynolds v. Matthews*, 2017 WL 7037745 (S.D. Miss. Sept 20, 2017) (upholding the magistrate judge's denial of a motion to compel as untimely filed 21 days prior to the discovery deadline); *Tubwell v. Specialized Loan Serv. LLC*, 2019 WL 1421156, at *3 (N.D. Miss. Mar. 29, 2019) (affirming the magistrate judge and finding that the denial of plaintiff's motion to compel filed 18 days after the discovery deadline was not clearly erroneous or contrary to law); *Burroughs v. City of Laurel, Miss.*, 2021 WL 1723092, at *4, n. 3 (S.D. Miss. Apr. 30, 2021) (affirming the magistrate judge's denial of a motion to compel filed one day prior to the discovery deadline).

In support of his motion, the Relator cites two cases in our sister courts that have granted untimely discovery motions for good cause.[3] However, these cases merely demonstrate instances where courts have made exceptions due to specific factual scenarios, which are inapplicable here.[4] Moreover, it is worth noting that the Fifth Circuit has affirmed the district court's ability to deny motions to compel as untimely even where the motion may otherwise be meritorious. *See, e.g., Grey v. Dallas Indep. Sch. Dist.*, 265 Fed. Appx. 342, 348 (5th Cir. 2008) (per curiam) ("Even if we accept [plaintiff's] contention that additional discovery would have enabled him to prove his [discrimination claims], we are not required to find that the district court abused its discretion by denying his motion to compel discovery, because it was filed on the day of the discovery deadline after an extensive discovery period").

In short, given the lack of persuasive factual and legal arguments by the Relator, the motion to compel is on the whole untimely under L. R. 7(b)(2)(C). Nevertheless, certain further responses will be compelled in accordance with the discussion below.

Overly Broad, Burdensome, and Irrelevant Discovery

In addition to its untimeliness, the discovery is generally overly broad, burdensome and, as drafted, seeks information not relevant or proportional to the needs of the case – a practice

---

[3] *See Hostetler v. Dillard*, No. 3:31cv351-DCB-MTP, 2014 WL 12708703 (S.D. Miss. Nov. 14, 2014)*; Guthrie v. Quitman County Hosp., LLC*, No. 3:13–CV–244–M–A, 2014 WL 8276240 (N.D. Miss. Oct. 27, 2014).

[4] In *Hostetler*, the court found good cause to grant an untimely discovery motion because the case had: (1) recently been reassigned, which required an extension of the trial date; (2) there were other discovery disputes pending; and (3) the plaintiffs presented evidence that they were unaware that the defendants were withholding information. Here, such circumstances have not been persuasively demonstrated. In fact, the parties here were given ample time and guidance from the court to resolve the discovery disputes before the discovery deadline. In *Guthrie*, the court found good cause because the deadlines in the case management order did not allow for sufficient time to respond to the parties' expert designations. Here, there were no such scheduling conflicts in the case management order. In fact, the Relator sought, and was granted, multiple extensions of the discovery related deadlines.

which, as noted, is not new to this litigation.[5]

In this particular motion, the Relator seeks to compel an array of discovery as follows: further responses from Defendant GGNSC Administrative Services (the "Admin.") to four interrogatories in (13,14,15, and 16) propounded by him on March 24, 2021, responses to which were due and were made on April 23, 2021, approximately a week before discovery expired; requests for admission (7, 8, 9, and 10) propounded at the same time as the third set of interrogatories; and additional miscellaneous other information not part of Relator's third set of discovery.

    A. <u>Interrogatory Nos. 13–15</u>

The first three interrogatories at issue are as follows:

> 13. Since January 1, 2010, has the United States denied, either in whole or in part, a claim for payment presented by or on behalf of a Golden Living Facility because, during any portion of the time-period for which payment was sought or received, the director of nursing of the Facility did not possess the credentials he or she was

---

[5] By way of historical example is the 30(B)(6) deposition notice propounded to one of the defendants, GGNSC Administrative Services LLC, on December 22, 2020 [136]. The topics listed there, including subparts, exceeded 70 in number and sought, such irrelevant and burdensome discovery as the following:

