IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. CAMERON JEHL,<br><br>Plaintiffs,<br><br>v.<br><br>GGNSC SOUTHAVEN LLC D/B/A GOLDEN LIVING CENTER-SOUTHAVEN et al.,<br><br>Defendants. | Case No. 3:19cv091-MPM-JMV |

**DEFENDANTS' MEMORANDUM IN SUPPORT
OF THEIR MOTION FOR ATTORNEYS' FEES**

Defendants submit this Memorandum in Support of their Motion for Attorneys' Fees under the False Claims Act (FCA), 31 U.S.C. § 3730(d)(4), and the Court's inherent powers. Relator's action is clearly frivolous and manifests a long pattern of vexatious and harassing conduct against Defendants. The Court should award Defendants their reasonable attorneys' fees, expenses, and costs as a result of Relator's frivolous, vexatious, and harassing conduct.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

**A.      Court Rulings at Summary Judgment**

There have been two court rulings on the parties' Summary Judgment briefing.

On July 6, 2021, Judge Mills issued a Show Cause Order regarding why Relator's lawsuit should not be dismissed. The Court found that the government, through the Centers for Medicare & Medicaid Services (CMS), which promulgates rules governing the Medicare and Medicaid programs, issued rules regarding when a nursing license is invalid and, under the government's clear rules, Nurse Trofort possessed a valid license. *See* ECF 303 at 13. After reviewing the

1

summary judgment record in considering whether Relator satisfied the FCA's "demanding" and "rigorous" elements, Judge Mills found Relator's "rather bland and generic allegations" that Southaven falsely certified that it was in compliance with provider agreements based upon a single nurse allegedly lacking a multistate license to be insufficient. *See* ECF 303 at 7. Further, the Court found Relator's FCA scienter contentions to be "rather weak," "indirect," and "vague." *Id.* at 10. The Court also found Relator's materiality contentions to be insufficient in light of the "minor licensing issue[]" alleged in the case. *Id.* at 4. The Court concluded that in light of the summary judgment record, FCA liability imposed on Defendants would be "unfair[]," "absurd[]," "unjustifiable," "disproportionate," and "unjust." *Id.* at 3-4, 7, 10-11.[1]

On March 30, 2022, after briefing on Judge Mills' Show Cause Order, this Court ruled under the undisputed facts that Relator's action must be dismissed because under the government's "clear" and "unequivocal[]" rules, Relator could not state an FCA claim. *See* ECF 327 at 10. Specifically, the Court, like Judge Mills, concluded that CMS issued objective "bright line" rules governing health care professionals' licensing "so that facilities have guidance regarding when they must terminate needed healthcare professionals and so that the presumption of innocence and due process applies." *Id.* at 8. Under these rules, CMS took the position that a license is only invalid if a state licensing board issues a final adverse action from which there is no appeal. *Id.* at 8-10 (noting that under CMS's "clear rules," CMS "unequivocally" took the position that a

---

[1] Indeed, as to the absurdity of the Relator's action, the Court noted in particular on three separate occasions in the course of a fifteen-page order that it would be absurd for Relator to believe that he was entitled to recover $30 million based upon every federal payment made to Southaven when Nurse Trofort, under federal law, always possessed a valid license. *See* ECF 303 at 5 (noting in commenting on Relator's theory that the Court "presumes that Congress did not intend ***absurd*** results when it enacted the FCA, and a scheme whereby the rather underwhelming allegations in this case might give rise to an eight-figure recovery in damages and penalties, much of it mandatory, is, in fact, ***absurd***") (emphasis supplied); *see also id.* at 3 (noting that "calculating damages unrelated to actual harm or injury may present a potential unfairness, or even ***absurdity***, in the law") (emphasis added). *See also U.S. ex rel. Wall v. Circle C Constr., LLC,* 868 F.3d 466, 470-72 (6th Cir. 2017).

2

multistate license is invalid only after a state governing board determines it is invalid in a final adverse action from which there is no appeal). Here, under the undisputed objective facts, Virginia never took any final adverse action against Nurse Trofort's license and hence her license, by definition, was always valid – not invalid, as Relator contended. *Id.* at 10.

### B. Relator's Lawsuit

Relator, a lawyer who has never worked for Defendants, filed an FCA action and common law claims against Defendants. Relator's initial Complaint asserted that eight Defendants breached the FCA and included common law claims based on theories that courts have uniformly rejected in dozens of published cases.[2] ECF 2.

