IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**UNITED STATES OF AMERICA, ex rel.**
**CAMERON JEHL**                                                                                        **PLAINTIFFS**

V.                                                                      CIVIL ACTION NO. 3:19-cv-091-NBB-JMV

**GGNSC SOUTHAVEN, LLC,**
**doing business as Golden Living Center**
**– Southaven; GGNSC ADMINISTRATIVE**
**SERVICES, LLC, doing business as**
**Golden Ventures, and GGNSC CLINICAL**
**SERVICES**                                                                                           **DEFENDANTS**

## MEMORANDUM OPINION

This cause comes before the court upon the defendants' motion for attorneys' fees and the relator's motion objecting to the clerk's taxation of costs. Upon due consideration of the motions, responses, exhibits, and applicable authority, the court is ready to rule. The court notes at the outset that the defendants' motion is simply to determine whether the defendants are entitled to attorneys' fees. The amount of an attorneys' fees award will be addressed at a later date after further briefing and submissions by the parties.[1]

### Factual Background and Procedural Posture

The relator, Cameron Jehl, brought this qui tam action against the defendants, GGNSC Southaven, LLC, GGNSC Administrative Services, LLC, and GGNSC Clinical Services (collectively, "GGNSC"), seeking to recover damages, penalties, fees, and costs under the False Claims Act ("FCA"). 31 U.S.C. § 3729 *et seq.* This court found a "complete failure of proof" with respect to each of the essential elements of the relator's claims and granted summary

---

[1] The court rejects the relator's assertion that the court cannot render a decision as to the relator's liability for attorneys' fees because the defendants have not yet set forth an amount or estimate. Federal Rule of Civil Procedure 54(d)(2)(C) plainly provides that "[t]he court may decide issues of liability for fees before receiving submissions on the value of services."

judgment in favor of GGNSC. The Fifth Circuit Court of Appeals subsequently affirmed this court's ruling. *United States ex rel. Jehl v. GGNSC Southaven, LLC*, No. 22-60209, 2022 WL 17443684 (5th Cir. 2022).

This case arose after the relator, a licensed attorney and resident of Shelby County, Tennessee, not affiliated with GGNSC, deposed Lionelle Trofort in a wrongful death action unrelated to this case. Trofort was a registered nurse licensed in Virginia with multistate privileges. She served as nursing director of GGNSC's Southaven facility from April 23, 2013, until March 4, 2014. While working on the unrelated wrongful death case, the relator discovered publicly available administrative depositions posted to the state of Virginia's nursing board website. The post stated that between February 27 and March 19, 2013, Trofort had "practiced professional nursing without a valid license or multistate compact license" and that she had applied to work at GGNSC's facility. Relying on this publicly available information, the relator filed the present action in April 2019. The amended complaint alleged that, by submitting Medicare and Medicaid claims to both the state of Mississippi and the federal government while employing Trofort as its director of nursing when she purportedly did not possess a valid Mississippi nursing license, GGNSC violated the FCA because GGNSC's certifications of compliance with applicable licensure laws were false within the meaning of the FCA. Consequently, the relator alleged, GGNSC received millions of dollars in Medicare and Medicaid reimbursement payments to which it was not entitled. Based on this theory, the relator sought damages under the FCA, including treble damages, for each alleged violation, amounting to a total in excess of $30 million.

Trofort's multistate nursing license was revoked on February 28, 2013, but was reinstated on March 20, 2013, after she submitted a declaration to the Virginia nursing board indicating that

her permanent state of residence ("PSOR") was Virginia. This occurred prior to Trofort's employment with GGNSC's facility, which began on April 23, 2013. The day after Trofort's employment with GGNSC began, GGNSC confirmed with the Virginia nursing board that Trofort held a valid active Virginia nursing license with multistate privileges.

