IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, ex rel. CAMERON JEHL, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 3:19-cv-091-NBB-JMV |
| GGNSC SOUTHAVEN LLC D/B/A GOLDEN LIVING CENTER-SOUTHAVEN; GGNSC ADMINISTRATIVE SERVICES LLC D/B/A GOLDEN VENTURES; AND GGNSC CLINICAL SERVICES LLC D/B/A GOLDEN CLINICAL SERVICES, | ) ) ) ) ) ) ) ) ) | Oral Argument Requested |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF RELATOR'S MOTION TO RECONSIDER ORDER FINDING THAT THIS CASE WAS FRIVOLOUS AND GRANTING ATTORNEYS' FEES TO DEFENDANTS**

Under Fed. R. Civ. Proc. 54(b), this Court has the discretion to reconsider any interlocutory order "for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017). *See, Meuers Law Firm, P.C. v. Reasors LLC,* 2020 WL 8717106, *2 (N.D. Okl, Sept. 17, 2020) (entertaining under Rule 54(b) a motion to reconsider order holding that attorneys' fees were warranted). The relator, represented by new counsel, respectfully requests reconsideration in this highly unusual case where this court, speaking through the original judge on the case, concluded the relator presented a "reasonable" and "good faith argument" that led the court to deny a motion to dismiss and allow the case to move forward, yet the same court speaking through the current judge recently made a finding that the

same argument was "frivolous" from the outset and granted the defendant's motion for attorneys' fees.

      When a new judge steps into a case, that judge obviously decides all motions going forward.  Accordingly, the current judge granted summary judgment and his ruling was affirmed by the Fifth Circuit Court of Appeals.  But a motion for fees that alleges frivolousness in bringing the claim in the first place is, by nature, retrospective.  In this particular case, the original judge spoke for the court with respect to the motion to dismiss.  When he denied the motion to dismiss the Second Amended Complaint, holdluding that the relator's claim was brought in "good faith" and was based on a "reasonable" argument, his ruling represented two important and related conclusions on behalf of the court.  First, the relator's claim was not frivolous, and second, the claim had some chance of success and was sufficient for the relator to proceed with the litigation.  Of course, neither of those conclusions precluded the subsequent judge from granting summary judgment.  But it is inherently unfair at this late stage to penalize the relator and award fees to the defendants because the relator pursued a case that the court specifically allowed him to pursue when it denied the motion to dismiss.

      "The award of fees under the false claims act is reserved for rare and special circumstances."  *United States ex rel. Rafizadeh v. Continental Common, Inc.*, 553 F.3d 869, 875 (5th Cir. 2008) (quotation marks and citation omitted).  As one court noted in an FCA case, fees are appropriate only when the lack of merit is "so staggeringly obvious as to render Plaintiff's action objectively frivolous." *Ping Chen v. ex rel. United States v. EMSL Analytical, Inc.*, 966 F. Supp. 2d 282, 307 (S.D.N.Y. 2013) (quotation marks and brackets omitted).  A lack of merit was not obvious to the original judge in the case despite his detailed review of the issues.  This recognition that the case had some chance of success, along with the unfairness of a retrospective

penalty for something the Court specifically authorized, demonstrates this is not one of the rare and special cases where fees are appropriate.[1] The unusual circumstances of this case, and the authorization from the original judge for the relator and his counsel (composed of three reputable law offices) to move forward with the case, warrant reconsideration of this Court's order awarding attorneys' fees against the relator.

This court's decision to award of fees was based on two interrelated findings. The first was that Ms. Trofort's Virginia multi-state license had been reinstated and therefore the relator's "core allegation . . . – that Trofort lacked a valid multistate license – was demonstrably wrong," and "clearly had no chance of success." Docket 350 at 5. In his denial of the motion to dismiss, however, the court, speaking through the original judge, specifically noted the relator's allegation in the second amended complaint that Trofort obtained reinstatement by "fraudulently misrepresent[ing] to the Virginia Board of Nursing that she was still a resident of Virginia," which led Virginia to "mistakenly chang[e] its record-keeping system to reflect that Ms. Trofort had an active Virginia multi-state license." Docket 131 at 6, quoting Second Amended Complaint, docket 90 at 18. The original judge then explained that "[t]he complaint thus alleges that Defendant knew that Trofort lacked a valid license in spite of administrative findings otherwise, and there appears to be evidence in the record which gives plaintiff a *good faith argument in this regard.*" Docket 131 at 6 (emphasis added). The judge added that he was "unable to agree with [defendant] that prior administrative findings regarding Trofort's status are, as a matter of law, sufficient to bar plaintiff's claims in this case." *Id.* at 9. He described the

---

[1] Moreover, because the relator was authorized to pursue the case further, he had no notice that this pursuit would result in an award of fees against him. This lack of notice before the imposition of this penalty violates the Due Process Clause of the Fifth Amendment. *See, Kornhauser v. Comm'r of Soc. Sec.*, 685 F.3d 1254, 1257 (11th Cir. 2012) (explaining that due process applies to sanctions against attorneys and requires reasonable notice).