> Types and categories of documents and communications that Southaven provided to owners, members, officers, managers, directors in the ordinary course of business of Southaven from 1/1/13 to 5/131/14; Types and categories of documents and communications that Southaven provided to GGNSC Admin Services LLC and or GGNSC Clinical Services LLC in the ordinary course of business; Types and categories of documents and communications that Southaven provided to GGNSC Holdings, LLC, Golden Gate National Senior Care LLC ,GGNSC Equity Holdings LLC, Drumm Corp. and Ronald Silva; Measures and steps taken by Southaven or on behalf of Southaven to search for and locate documents and information responsive to Relator's first and second sets of interrogatories and requests for production of documents to Southaven, including (a) Each person who assisted in searching for responsive documents and information on behalf of Southaven, b) each person that Southaven or any person on behalf of Southaven has contacted or consulted in an effort to locate responsive documents and information and c) each digital or physical location where Southaven or a person on their behalf searched for responsive documents or information; The meaning and basis for the responses, statements, denials, defenses and allegations set forth in Southaven's briefs in support of its various motions to dismiss, it responses to relator's first and second set of interrogatories and request to produce and first set of requests for admissions. . . .

required to possess?

14. Since January 1, 2010, has the State of Mississippi denied, either in whole or in part, a claim for payment presented by or on behalf of a Golden Living Facility because, during any portion of the time-period for which payment was sought or received, the director of nursing of the Facility did not possess the credentials he or she was required to possess?

15. Since January 1, 2010, has the United States denied, either in whole or in part, a claim for payment presented by or on behalf of a Golden Living Facility because, during any portion of the time-period for which payment was sought or received, care was provided at the Facility by a nurse who did not possess the credentials required to provide such care?

In response to the each of the interrogatories, Admin, asserted essentially the same response as follows:

> Defendant objects to this Interrogatory as seeking information that is irrelevant and requiring a search for information that is overly broad, unduly burdensome, not reasonably limited in time and/or scope and not proportional to the needs of this case, considering the factors of Rule 26(b)(1). The Request is not relevant because there is no dispute in this action that the relevant Nurse possessed an active and current license during the full period in which she was employed so the Request inquiries into an issue not present in this action. GGNSC Administrative Services further objects to the term "credentials" as it is ambiguous and vague. The Interrogatory seeks information that would require GGNSC Administrative Services to search the files of over three hundred (300) skilled nursing facilities, with an estimated average of one hundred (100) resident beds and numerous resident discharges and new resident admissions over the course of each year and for a time-period dating back more than ten years ago and extending for a time period of more than six years. Subject to and without waiving these objections, based upon the searches performed and inquiries made, GGNSC Administrative Services states that upon information and belief, it has no reasonable basis to believe that from 2013 through 2014 the United States [or the state of Mississippi] denied, either in whole or in part, a claim for payment presented by or on behalf of Golden Living Center – Southaven or any Facility because director of nursing did not possess a license that was "Current Active." [292]

Relator counters these objections in his motion to compel stating, "those responses claim Defendant will have to search hundreds of facilities, but they do not even attempt to explain how the files are stored, how they can be searched, or any associated burdens. The requested information may be stored electronically and can be searched with relative ease." [295]. And, regarding the Defendant's assertion that it is undisputed that Nurse Trofort possessed an "active and current" license from the compact state of Virginia for the full relevant period, the Relator asserts, "this objection borders on the absurd, as one of the key issues being litigated in this case is whether [Nurse] Trofort was validly licensed to practice nursing in Mississippi at the time Defendants employed her." [293]

Finally, with regard to the Defendant's assertion that the term, "credentials," was vague and ambiguous, Relator asserts, "Defendant ignores the fact that the term 'credentials' was very specifically defined by Relator. . . as referring to a nursing license, privilege to practice nursing, and/or any other certification required to be possessed by a nurse [defined by Relator to mean a nurse assistant, a certified nursing assistant ("CNA"), a licensed practical nurse (LPN), or Registered Nurse (RN)] under state and/or federal law." *Id.*

As noted above, the central issue in the instant case is whether Nurse Trofort's multistate privileges from the compact state of Virginia were actually invalid between April 23, 2013, to December 31, 2013, because her "principal state of residence" was outside of Virginia; and if so, whether Defendant knew the privileges were invalid while she was employed by it, but falsely represented to the government otherwise. In short, the issue is *not* whether *any* employee performing nursing services or assisting a nurse from any of 300 facilities from 2010 through 2016 did or did not "possess," aside from a license to practice or privileges to do so, some

undefined "other certification" required to be possessed under the law of any state or of the federal government.