---

[2] Defendants pointed out to Relator that its common law claims were facially frivolous because the FCA, on its face, only authorizes private parties to sue for violations of the FCA, and dozens of cases have uniformly rejected Relator's claims that he has standing to pursue non-FCA related causes of action. *See* ECF 32 at 7-8 (citing *U.S. ex rel. Allen v. Alere Home Monitoring, Inc.,* 334 F. Supp. 3d 349, 366-67 (D. Mass. 2018); *U.S. ex rel. Ligai v. ETS-Lindgren Inc*., No. H-11-2973, 2014 U.S. Dist. LEXIS 129164, at *42, (S.D. Tex. Sept. 16, 2014) ("Courts do not allow relators to assert common-law claims based on the 'partial assignment' of the government's FCA claims under 31 U.S.C. § 3730(b).") (citation omitted), *aff'd*, 611 F. App'x 219 (5th Cir. Aug. 4, 2015); *U.S. ex rel. Acad. Health Ctr. v. Hyperion Found., Inc.,* No. 3:10-CV-552, 2014 U.S. Dist. LEXIS 93185, at *140-41 (S.D. Miss. July 9, 2014); *U.S. ex rel. Gonzalez v. Fresenius Med. Care N. Am.*, No. EP-07-CV-247, 2008 U.S. Dist. LEXIS 78251, at *25–26 (W.D. Tex. Sept. 2, 2008); *Haas v. Gutierrez*, No. 07 CV 3623, 2008 U.S. Dist. LEXIS 48762, at *15 (S.D.N.Y. June 26, 2008) (rejecting plaintiff's common law causes of action for unjust enrichment, payment by mistake, recoupment of overpayment, and fraud because Congressional grant of private standing to sue in FCA cases does not extend to common law causes of action); *U.S. ex rel. Rockefeller v. Westinghouse Elec. Co.*, 274 F. Supp. 2d 10, 14 (D.D.C. 2003) ("A relator in a *qui tam* FCA action does not have standing to assert common law claims based upon injury sustained by the United States.") (citations omitted); *U.S. ex rel. Phipps v. Comprehensive Cmty. Dev. Corp.*, 152 F. Supp. 2d 443, 451 (S.D.N.Y. 2001) (the relator's "common law claims must be dismissed because [the relator] lacks standing to bring common law claims on behalf of the Government under the FCA"); *U.S. ex rel. King v. Jackson Cty. Hosp. Corp.*, No. 5:99cv73, 2001 U.S. Dist. LEXIS 21706, at *33–34 (N.D. Fla. Aug. 17, 2001) ("Since Relator does not allege that he suffered an injury in fact, *i.e.*, that he was defrauded or that Defendants were unjustly enriched at his expense, he lacks standing to assert common law claims.") (citation omitted); *U.S. ex rel. Walsh v. Eastman Kodak Co.*, 98 F. Supp. 2d 141, 149 (D. Mass. 2000) ("[T]he FCA does not give relators the right to assert common law claims on behalf of the United States.") (citations omitted); *U.S. ex rel. Grant v. Rush-Presbyterian/St. Luke's Med. Ctr.*, No. 99 C 06313, 2000 U.S. Dist. LEXIS 21010, at *16-17 (N.D. Ill. Jan. 16, 2001) ("The government also urges this Court to dismiss Count II, by which [the relator] seeks to hold [the defendant] liable under the common law of unjust enrichment. While as 'relator', [he] could have standing to pursue on behalf of the United States claims defined in the False Claims Act, a common law cause of action for unjust enrichment is separate and distinct from an FCA claim…. [The relator] has no standing to bring an unjust

Relator's initial and Amended Complaint asserted that Defendants' claims were false because a single nurse, who undisputedly was educated and licensed as a nurse, purportedly lacked a multistate license. Specifically, Relator alleged that prior to Nurse Trofort's Southaven employment, Virginia had revoked her multistate license and changed it to single-state status and her license "**was never reinstated to multistate status**." ECF 2, ¶ 64 (emphasis added); *see also* ECF 59, ¶ 60 ("[O]n or around February 27, 2013, … Virginia revoked her multistate license and changed it to single-state status. **It was never reinstated to multistate status.** Thus, Ms. Trofort did not possess a valid multistate license during the Relevant Time Period") (emphasis added).