In ruling on the defendants' motion for summary judgment, the court rejected the relator's argument that Trofort's true PSOR could not be Virginia as she claimed because she listed with her employer a Tennessee address where she had been staying, obtained a Tennessee driver's license, paid taxes in Tennessee, and registered to vote in Tennessee. This court found no statute or regulation that invalidates a multistate license on any of these grounds. This court examined the extensive guidance published by the Center for Medicare and Medicaid Services ("CMS") and the applicable Supreme Court and Fifth Circuit jurisprudence on the issues to determine that the undisputed facts did not establish material evidence from which a reasonable jury could find a violation of the FCA's requisite elements of falsity, knowledge, and materiality. This court found a complete failure of proof on each of the essential elements of the relator's claims and accordingly granted summary judgment in GGNSC's favor. The Fifth Circuit subsequently affirmed. The defendants now seek attorneys' fees.

Analysis

The FCA permits a defendant to recover its reasonable attorneys' fees, expenses, and costs "if the defendant prevails in the action and the court finds that the claim of the person bringing the action was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment." 31 U.S.C. § 3730(d)(4). "Any one of these three conditions is sufficient for an award of attorneys' fees." *Mikes v. Straus*, 274 F.3d 687, 704-05 (2d. Cir. 2001), *abrogated on other grounds by Univ. Health Servs., Inc. v. U.S.*, 579 U.S. 176 (2016). The district court has

broad discretion in awarding fees. *See, e.g.*, *U.S. ex rel. Rafizadeh v. Cont'l Common, Inc.*, 553 F.3d 869, 875 (5th Cir. 2008).

"A claim is frivolous if it has no arguable support in existing law or any reasonably based suggestion for its extension." *U.S. ex rel. Bain v. Georgia Gulf Corp.*, 208 F. App'x 280, 283 (5th Cir. 2006). "A claim is vexatious [or harassing] when the plaintiff brings the action for an improper purpose, such as to annoy or harass the defendant." *Id.*

The defendants list the following undisputed facts which they assert show that the relator's action is clearly frivolous, vexatious, and brought primarily for the purpose of harassment.

1. The relator filed the action without checking easily accessible public information regarding whether his false core allegation and the false basis for the lawsuit – that Trofort's multistate license had never been reinstated – was correct when he, a licensed attorney, would have learned his allegation was false had he performed a simple fact check, as Trofort held an active, valid multistate license throughout her employment with GGNSC.

2. The relator filed common law claims which dozens of courts have rejected because they have no legal basis and are therefore frivolous.[2]

3. After learning from the defendants that his core allegation regarding Trofort's licensure was false and that the defendants had twice confirmed the validity of

---

[2] *See, e.g.*, *U.S. ex rel. Ligai v. ETS-Lindgren, Inc.*, No. H-11-2973, 2014 U.S. Dist. LEXIS 129164, at *42 (S.D. Tex. Sept. 16, 2014) ("Courts do not allow relators to assert common-law claims based on the 'partial assignment' of the government's FCA claims under 31 U.S.C. § 3730(b)."), *aff'd*, 611 F. App'x 219 (5th Cir. 2015); *U.S. ex rel. Acad. Health Ctr. v. Hyperion Foundation, Inc.*, No. 3:10-CV-552, 2014 U.S. Dist. LEXIS 93185, at *140-41 (S.D. Miss. July 9, 2014); *U.S. ex rel. Gonzalez v. Fresenius Med. Care N. Am.*, No. EP-07-CV-247, 2008 U.S. Dist. LEXIS 78251, at *25-26 (W.D. Tex. Sept. 2, 2008).

      Trofort's licensure during her employment with GGNSC, the relator altered his theory to one that, as this court has already noted, relator's own expert had rejected.[3]

4. After learning from the defendants that CMS guidelines clearly and unambiguously reject his theory, the relator engaged in discovery abuse to salvage his lawsuit by futilely attempting to create a triable issue of fact.[4]

5. After the court objected to the relator's theory, the relator engaged in the same type of discovery abuse again in an attempt to salvage his lawsuit by referencing treatment to a non-federally funded patient – an approach which one circuit had already rejected as facially frivolous. *Mikes*, 274 F.3d at 704.

6. The relator publicly disclosed the conditions of a prior settlement which contained a confidentiality provision in an attempt to salvage his lawsuit.[5]

The relator does not dispute that, prior to filing this action, he failed to conduct a simple online inquiry of Virginia's public records which would have informed him that his core allegation and the primary basis for this lawsuit – that Trofort lacked a valid multistate license – was demonstrably wrong. This court finds that because the relator's allegation was "bereft of any objective factual support," the action "clearly had no chance of success," and therefore the claim is frivolous under the FCA's fee-shifting provision. *Mikes*, 274 F.3d at 705.