3

"arguments from both sides" as "reasonable." *Id.* He also said that given the nature of the case, he expected that, "even after discovery is completed in this case, there will remain triable fact issues . . . which will require a jury to resolve." *Id.*[2]

The second finding by this court when it recently granted the motion for attorneys' fees is that "the relator ignored the CMS rules published in its State Operations Manual, which state plainly and unambiguously, as this court found, 'that a facility breaches the governing regulation [regarding licensure] only when (i) the authority having jurisdiction regarding noncompliance with its applicable laws issues a final adverse action and (ii) that action is not under appeal or litigation by the facility or the professional providing services.' [Docket 327 at 7-8]." Docket 350 at 6. But after the original judge specifically raised the CMS publication as one of the issues the parties should address in response to his order to show cause, doc. 303 at 12-13, and after the relator addressed the issue in detail, doc. 312 at 34-35, the original judge specifically referred to the relator's response and concluded that, with respect to the "issues of law" pending in the case, "both sides have a *legitimate position."* Doc. 314 at 2 (emphasis added).

Obviously, the current judge's ultimate interpretation of the State Operations Manual led him to grant summary judgment. Doc. 327 at 7-8. But again, the issue of frivolousness is different and summary judgment does not necessarily demonstrate frivolousness. The relator's

---

[2] In its opinion granting attorneys' fees, this court stated that the "relator *does not dispute* that, prior to filing this action, he failed to conduct a simple online inquiry of Virginia's public records which would have informed him that his core allegation and he primary basis for this lawsuit --- that Trofort lacked a valid multistate license --- was demonstrably wrong. Docket 350 at 5 (emphasis added). However, as the original judge noted, the relator did dispute the validity of the reinstated license, alleging in the Second Amended Complaint that Trofort's license was not valid as a result of her misrepresentation when she obtained reinstatement. Regarding the matter of an online inquiry, the defendant apparently confirmed the reinstatement for purposes of this litigation through an open records request to the Virginia Board of Nursing in 2020 rather than an online inquiry. See Docket Nos. 92-1, 92-2. But irrespective of where that information could be found at the time, the key point is that the original judge held that the Virginia Board's administrative reinstatement did not preclude the relator's claim as a matter of law and that the relator's subsequent revision of the claim in the Second Amended Complaint was made in good faith and was reasonable.

4

position --- expressed to the original judge in responding to the show cause order --- is that while the State Operations Manual prescribed guidance for State Survey Agencies when surveying and citing long-term facilities, that is "separate from, and not to the exclusion of, the billing process and the remedies provided under the FCA." Docket 312 at 35.

This position is supported by the language of the guidance, which was only sent to "State Survey Agency Directors" and not to the state and federal officials responsible for handling billing issues. Dockekt 246-2 at p. 33 of 36. Moreover, in the passages immediately followingthe passages quoted by this court in granting summary judgment, docket 327 at 7-8, the State Operations Manual specifically refers to the citation tags used by State Survey Agencies:

> Do not cite Tag F492 when a determination is made by the authority having jurisdiction that a facility is not in compliance with Federal, State, or local requirements, regulations, codes and/or standards and a final adverse action has NOT been taken by the authority having jurisdiction.
>
> State Survey Agencies (SA) should not use this F Tag to comply cite non-compliance with State or local licensure requirements.

*Id.* at p. 34 of 36.

As the court held in *United States ex rel. Johnson v. Golden Gate National Senior Care LLC,* 223 F.Supp.3d 882, 909 (D. Minn. 2016), "*Survey and Certification is separate and distinct from Medicare payment determinations*." (Emphasis added). The *Johnson* court was addressing the relevance of the testimony of a defense expert in a FCA case named Pelovitz. "Pelovitz intends to testify about Survey and Certification, including 'tags' with which a state survey team may cite an institution for failure to comply with Medicare regulations." *Id.* at 908. The court held:

> In these circumstances, the Court finds that Pelovitz may testify about Survey and Certification, as the existence of administrative enforcement mechanisms may bear on the question of materiality. However, Pelovitz may not testify as to whether Defendants would have been cited for noncompliance by MDH and whether such citation would have affected payment from CMS to Defendants. Pelovitz expressly stated that *Survey and*

5

> *Certification is separate and distinct from Medicare payment determinations* and that Pelovitz offers no opinion on coverage or payment questions.