In the undersigned's view, requiring such an extensive search of records beginning over a decade ago and extending over six years, for hundreds of skilled nursing facilities for evidence of any occasion where the government denied in whole or part a request for payment by one of the facilities because any employee, from a registered nurse to a nurse assistant, did not "possess" any such "other certification" under state and/or federal law is on its face unnecessarily burdensome and seeking of irrelevant information.

While whether the government refuses to pay claims based on non-compliance with a particular statutory, regulatory, or contractual requirement is a factor bearing on the materiality of a false claim, these discovery requests go well beyond any such particular inquiry. *See Universal Health Services, Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989 (2016). In sum, further responses to these requests as drafted, themselves made for the first time on the eve of the discovery period, would require a burdensome review of copious documents in search of irrelevant information over an extensive and unwarranted time frame.

B. Interrogatory No. 16

The fourth interrogatory at issue is as follows:

> Describe in detail any investigation, search, inquiry, and/or review that you conducted to determine your responses to these Interrogatories and Requests for Admissions.

Defendant responded to Interrogatory No. 16 as follows: "GGNSC Administrative Services objects to this Interrogatory as it seeks information that is privileged work product and that is also protected by the attorney-client privilege." On the other hand, Relator's position is that it is entitled to know these details, including a "description of everywhere the defendant did

(and did not) look." [293].

In the court's view, this request is patently disproportionate to the needs of the case. Even if the request was timely made, requiring a party to describe, in detail, every review, search, investigation and inquiry made of others is unnecessarily broad and burdensome. And, requiring a privilege log with respect to such information would appear likewise. Thus, the motion to compel a further response at this late date is denied.

As concerns the motion to compel further responses to Request Admission Nos. 7, 8, 9, and 10, it appears they are essentially each a mirror image – albeit in request for admission form – of the foregoing interrogatories and the objections and responses are essentially the same as well. Accordingly, the court finds it unnecessary to repeat here the reasons it finds the motion, with respect to the requests for admissions, to also be without merit.

<u>Miscellaneous Discovery Issues</u>

As mentioned above, the motion to compel includes other complaints related to discovery propounded and responded to in 2020, which for the most part – and in an effort to aid the reader in following them – have been recited verbatim below, as have the responses and replies thereto. As noted above, and discussed with regard to each below, the court finds, with some limited exceptions, the motion in regard to these miscellaneous matters to be without merit.

Relator first argues that Defendant failed to provide a background report in response to a request for production of documents that deposition testimony later revealed to be a standard document check by Defendants for new hires.

The relevant Request for Production, Defendant's responses. . . and Relator's reasons for this motion to compel are set forth below:

REQUEST NO. 6

Please produce the personnel file and all other documents and communications related to Lionelle Trofort's employment as Director of Nursing at Golden Living, including but not limited to, any written applications, communications, or other documents submitted to you by Ms. Trofort before her hiring as Director of Nursing at Golden Living, and any memoranda or electronic communications related to Ms. Trofort's performance or conduct as Director of Nursing, the status of her nursing license, and/or the quality of care she provided to Golden Living residents.

RESPONSE TO REQUEST NO. 6
Subject to Relator's limitation on this request, the Court's order, and the general objections, and without waiving its objections, to the extent responsive documents exist, they will be produced upon the execution of a Protective Order.

SUPPLEMENTAL RESPONSE TO REQUEST NO. 6
(09/04/2020)
Subject to and without waiving its objections, Southaven refers Plaintiff to the documents produced, Bates numbered GL - 0000085 - 0000233. Additional documents responsive to this request may be found at Bates numbered GL - 0000881 through GL - 0001020

Relator's Reasons Supporting the Motion to Compel:

Relator learned during a deposition on March 19, 2021, that Defendants obtained a "county-level background report" regarding Lionelle Trofort in 2013 that would show Ms. Trofort's address in 2013 and for the previous five years. Ms. Trofort's primary state of residence when she was employed by Defendants and Defendants' knowledge of her primary state of residence are key issues in this case.

By way of response to the motion to compel, Defendant asserts:

Relator complains once again that the personnel file of Nurse Trofort is not complete and does not include all documents Relator wants it to include. This time, Relator cites the deposition of Terrie Gamble, specifically deposition testimony that she gave regarding county-level background checks. Relator complains in his motion that "the county-level background report" should have been produced and should have been in Nurse Trofort's personnel file. However, Ms. Gamble clearly explained in her deposition that in this case this background check application would not have been retained because the background check was clear… (Transcript omitted). Not only do Defendants not possess the document Relator

seeks in this Motion, but Relator was also expressly told more than once it does not exist.