Relator's claim was entirely, demonstrably, and publicly false. Nurse Trofort, undisputedly, did in fact have a Virginia nursing license ***and*** a multistate nursing license when she was hired at Southaven and throughout her tenure. *See* ECF 303 at 12 (Judge Mills' decision noting that it "is undisputed that there was no 'final adverse action' taken with regard to Nurse Trofort's licensing status" during her Southaven employment); ECF 327 at 9-10 (Court's Summary Judgment Ruling noting that during the relevant time period Virginia had not "taken any action, let alone a final adverse action, against Trofort's professional license, meaning that under CMS's clear rules, her nursing license was current active and, therefore, valid during the entire period of her employment at Golden Living"). Relator did not know that fact because the only information Relator checked prior to lawsuit was public information from a Virginia website that at one point in time, Virginia had revoked Nurse Trofort's Virginia multistate

---

enrichment claim against [the defendant] because the benefits at issue, federal health insurance payments, were conferred by the United States, not the relator, and if they were unjustly retained it would be at the Government's expense, not [the relator's].") (citations omitted)).

4

license. *See* ECF 247 at 23 (citing Relator's Dep. at 68:25-69:15) (excerpts attached at ECF 246-16 at PageID # 2479-80). Neither Relator, a lawyer himself, nor Relator's counsel ever bothered to check whether Nurse Trofort's multistate license had been reinstated prior to her employment at Southaven before filing their lawsuit and accusing Defendant of fraud based upon that allegation. *Id*. at 72:1-7 ("Q. Now, before filing your action, did you ever check with the Virginia nursing board to find out whether her [Nurse Trofort's] license had been reinstated prior to the time in which she was actually hired at Southaven? A. Did I check with the Virginia nursing board? No.").

In Defendants' initial motion to dismiss, Defendants pointed out to Relator, and provided documentation plainly demonstrating that at the time of Nurse Trofort's employment at Southaven, Southaven obtained direct, unrebutted proof from Virginia that Nurse Trofort held a valid multistate license at all times. *See* ECF 31-1, 31-2.

Defendants assumed that providing Relator with this unrebutted evidence would obviously cause Relator to abandon the lawsuit. When Relator did not drop the lawsuit, Defendants made a simple inquiry of Virginia to establish that, contrary to Relator's false core allegation in his Complaints, Virginia had in fact reinstated Nurse Trofort's multistate license prior to her employment at Southaven. Virginia submitted an affidavit affirming that directly contrary to Relator's allegation, it had in fact reinstated her license. *See* ECF 247 at 5, n.5 (citing ECF 246-4, Virginia affidavit that Nurse Trofort first acquired a multistate license in 2005 and undisputedly held a current active Virginia license with multistate privilege from March 21, 2013 to May 31, 2015; Nurse Trofort worked at Southaven within the time period she held a current active multistate Virginia license, from April 23, 2013 to March 4, 2014).

5

Defendants, again, believed that unrebutted proof that Nurse Trofort possessed a valid multistate license during the time period in question, and that Relator was demonstrably wrong in asserting that her multistate license was revoked and never reinstated, would terminate this litigation. *Id.* But, after receiving a copy of the Virginia Affidavit from defense counsel, rather than concede the obvious – that his FCA action was based upon a fundamental flaw: namely, Relator's failure to check the public records upon which he had based his action – Relator chose, instead, to simply change the theory of the case. He shifted from arguing that Nurse Trofort's license had been revoked and never reinstated to arguing that yes, it had been reinstated but, according to Relator, it was invalid because, in his view, a nursing license is invalid when Relator believes it to be invalid – not, consistent with actual clear and unequivocal law, that it is invalid when a State nursing board determines a license to be invalid.

Relator's updated theory is directly contrary to federal law. Federal law, as Judge Mills and this Court have concluded, is patently "clear" and "unequivocally" dictates that a nursing license is invalid, not when a Relator – a private, financially motivated individual – determines it to be invalid, but only when "(i) the authority having jurisdiction regarding noncompliance with applicable laws issues a final adverse action and (ii) that action is not under appeal or litigation by the facility or the professional providing services[.]" ECF 327 at 8-10; *see also* ECF 303 at 12.