---

[3] *See* [Docket 327 at 7] (Rejecting the relator's position that Trofort's activities in Tennessee invalidated her multistate licensure obtained in Virginia, her PSOR).

[4] *See* [Docket 303 at 13, n.3] ("This court notes that, late in this case and after discovery deadlines had passed, Relator sought to produce an affidavit from a Mississippi state Medicaid official in which he offered his opinion that the licensing violation in this case would, in fact, have been considered material by his office. Even if this court were to excuse this discovery violation, however, it regards the opinion of a single state official, offered in support of litigation, to be much less reliable than formal guidance issued by CMS to its surveyors.").

[5] *See* [Docket 330-2 at 5].

Further, despite the well-settled proposition that courts afford substantial deference to the CMS manual provisions interpreting the CMS's own regulations,[6] the relator ignored the CMS rules, published in its *State Operations Manual*, which state plainly and unambiguously, as this court found, "that a facility breaches the governing regulation [regarding licensure] only when (i) the authority having jurisdiction regarding noncompliance with its applicable laws issues a final adverse action and (ii) that action is not under appeal or litigation by the facility or the professional providing services." [Docket 327 at 7-8].

The court finds that the relator's lawsuit was patently and demonstrably frivolous because an application of the plain language of public federal law – that is, the CMS's authoritative interpretation of its governing regulation regarding licensure set forth in the *State Operations Manual* – and application of the easily obtainable public facts – that Trofort held a valid, active multistate license during her employment with the defendants – lead to the inexorable conclusion that the relator's action is groundless.  As "[a]ny one of [the] three conditions is sufficient for an award of attorneys' fees," the court's determination of frivolousness precludes the necessity of analysis of vexatiousness or harassment, though the court is also persuaded by the defendants' arguments in regard to those assertions.  *Mikes v. Straus*, 274 F.3d 687, 704-05.

The court now turns briefly to the relator's motion objecting to the clerk's taxation of costs.  The relator moves the court to deny the defendants' costs under Federal Rule of Civil Procedure 54(d)(1) because he asserts he brought the lawsuit in good faith and that it presented close and difficult legal issues.  Having already determined that this lawsuit was patently and demonstrably frivolous, the court is unpersuaded by the relator's position.

---

[6] *See Baylor Cnty. Hosp. Dist. v. Burwell*, 163 F. Supp. 3d 372, 384 (N.D. Tex. 2016), *aff'd sub nom. Baylor Cnty. Hosp. Dist. v. Price*, 850 F.3d 257 (5th Cir. 2017) (deferring to the CMS State Operations Manual and recognizing "the Supreme Court's repeated suggestion that [the Department of] HHS interpretations, in particular, should receive more respect than the mine-run of agency interpretations").

Federal Rule of Civil Procedure 54(d)(1) provides that "unless a federal statute, these rules, or a court order provides otherwise, costs – other than attorneys' fees – should be allowed to the prevailing party." The Fifth Circuit has consistently held that this language "contains a strong presumption that the prevailing party will be awarded costs." *Pacheco v. Mineta*, 448 F.3d 783, 793 (5th Cir. 2006). In fact, the prevailing party is "prima facie entitled to costs." *Id.* (quoting *Schwarz v. Folloder*, 767 F.2d 125, 131 (5th Cir. 1985)). It is "incumbent on the losing party to overcome that presumption since denial of costs is in the nature of a penalty." *Walters v. Roadway Express, Inc.*, 557 F.2d 521, 526 (5th Cir. 1977). This court finds that the relator fails to overcome the strong presumption that costs should be allowed to the defendants – the prevailing parties in this case. Accordingly, his objection is overruled, and his motion is denied.

## Conclusion

For the foregoing reasons, the court finds that the defendants' motion for attorneys' fees is well taken and should be granted. The court further finds that the relator's motion objecting to the clerk's taxation of costs is denied. A separate order in accordance with this opinion will issue this day.

This 28th day of March, 2023.

/s/ Neal Biggers
NEAL B. BIGGERS, JR.
UNITED STATES DISTRICT JUDGE