*Id.* at 909 (emphasis added).  Given the distinction between surveys/tags/citations/certification on one hand and Medicare billing/payment on the other --- as confirmed by the *Johnson* court in adopting the defense expert's reasoning --- the relator in the present case had what the original judge called a "legitimate position" when he set forth this distinction in responding to the original judge's show-cause order.  Accordingly, the relator had a reasonable and good faith basis for proceeding with this case even after the issue of the State Operations Manual was raised.

Moreover, the defendant itself did not raise the State Operations Manual until late in the case.  Although this court's recent order granting fees stated that "the relator ignored the CMS rules published in its State Operations Manual" which contained "the plain language of public federal law," docket 350 at 6, the defendant ignored those rules as well for a while.  The defendant neglected to raise the rules in its motion to dismiss the second amended complaint, docket 92, and apprised the court of them only when it filed its motion for summary judgment much later.   Docket 247 at 10 and n. 13.  The defendant's failure even to mention this "plain language of public federal law" as part of its legal argument in the motion to dismiss indicates that the language was not enough to put the relator on notice that it would be frivolous to bring this claim.  Had it been raised by the defendant in the motion to dismiss, the original judge likely would still have denied the motion to dismiss and would have concluded that both sides had "legitimate positions," which is what he concluded after asking the relator to brief that issue in responding to the order to show cause.

While the State Operations Manual was not cited in the defendant's motion to dismiss, the reinstatement of the Virginia license was cited in that motion as a basis for dismissal.  Had

6

the reinstatement demonstrated a lack of merit that was obvious to the original judge, he would have granted the motion to dismiss, this case would have ended much sooner, and much of the $1.6 million the defendant claimed to have spent on attorneys' fees prior to the appeal in this case, docket 338 at 17-18 n. 15, would not have been spent. However, the original judge denied that motion. In light of that denial, premised upon what the original judge said was a good faith and reasonable argument, the relator should not be penalized for bringing and proceeding with the litigation.

    Accordingly, the relator respectfully requests that this court reconsider its finding that the relator's actions were frivolous and rescind its order requiring the relator to pay the defendant's attorneys' fees.

Respectfully submitted,

*Robert B. McDuff*
Robert B. McDuff (MSB # 2532)
Law Office of Robert B. McDuff
767 North Congress St.
Jackson, MS 39202
601.259.8484 (Telephone)
rbm@mcdufflaw.com

Richard R. Barrett (MSB #99108)
Law Office of Richard R. Barrett, PLLC
2086 Old Taylor Road
Suite 1011
Oxford, MS 38655
662.380.5018 (Telephone)
rrb@rrblawfirm.net

Philip N. Elbert (admitted *pro hac vice)*
Kendra E. Samson (admitted *pro hac vice*)
Nathan C. Sanders (admitted *pro hac vice*)
NEAL & HARWELL, PLC
1201 Demonbreun Street, Suite 1000
Nashville, TN 37203
(615) 244-1713 – Telephone
pelbert@nealharwell.com
ksamson@nealharwell.com
nsanders@nealharwell.com

*Counsel for Relator*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 10th day of April, 2023, the following counsel were served by operation of the Court's electronic filing system:

| | |
|---|---|
| Margaret Sams Gratz, Esq.<br>Mitchell, McNutt & Sams, P.A.<br>P. O. Box 7120<br>Tupelo, MS 38802-7120<br>mgratz@mitchellmcnutt.com | J. Harland Webster, Assistant U.S. Attorney<br>Office of the United States Attorney<br>Northern District of Mississippi<br>900 Jefferson Avenue<br>Oxford, MS 38655-3608<br>joseph.webster@usdoj.gov |
| Robert Salcido, Esq.<br>Akin Gump Strauss Hauer & Feld LLP<br>Robert S. Strauss Tower<br>2001 K Street NW<br>Washington, DC 20006-1037<br>rsalcido@akingump.com | *Counsel for the United States of America* |
| *Counsel for Defendants* | |

/s/ *Robert B. McDuff*