Relator's reply to this response:

> Defendants also claim Relator is requesting documents he "was expressly told more than once . . . do [ ] not exist" (Dkt. No. 256 at 9-10), but they conflate the county-level background report Relator requested with the application for the background check he did not request. Ms. Gamble testified the application Ms. Trofort filled out before the background check would not have been retained, but Relator is asking for the report, not the application. To the extent Defendants have the report, they should be ordered to produce it.

The undersigned concludes that even though filed too late, and it appears Defendant's already stated position is that they have previously produced all documents in their possession or control from the relevant personnel file of Ms. Trofort or that are related to Ms. Trofort's hiring, to the extent this is not accurate, and Defendants who responded to the motion to compel[6] do possess or control such a discrete document as the alleged background report, they should produce it within two (2) days hereof.

Next, Relator complains:

> Defendants failed to provide forms submitted with cost reports that deposition testimony on April 6, 2021, revealed were required to be submitted.

Relator cites the following requests for production, responses, etc., as relevant to these documents:

> REQUEST NO. 3
> Please produce all cost reports submitted to the United States related to care provided to Medicare beneficiaries of Golden Living in 2013 and any attachments, appendices, exhibits, or other documents submitted to the United States with such cost reports.
>
> RESPONSE TO REQUEST NO. 3

---

[6] Albeit confusingly, it appears that the instant motion to compel a further response to request for production 6 is addressed to one defendant, Admin., yet the request for production quoted (#6) was actually propounded to a different defendant and all defendants filed the response to the instant motion to compel.

> Defendant incorporates its general objections and specifically objects to any production beyond the Relator's limitation on this request and the Court's order. Subject to and without waiving any objection, to the extent responsive documents for Southaven exist, they will be produced upon the execution of a Protective Order.
>
> SUPPLEMENTAL RESPONSE TO REQUEST NO. 3
> (09/04/2020)
> Subject to and without waiving its objections, Southaven refers Plaintiff to the Cost Reports produced, Bates numbered GL - 0000001 - 0000066.
>
> REQUEST NO. 11
> Please produce all cost reports submitted to the United States related to care provided to Medicare beneficiaries of Golden Living in 2014 and any attachments, appendices, exhibits, or other documents submitted to the United States with such cost reports.
>
> RESPONSE TO REQUEST NO. 11
> GGNSC Southaven objects to this Request as overbroad and not limited in scope. Subject to and without waiving these objections, GGNSC Southaven is producing documents Bates numbered GL 0001687 through 0001725.

Relator asserts that he learned through his expert and during Defendants' deposition of his expert on April 6, 2021: "[f]or Defendants to claim reimbursement for Medicare bad debts on their 2013 and 2014 cost reports, they were required to submit a CMS 339 form with each cost report. The CMS 339 forms are relevant to the damages at issue in this case, yet none were produced."

In response, the Defendant asserts:

> For the first time on April 6, 2021, Relator requested in an email production "339 Forms" "consistent with Mr. Mertie's [Relator's designated expert] testimony" earlier that same day. Relator then related this new request to Requests 3, 11 and 18 to GGNSC Southaven, LLC. Exhibit A, pp. 5-6. The "339 Forms" are CMS forms that ask an entity about bad debts that it has listed on a cost report. By 2013 and 2014, that form was incorporated into the cost report, specifically Worksheet S-2, and thus the information that is sought by CMS in the 339 Form is contained within the cost reports that have been produced. In short, there is nothing to produce.

In reply, the Relator argues:

> The Defendants claim there is "nothing to produce" because they were "incorporated into the cost report" in "Worksheet S-2" is "inaccurate." The only information Worksheet S-2 provides about Medicare bad debts is answers to four "yes or no" questions, including whether the provider is seeking reimbursement for Medicare bad debts. (Ex. 6 to Reply, Excerpts from Golden Living Cost Report.) What Relator asked for, and what his expert testified under oath exists, is a form required to be submitted with Medicare cost reports "that has a detail by detail for each patient, with the dates of service, as well as the amount that was written off and ultimately claimed on the cost report." (Dep. S. Mertie at 86:11-20, Dkt. No. 239-8.) Defendants do not dispute the information's relevance and they should be ordered to produce it, whether it be the CMS 339 forms or some other document Defendants submitted with their cost reports. Relator asked for these documents on April 9, 2020, and October 12, 2020, when he requested "any attachments, appendices, exhibits, or other documents submitted to the United States with such cost reports." (Exs. C & F to Mot. Compel, at Requests for Prod. 3, 11, Dkt. Nos. 239-3, 239-6.) Defendants did not produce them. And when it became clear to Relator during expert discovery that they withheld them; he promptly requested the forms on April 6, 2021.