Sensing that his action was doomed to obvious failure because of CMS's objective, bright-line rule, Relator then engaged in two acts of discovery abuse in a futile attempt to prolong this case. First, during Summary Judgment briefing, Relator purported to rely on a Declaration of Alwin Dockins, a State employee, who had no personal knowledge of the facts underlying this lawsuit and conducted no investigations of Defendants. Mr. Dockins was not

6

named on any of Relator's initial disclosures. On the final day of discovery, April 30, 2021, Relator supplemented his Initial Disclosures to Cross Reference discovery responses, also served on April 30, 2021, the last day of discovery, in which Relator identified Mr. Dockins for the first time. Relator participated in this abuse because if he had named Mr. Dockins early and if Mr. Dockins were subjected to cross-examination, his total lack of any personal knowledge about this case would be exposed. The Court has already characterized Relator's action as a discovery violation. *See* ECF 303 at 13, n.3 (finding that Relator's production of Dockins' Declaration "late in this case and after discovery deadlines had passed" to be a "discovery violation").

Second, after reading Judge Mills' decision and, consequently, apprehending the futility of his prior arguments, Relator determined to engage in an additional act of discovery abuse and cause the breach of a settlement agreement, in an attempt to delay the inevitable dismissal of this case. Specifically, notwithstanding iron-clad discovery obligations to identify individuals and produce documents relevant to his claims, in response to Judge Mills' Order, Relator supplied purported, uncross-examined information – including deposition testimony, photographs, a declaration – months after discovery closed, claiming to link alleged substandard care provided to Cassie Taylor, Relator's former client, to Nurse Trofort. *See* ECF 312 at 24-26; ECF 312-12; ECF 312-13; ECF 312-14; ECF 312-15; ECF 312-16. Ms. Taylor was neither a Medicare nor Medicaid beneficiary.[3] Relator's misconduct may stem from one of two

---

[3] Indeed, as the Second Circuit has pointed out, asserting, as Relator did here, that the treatment of a non-Medicare or Medicaid patient, by itself, shows that a violation of the FCA occurred is frivolous and warrants an imposition of attorney fees under the FCA's fee shifting provision. *See U.S. ex rel. Mikes v. Straus*, 274 F.3d 687, 704-05 (2d Cir. 2001) (ruling that relator's assertion that non-Medicare patient's treatment was relevant to how actual Medicare patients were treated was "objectively unreasonable," warranting an imposition of attorney fees), *abrogated on other grounds by Universal Health Servs., Inc. v. United States*, 579 U.S. 176 (2016). Relator, in the Second Amended Complaint, vaguely contended that deficient care was provided to residents without naming specific Medicare or Medicaid patients and linking those patients to any care that Nurse Trofort allegedly provided. *See* ECF 90 ¶ 88. Under the FCA, Relator has the burden of proof, 31 U.S.C. § 3731(d), and, at the summary judgment stage, must offer admissible evidence to

sources. Relator may have correctly recognized that whatever allegations he had related to Ms. Taylor were not relevant to this case because this action, involving the federal FCA, only related to federally paid claims, and thus produced these records with the intent to vex or harass. Alternatively, Relator believed these records to be somehow relevant, but he purposefully withheld them because he knew that, as with Mr. Dockins, the contentions would not withstand cross-examination and the adversary process, but he nonetheless wanted to use them in the hope of prolonging the inevitable dismissal of this action. Under either scenario, Relator's conduct clearly breaches the Federal Rules of Civil Procedure and is an egregious abuse of the discovery process.[4]

---

support his contentions and create a triable issue of fact. But, in discovery, Relator never sought to elicit admissible evidence, such as employing a clinical expert or reviewing medical records, to link Nurse Trofort to any instance of worthless care provided to any specific resident because no such linkage can be made. Southaven provided approximately 28,000 Medicaid and 8,500 Medicare patient days during the period Nurse Trofort was employed at Southaven. *See* ECF 243 at 6-7. Relator does not have any proof that any substandard care occurred as to these approximately 36,500 patient days that are actually relevant to this case because none exists. Further, regardless of whatever views Relator possesses regarding the treatment of Ms. Taylor, which was never subjected to discovery and the truth-finding process because of Relator's discovery abuse, Relator has absolutely ***no*** evidence that substandard care occurred regarding ***any*** Medicare or Medicaid patient during the 36,500 Medicare and Medicaid patient days relevant to this lawsuit.