In the undersigned's view, it appears the requests at issue (3 and 11) were propounded to GGNSC, not Admin., to whom the motion to compel is directed. But, in any event, the parties who responded to the motion to compel have clearly stated their position: they say the referenced documents do not exist except as produced and the undersigned is unconvinced that the Relator has demonstrated, on this record, that this is a misrepresentation.

Additionally, the Relator asserts he served a request for production of claims for payment after learning during Defendant Admin's 30(b)(6) representative deposition on March 16, 2021, that Defendants presented false billing claims in addition to the MDS and cost reports. Relator cites a request for production and Defendant's response as well as the reasons supporting the motion to compel as follows:

REQUEST NO. 14
Please produce all claims for payment presented to the United States and/or the State of Mississippi that related to care provided to residents and patients at the Golden Living facility in Southaven, Mississippi, from April 23, 2013, through March 4, 2014, including but not limited to, electronic and paper claims submitted on forms CMS-1450 and UB-04.

RESPONSE TO REQUEST NO. 14
Upon information and belief, the documents requested are claims that were transmitted to the government using an electronic claims system operated by the United States and State government and made available to providers to process claims. The claims requested are claims for Golden Living Center – Southaven which has not operated a skilled nursing facility or been a provider since 2016. GGNSC Administrative Services, which provided administrative services to Golden Living Center – Southaven engaged in research to determine whether it had possession, control, or custody of the requested documents and determined that it did not possess, control or have custody of any claims documents responsive to this request upon receipt of this Request for Production No. 14. Reasonable efforts, and even efforts beyond what is required by the Federal Rules of Civil Procedure, have been made to search for and locate the requested documents. As a result of the reasonable and diligent efforts of GGNSC Administrative Services, it has very recently obtained access to certain Golden Living Center – Southaven Medicaid claims documents. These documents are being reviewed and redacted for production and will be seasonably produced after all HIPAA private health information (PHI) is redacted. GGNSC Administrative Services will continue to make reasonable efforts to locate and/or access Golden Living Center – Southaven Medicare UB-04 forms (or CMS-1450 forms) and will seasonably produce these documents with PHI redacted if GGNSC Administrative Services obtains possession, control, or custody of these documents at some time in the future.

Relator argues:

"The Defendant has not objected to producing the requested documents but has failed to produce any documents or to communicate regarding whether it is still searching for additional claims documents."

In response, the Defendant explained:

> As background and as explained in deposition testimony, presentation of claims to the government (CMS/ Medicare/ Medicaid) is done through an electronic portal that is set up by the government and that a provider (with a provider number) can access in order to present claims and access related information. When GGNSC Southaven, LLC transferred its operation (and provider number) to the new owner of the skilled nursing facility in 2016, Southaven no longer had access to that portal. It is no longer Southaven's. Nevertheless, and although not required by the Federal Rules of Civil Procedure, Southaven has attempted to go through the process to request access to this documentation for production in this case. That process is still underway and the documents that have been obtained are still being prepared for production.

The Relator, by reply, asserts:

> There is no dispute the billing claims requested are relevant and must be produced. Defendants' only argument is their delay is justified because they "did not have custody, possession or control of these documents upon service of these requests." (Dkt. No 256 at 17.) This claim is belied by the fact that Defendants obtained possession of certain of the requested documents. (Id. at 18.); *see, e.g., Wilemon Foundation, Inc. v. Wilemon,* 2021 WL 1649507, at *5 (N.D. Miss. Apr. 27, 2021). Defendants should be ordered to produce the billing claims.

In the undersigned's view, defendants have previously agreed to produce these documents, and to the extent the defendants have not completed such production, they shall do so within two (2) days from the date hereof or show good cause in writing on the docket for failing to do so.