[4] Recognizing that his conduct violates the Federal Rules of Civil Procedure and Local Rules governing discovery, Relator makes the remarkable contention that his briefs are not subject to Court rules. He attempts to frame briefing in response to Judge Mills' show cause order as a "unique 'show cause' process." As a preliminary matter, Rule 1 of the Federal Rules of Civil Procedure plainly states that the rules "govern the procedure in ***all*** civil actions and proceedings in the United States district courts, except as stated in Rule 81." Fed. R. Civ. P. 1 (emphasis added); *cf.* L.U.Civ.R. 1 ("The rules of procedure in ***any*** proceeding in this court are those prescribed by the laws of the United States and the Federal Rules of Civil Procedure, along with these local rules and orders entered by the court.") (emphasis added); *see also Islam v. Harrington,* No. 3:00-cv-1683, 2001 WL 1335851, at *9 (N.D. Tex. Oct. 23, 2001) (noting that the Federal Rules of Civil Procedure govern procedure in all suits of a civil nature "subject only to the exceptions stated in Rule 81"); *Thermo Credit L.L.C. v. CentricVoice, Inc.*, No. 08-3441, 2008 WL 4691839, at *5 (E.D. La. Oct. 22, 2008) (holding that the Federal Rules of Civil Procedure govern an action where there is no exception in Rule 81). Unsurprisingly, neither the local nor the federal Rule 81 exempts briefing in response to an order to show cause from the Rules of Procedure. Fed. R. Civ. P. 81; L.U.Civ.R. 81.

Rather than disputing that his conduct violates Rule 26, Relator argues that Federal Rule 37(c)(1) should not apply to his conduct because providing records not disclosed during discovery in response to an order to show cause does not constitute "evidence on a motion, at a hearing, or at a trial." This reading is nonsensical and would lead to patently absurd results. Rule 37(c)(1) reads as follows:

8

Relator's discovery abuse has also caused the administrator of Cassie Taylor's estate to breach the terms of a settlement agreement signed in 2017. The agreement to settle Ms. Taylor's case, which Relator litigated, makes clear that the parties agreed to keep confidential information and records of the type Relator filed into the record of this case, in the absence of a court order. *See* Decl. in Supp. of Defs.' Mot. for Att'ys' Fees at Ex. A, p. 5 ("[T]he parties agree never to disclose to any non-party or member of the media [] the terms and conditions herein except as required by court order … all parties do not wish the facts and circumstances surrounding the terms and/or conditions of this Agreement to be referenced or discussed, directly or indirectly, by way of publicity or otherwise.").[5] Not only did Relator file previously nonpublic photographs and deposition testimony, *see* ECF 312-12; ECF 312-13; ECF 312-14, ECF 312-16, but he also submitted his own declaration consisting of extensive description of

---

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. ***In addition to or instead of this sanction***, the court, on motion and after giving an opportunity to be heard:
>> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>> (B) may inform the jury of the party's failure; and
>> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)–(vi).

Fed. R. Civ. P. 37(c)(1) (emphasis added). Relator argues that because his flagrant discovery violation did not result in supplying "evidence on a motion, at a hearing, or at a trial," he is not subject to this Rule. However, this language does not refer to a *condition* under which Rule 37 applies, but rather clearly refers to *one sanction* that can be levied if a party fails to provide information or identify a witness as required by Rule 26(a) or (e). Moreover, Relator's briefing in fact purports to be evidence on a motion because the briefing under the Show Cause Order is simply an extension of, and supplement to, the pending motions for summary judgment. In short, Relator's contention that his violation of the rules should not count against him because the Federal Rules of Civil Procedure do not apply to him is itself frivolous.

[5] In his declaration, Relator claims that he has the "Taylor family's permission and support" in disclosing information and records. ECF 312-15 at 4. Taylor's family, of course, could never disclose this information under the plain terms of the parties' settlement agreement. Thus, it simply had its lawyer, the Relator here, pursuing his own financial interest, publicly disclose the same information in direct violation of the parties' settlement agreement.

9

facts and circumstances surrounding the action, ECF 312-5.[6] Relator not only flagrantly violated the Federal Rules of Civil Procedure, but he also appears to have deliberately caused a client to violate the terms of a settlement agreement – all with the apparent aim of personal enrichment by producing irrelevant information to vex and harass Defendants by attempting to prolong the inevitable dismissal of this action.

## II. ARGUMENT

### A. The Court Should Award Defendants' Attorneys' Fees, Expenses, and Costs

The FCA permits a successful defendant to recover its reasonable attorneys' fees, expenses, and costs "if the defendant prevails in the action and the court finds that the claim of the person bringing the action was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment." 31 U.S.C. § 3730(d)(4).