Relator's next discovery issue is described by him as follows:

> Relator served requests for Minimum Data Sets submitted to the United States or the State of Mississippi. The request and Defendant's response and the reasons supporting the motion to compel are set forth below:
>
> REQUEST NO. 5
> Please produce all Minimum Data Sets submitted to the United States and/or the State of Mississippi related to care provided to Medicare and Medicaid beneficiaries of Golden Living between April 23, 2013, and December 31, 2013, and any attachments,

appendices, exhibits, or other documents submitted with such Minimum Data Sets.

RESPONSE TO REQUEST NO. 5
Defendant incorporates its general objections as well as its objections to Interrogatory No. 8. Moreover, Defendants object because production would be unduly burdensome (and substantially more than a handful of documents) because it would include multiple comprehensive HIPAA protected medical reports for more than one hundred patients and consent for production of private health information has not been obtained from the patients.

SUPPLEMENTAL RESPONSE TO REQUEST NO. 5 (11/06/2020)
Subject to and without waiving any objections, and per agreement between the parties during a discovery conference on October 21, 2020, this Defendant is producing documents Bates numbered GL - 001092 through GL - 001659.

REQUEST NO. 13
Please produce all Minimum Data Sets submitted to the United States and/or the State of Mississippi related to care provided to Medicare and Medicaid beneficiaries of Golden Living between January 1, 2014, and March 5, 2014, and any attachments, appendices, exhibits, or other documents submitted with such Minimum Data Sets.

RESPONSE TO REQUEST NO. 13
Defendant incorporates its general objections as well as its objections to Interrogatory No. 8. Moreover, Defendant object because production would be unduly burdensome (and substantially more than a handful of documents) because it would include multiple comprehensive HIPAA protected medical reports for more than one hundred patients and consent for production of private health information has not been obtained from the patients. Subject to and without waiving any objections, and per agreement between the parties during a discovery conference October 21, 2020, this Defendant refers Plaintiff to documents previously produced Bates numbered GL 0001092 through 0001659.

Relator argues:

> This request was already the subject of a motion to compel regarding providing the signature pages for the MDS. This Court ordered production by April 6, 2021. *See* Order on Emergency Motion to Compel Discovery, Dkt. # 210, PageID #: 1831. Out of the hundreds

> of MDS pages provided, Defendants produced 962 MDS without a signature verifying assessment completion and which look markedly different from the MDS with a signature. The Court should order full production of MDS with signatures to determine whether Ms. Trofort signed any of the MDS.

In response to the motion to compel and Relator's assertions in support thereof, Defendant writes:

> As agreed, GGSNC Southaven, LLC produced Section Z of all MDS's which includes the signature page of each MDS. All have been produced. Relator now complains that some of these signature pages did not include verified signatures. Relator only argues this issue in hopes that maybe Nurse Trofort's signature is on an MDS page. However, the deposition testimony of numerous witnesses has been that the Director of Nursing does not sign off on MDSs, but that the MDS Coordinator or RNAC (Registered Nurse Assessment Coordinator) is the employee who oversees the MDSs and signs off on these forms. All MDS signature pages have been produced. If the ones produced are not verified, then that is in all likelihood how they were in 2013 and 2014.

Relator replied:

> He asked for signed versions of 962 Minimum Data Sets ("MDS") produced by Defendants without signature verifications and Defendants do not dispute that the MDS containing signature verifications are relevant, because they may show, as alleged in the Second Amended Complaint, the unlicensed Ms. Trofort was coordinating and signing off on MDS in violation of federal law. See 42 C.F.R. § 483.20(h); (Second Am. Compl. ¶ 37.) Defendants cannot avoid producing relevant documents because defense witnesses supposedly testified the documents do not contain the information. (Dkt. No. 256 at 18.) Relator is entitled to verify that himself, particularly as Ms. Trofort said she could not remember whether she signed MDS. (Ex. 7 to Reply, Depo. L. Trofort at 232-233.) As for the claim they "in all likelihood" do not exist, the Court should order Defendants to either confirm that or produce them.

To resolve this issue – although it appears the defendants responding to the motion to compel have stated unequivocally that all of the requested documents have been produced to the extent they exist – they shall verify in writing within two days that a search, performed in

compliance with the applicable federal civil rules of procedure, has been conducted and all of the requested documents in their possession or control have been produced.

Lastly, though it is unclear exactly which, if any remaining, interrogatory answers have not been verified by the Defendants, to the extent any remain unverified, they shall verify them within two (2) business days hereof.

**SO ORDERED**, this the 25th day of June, 2021.

/s/ Jane M. Virden
**UNITED STATES MAGISTRATE JUDGE**