Congress created this provision to protect innocent companies from abusive FCA claims. *See* S. Rep. No. 99-345, at 29 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5294 ("The Committee added this language in order to create a strong disincentive and send a clear message to those who might consider using the private enforcement provision of this Act for illegitimate purposes. The Committee encourages courts to strictly apply this provision in frivolous suits or suits brought for purposes of harassment, as well an any applicable sanction available under the Federal Rules of Civil Procedure."); *see also generally U.S. ex rel. Grynberg v. Praxair, Inc.*, 389 F.3d 1038, 1058 n.22 (10th Cir. 2004) (finding purpose of fee-shifting provision is to penalize a plaintiff that "has misused his statutory privilege and distorted the intent of the legislation"). Trial

---

[6] The Fifth Circuit has awarded attorney's fees for breach of the confidentiality provision of a settlement agreement. *See Toon v. Wackenhut Corr. Corp.*, 250 F.3d 950, 953 (5th Cir. 2001) (holding that plaintiffs acted in bad faith and ordering them to pay attorneys' fees where they breached the confidentiality provision of a settlement agreement by filing a motion into the record).

courts have broad discretion in awarding fees. *See, e.g., U.S. ex rel. Rafizadeh v. Cont'l Common, Inc.*, 553 F.3d 869, 875 (5th Cir. 2008).

Defendants have prevailed in this action. In deciding whether to award attorneys' fees and expenses, courts determine whether the claim falls within any of the three enumerated categories: clearly frivolous, clearly vexatious, or brought primarily for purpose of harassment. 31 U.S.C. § 3730(d)(4). To recover, Defendants need only show that Relator's action fell into one of these categories. *See Mikes*, 274 F.3d at 704-05 ("Any one of these three conditions is sufficient for an award of attorneys' fees."). Here, however, Defendants can satisfy all three statutory criteria.

### 1. Relator's Lawsuit Is Frivolous Because It Objectively Is Contrary to Law

"A claim is frivolous when, viewed objectively, it may be said to have no reasonable chance of success, and present no valid argument to modify present law." *Mikes*, 274 F.3d at 705 (citations omitted); *see also In re Natural Gas Royalties Qui Tam Litig.*, 845 F.3d 1010, 1024 (10th Cir. 2017) (finding that where claim is "groundless," "without foundation," and "unreasonable," then under Supreme Court precedent, Tenth Circuit precedent, and the False Claims Act fee-shifting provision, the action is "clearly frivolous") (citing *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 421-22 (1978); *Praxair*, 389 F.3d at 1059; 31 U.S.C. § 3730(d)(4)); *U.S. ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 356 (4th Cir. 2009) ("Suffice it to say, that, when the evidence in the record is viewed objectively, [*qui tam* plaintiff's] claim that he qualified as a proper relator clearly had no reasonable chance of success. In sum, we hold the district court did not abuse its discretion in deciding to award [defendant] attorneys' fees and costs under § 3730(d)(4)."); *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1006 (9th Cir.

11

2002) ("An action is clearly frivolous when the result is obvious.") (citation and internal quotation omitted) (dicta).

Relator's claims – first, that Nurse Trofort's license had never been reinstated (covering initial Complaint and Amended Complaint) and hence she worked at Southaven without a multistate license, and, later, that Nurse Trofort's license is invalid based upon a person's subjective view and without official action – are both clearly frivolous because both views had no basis in law or fact and had no reasonable chance of success. First, the theory based upon Nurse Trofort's license never being reinstated is patently frivolous and had no chance of success because it is factually wrong and could have easily been verified. Relator did not do so. *See Mikes*, 274 F.3d at 705 (when plaintiff's allegation is "bereft of any objective factual support," plaintiff "clearly had no chance of success" and hence claim is frivolous under FCA fee-shifting provision). Defendants should not have been put to the expense of defending these claims.[7] Second, Relator's theory that he, a private citizen, has the ability to determine when a nurse's license becomes invalid and that CMS's unambiguous rules do not apply is directly contrary to governing law and hence is clearly frivolous. *See generally U.S. ex rel. Minna Ree Winer Children's Class Trust v. Regions Bank of La.*, No. 96-30581, 1997 WL 119971, at *8 (5th Cir. Mar. 13, 1997) (affirming district court's award under fee-shifting provision because relator's "ultimate goal" was to "vex and harass the defendants" given the fact that relator proceeded against defendants "without any evidence sufficient to create a genuine issue of material fact").

---

[7] Ironically, Relator accused Defendants (falsely) of fraud for a failure to confirm a nurse's licensure status without undertaking prior to suit any efforts himself to confirm using easily available public information that his characterization of Nurse Trofort's never being reinstated was in fact accurate.

12

Because Relator's claims are both wrong and had no legal basis to succeed, his claims are frivolous, and Defendants are entitled to their attorneys' fees, expenses, and costs under the FCA.

### 2. Relator's FCA Lawsuit Is Vexatious and Brought for Purposes of Harassment Because Relator Acted with an Improper Purpose

Courts generally find that an FCA plaintiff's action is vexatious or harassing when plaintiff engages in conduct to delay the proceeding to circumvent Defendant's action to defeat Plaintiff's claims. *See U.S. ex rel. J. Cooper & Assocs. v. Bernard Hodes Grp., Inc.,* 422 F. Supp. 2d 225, 238 (D.D.C. 2006) (A claim is vexatious or brought for purposes of harassment when plaintiff engages in "actions that deliberately delay the proceedings, attempts to relitigate a previously decided claim against the same defendant, the raising of new allegations in an effort to circumvent the arguments in a defendant's motion to dismiss, and the inclusion of counts for which the available evidence defeats any inference of a false claim.") (citations, footnote, and internal quotation omitted); *see generally U.S. ex rel. Minna Ree Winer Children's Class Trust v. Regions Bank of La., et al.*, No. 94-4085, 1996 WL 339993, at *2–3 (E.D. La. June 18, 1996) (applying subsection (d)(4) where plaintiff filed the lawsuit simply as a means to obtain a "fishing expedition" into defendant's business practices); *U.S. ex rel. Herbert v. Nat'l Acad. of Scis.*, No. 90-2568, 1992 WL 247587, at *23–24 (D.D.C. Sept. 15, 1992) (applying subsection (d)(4) when plaintiff does "little more than dress up his personal grievance against" defendant and fails to state legal bases to his claims).

Here, Relator's action – aside from its frivolity – demonstrates vexatious and harassing behavior. Under appropriate circumstances, "a single defect may merit a ruling on frivolousness or vexatiousness." *U.S. ex rel. Bain v. Ga. Gulf Corp.*, 208 F. App'x 280, 283

13

(5th Cir. 2006). Relator's vexatious and harassing conduct is manifested in a number of actions, such as:

- Ignoring documented, unrebutted proof that, consistent with what the law required, Southaven contemporaneously confirmed that Nurse Trofort possessed a valid license during her entire tenure at Southaven, *see* ECF 31-1; 31-2;

- Falsely asserting, and never seeking to confirm before falsely accusing Defendants of fraud, that Nurse Trofort's multistate license had not been reactivated prior to her Southaven employment, *see* ECF 2, ¶ 64; ECF 59, ¶ 60; ECF 247 at 5, n.5; *id.* at 23.

- Ignoring CMS's "clear" and "unequivocal[]" rules that mandate that a license only become invalid when a State agency determines that it is invalid, *see* ECF 327 at 10;

- Engaging in discovery abuse by failing to properly disclose a purported witness to shield that witness from discovery in the hope of prolonging the action, *see* ECF 303 at 13, n.3;

- Engaging in additional discovery abuse, in violation of the Federal Rules of Civil Procedure, by failing to disclose an individual and information, either with the goal of producing inflammatory, irrelevant information not subject to cross examination or so that no discovery could be taken related to an allegation in the hope of delaying the ultimate resolution of this action – thereby knowingly repeating precisely the same type of discovery violation the Court had previously identified, *see id.*;

- Asserting that alleged substandard care related to a non-Medicare or Medicaid patient reflects care provided to Medicare and Medicaid beneficiaries over 36,500 patient days – a claim which a circuit court of appeal already found to be frivolous on its face, *see Mikes*, 274 F.3d at 704-05; and

14

- Causing the administrator of Cassie Taylor's estate to breach the terms of a settlement agreement for Relator's own financial gain by wrongfully filing into the record depositions, photographs and extensive, detailed information that should not have been disclosed pursuant to the terms of the agreement. *See Toon*, 250 F.3d at 953.

### B. Alternatively, the Court Should Award Defendants' Attorneys' Fees, Expenses, and Costs Pursuant to the Court's Inherent Powers

In addition to the fee-shifting provisions of the FCA, this Court should award Defendants' attorneys' fees, expenses, and costs pursuant to the Court's inherent powers. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-48, 50-51 (1991). Federal courts are empowered to assess attorneys' fees when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 45-46 (citation omitted). This is true even if similar relief is expressly covered by existing rules or statutory schemes. *See id.* Indeed, courts may use their inherent powers to award fees to FCA defendants even if they do not satisfy the requirements of the FCA's fee-shifting statute. *See U.S. ex rel. Tingley v. PNC Fin. Servs. Grp.*, 705 F. App'x 342 (6th Cir. 2017) (affirming award of attorneys' fees, costs and expenses pursuant to court's inherent authority while noting the district court denied fees under 31 U.S.C. § 3730).

As detailed above, Relator acted in bad faith, vexatiously, and for improper purposes by pursuing this frivolous action to harass Defendants, despite having received notice that his theory of liability was factually undermined by the very same public records upon which Relator purportedly relied in filing the action. Defendants are therefore entitled to an award of its attorneys' fees, expenses, and costs pursuant to the Court's inherent powers.

### III. CONCLUSION

Relator's lawsuit has been a parade of errors from its inception to end. Its frivolity, vexatiousness, and intention to harass were manifest in this action's roots as a shotgun pleading

15

against eight parties and including common claims rejected by more than a dozen courts. This conduct has only continued, from Relator ignoring clear proof demonstrating that, contrary to the Complaints' false allegations, Nurse Trofort always had a valid multistate license which was active at the time of her employment at Southaven, and which Southaven twice confirmed during her employment, to, when learning of those unrebutted facts, Relator simply revising the Complaint to assert a theory that is directly contrary to "clear" and "unequivocal[]" federal law.

And that was not enough. When it was clear to even Relator that the action was doomed to inevitable failure, Relator committed discovery abuse in an attempt to circumvent dispositive grounds for dismissal and prolong the action. Then, after reviewing Judge Mills' Order listing multiple grounds for dismissal and branding Relator's prior act a discovery violation, Relator, in a panic, knowingly engaged in precisely the same type of discovery violation by contending, months after discovery closed, that a previously undisclosed non-Medicare, non-Medicaid patient, using an undisclosed document, suffered, in some previously undisclosed fashion, harm at the hands of Nurse Trofort. Not only is this conduct antithetical to the truth-finding, adversarial process and violative of a settlement agreement, *see Toon*, 250 F.3d at 953, but Relator's assertion that some purported action related to a non-federally reimbursed patient defines treatment actually provided to Medicare or Medicaid beneficiaries, without any proof, is precisely the same type of allegation that an appellate court has branded as facially frivolous under the FCA's fee-shifting provision. *See Mikes*, 274 F.3d at 704-05.

This is the conduct, individually and collectively, that Congress had in mind when it enacted the FCA's fee-shifting provision. Relator has misused his statutory privilege and distorted the intent of the legislation. The Court should grant Defendants' motion.

Date: April 13, 2022                                    Respectfully submitted,

/s/ *Margaret Sams Gratz*
Margaret Sams Gratz, Esq. (MSB # 99231)
William Grant Armistead (MSB # 9786)
Mitchell, McNutt & Sams, P.A.
P. O. Box 7120
Tupelo, MS  38802-7120
Telephone:  (662) 842-3871
Facsimile:  (662) 842-8450
mgratz@mitchellmcnutt.com

Robert Salcido (*pro hac vice*)
D.C. Bar No. 447951
California Bar No. 139138
Akin Gump Strauss Hauer & Feld LLP
2001 K. Street, N.W.
Washington, D.C. 20006
Telephone: 202-887-4000
Facsimile: 202-887-4288
rsalcido@akingump.com

***Attorneys for Defendants***
**GGNSC Southaven LLC D/B/A Golden LivingCenter-Southaven; GGNSC Administrative Services LLC; GGNSC Clinical Services**

## CERTIFICATE OF SERVICE

This is to certify that I, Robert Salcido, one of the attorneys for GGNSC Southaven, LLC individually and on behalf of all Defendants have this day furnished a true and correct copy of the above and foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR ATTORNEYS' FEES** to the following via ECF filing:

Philip N. Elbert, Esq.
Lisa P. Binder, Esq.
Nathan C. Sanders, Esq.
Neal & Harwell, PLC
1201 Demonbreun St., Suite 1000
Nashville, TN 37203
pelbert@nealharwell.com
lbinder@nealharwell.com
nsanders@nealharwell.com

Richard R. Barrett
Law Office of Richard R. Barrett, PLLC
2086 Old Taylor Road, Suite 1011
Oxford, MS 38655
rrb@rrblawfirm.net

This 13th day of April, 2022.

*/s/ Robert Salcido*
ROBERT SALCIDO

1