IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. CAMERON JEHL, **Plaintiffs,** v. GGNSC SOUTHAVEN LLC D/B/A GOLDEN LIVING CENTER-SOUTHAVEN et al. **Defendants.** | Case No. 3:19cv091-NBB-JMV |

**MEMORANDUM OF LAW IN SUPPORT OF RESPONSE IN OPPOSITION TO RELATOR'S MOTION TO RECONSIDER ORDER FINDING THAT THIS CASE IS FRIVOLOUS AND GRANTING ATTORNEYS' FEES TO DEFENDANTS**

The Court should deny Relator's Motion to Reconsider Order Finding that His Case Is Frivolous and Granting Attorneys' Fees to Defendants. The Relator, in his motion, simply repeats the same arguments that he raised in Opposing Defendants' Joint Motion for Attorneys' Fees a year ago. *Compare* ECF 353 *with* ECF 334. Specifically, as before, Relator contends that the fact that Relator survived a motion to dismiss at the pleading stage grants him immunity from the False Claims Act ("FCA")'s fee-shifting provision, 31 U.S.C. § 3730(d)(4), and Relator contends that despite this Court's and the Fifth Circuit's ruling that the Centers for Medicare and Medicaid Services ("CMS")'s interpretation of its own regulation is clear and dispositive and thus forecloses his action, reconsideration should be granted because both this Court and the Fifth Circuit are wrong.

The Court should deny Relator's Motion for at least two reasons. First, the Motion should be denied because a party simply repeating the same arguments that it previously raised does not

provide a court an adequate basis to reconsider a prior ruling. Second, the Motion should be denied because Relator's contentions are just as meritless as the last time Relator raised the same arguments and the Court rejected them.

I.  PROCEDURAL AND FACTUAL BACKGROUND

On March 30, 2022, after permitting extensive briefing—including providing Relator with an opportunity to address the Court's concerns about the lawsuit in a Show Cause Order—the Court granted Defendants' motion for summary judgment. *U.S. ex rel. Jehl v. GGNSC Southaven, LLC*, No. 3:19-cv-091-NBB-JMV, 2022 WL 983644 (N.D. Miss. Mar. 30, 2022) (hereinafter "*Jehl I*"). The Court noted that CMS "publishes extensive authoritative interpretative guidance regarding the meaning and effect of it nursing facility regulations in its publication, *State Operations Manual*" and that "Courts afford substantial deference to CMS's manual provisions interpreting CMS's own regulations." *Id.* at *4. The Court noted that the plain language in CMS's Manual "provides dispositive guidance … regarding the precise issue in the present litigation" because it provided, in "clear, unambiguous guidelines" that a license is only invalid if final action is taken against it and "it is undisputed that no final adverse action was taken against [Director of Nursing Lionelle Trofort's] license during her employment at Golden Living." *Id.* at *5-6. The Court concluded, after an extensive review of the record, that there was a "complete failure of proof" of every essential element to establishing FCA liability. *Id.* at *7. Relator appealed the Court's ruling.

On April 13, 2022, immediately after the Court's ruling, Defendants moved for attorney fees and expenses under the FCA's fee-shifting provision. *See* ECF 331. In Defendants' Motion, as the Court set forth in its Ruling on Defendants' Motion for Fees, Defendants set forth multiple grounds to demonstrate that Relator's action was clearly frivolous, clearly vexatious, and brought primarily for purposes of harassment, including:

2

1. [R]elator filed the action without checking easily accessible public information regarding whether his false core allegation and the false basis for the lawsuit—that [Nurse] Trofort's multistate license had never been reinstated—was correct when he, a licensed attorney, would have learned his allegation was false had he performed a simple fact check, as [Nurse] Trofort held an active, valid multistate license throughout her employment with GGNSC.

2. [R]elator filed common law claims which dozens of courts have rejected because they have no legal basis and are therefore frivolous.

3. After learning from the [D]efendants that his core allegation regarding [Nurse] Trofort's licensure was false and that the Defendants had twice confirmed the validity of [Nurse] Trofort's licensure during her employment with GGNSC, Relator altered his theory to one that, as this court has already noted, Relator's own expert had rejected.

4. After learning from the [D]efendants that CMS guidelines clearly and unambiguously reject his theory, [R]elator engaged in discovery abuse to salvage his lawsuit by futilely attempting to create a triable issue of fact.

5. After the [C]ourt objected to [R]elator's theory, [R]elator engaged in the same type of discovery abuse again in an attempt to salvage his lawsuit by referencing treatment to a non-federally funded patient—an approach which one circuit had already rejected as facially frivolous.

6. Relator publicly disclosed the conditions of a prior settlement which contained a confidentiality provision in an attempt to salvage his lawsuit.

*See U.S. ex rel. Jehl v. GGNSC Southaven, LLC*, 3:19-cv-091-NBB-JMV, 2023 U.S. Dist. LEXIS 52679, at *6-7 (N.D. Miss. Mar. 28, 2023) (citations and footnotes omitted) (hereinafter "*Jehl II*").

On December 6, 2022, the Fifth Circuit affirmed this Court's summary judgment ruling on the merits. *See U.S. ex rel. Jehl v. GGNSC Southaven, LLC*, No. 22-60209, 2022 WL 17443684 (5th Cir. Dec. 6, 2022) (hereinafter "*Jehl III*"). Addressing the same undisputed facts and clear unambiguous law, as did this Court, the Fifth Circuit ruled that it was undisputed that Nurse Trofort possessed a license during the full tenure of her employment, that under CMS's own interpretation of its regulation governing this action, Nurse Trofort's license was valid, and that the Defendant nursing home was entitled to rely on the federal government's interpretation of law in submitting Medicare and Medicaid claims. *See id.* (noting "as the district court concluded," Relator's position

3

is "unsupported by both CMS guidance and applicable Supreme Court and Fifth Circuit jurisprudence," *id.* at *3, because, "as the district court explained, CMS 'take[s] the position that the license is invalid only after a state governing board determines it is invalid in a final adverse action from which there is no appeal'," *id.*, and "no 'final adverse action' had been taken to invalidate [her] license," *id.* at *4); thus, as Defendants are entitled to be able to rely on federal law governing these federal claims, Defendants' certifications "were accurate and comported" with applicable law, *id.*). Consequently, like this Court before, the Fifth Circuit concluded that there was, under the facts and law, a clear complete failure of proof as to each essential element of FCA liability. *Id.* at *5 ("In sum, we agree with the district court that [Defendant] has 'demonstrated a complete failure of proof on each of the essential elements of the relator's claims.'").

After the Fifth Circuit's ruling, on March 28, 2023, this Court granted Defendants' motion for attorneys' fees and expenses. Based upon a detailed review of the record, the Court concluded that Relator's lawsuit "was patently and demonstrably frivolous" from start to finish. *Jehl II*, at *4. Specifically, the Court noted that Relator did not dispute that, prior to filing this action, he failed to conduct a simple inquiry of Virginia's public records which would have informed him that his core allegation and the primary basis for this lawsuit—that Nurse Trofort lacked a valid multistate license—was demonstrably false. *Id.* at *3. Because Relator's allegation was "bereft of any objective factual support," the action "clearly had no chance of success," and therefore the claim was frivolous under the FCA's fee-shifting provision. *Id.* Further, "despite the well-settled proposition that courts afford substantial deference to the CMS manual provisions interpreting the CMS's own regulations, the relator ignored the CMS rules, published in its *State Operations Manual*, which state plainly and unambiguously, as this court [previously] found, 'that a facility breaches the governing regulation [regarding licensure] only when (i) the authority having

4

jurisdiction regarding noncompliance with its applicable laws issues a final adverse action and (ii) that action is not under appeal or litigation by the facility or the professional providing services.'" *Id*. [1] Ultimately, the Court concluded that it found that "the relator's lawsuit was patently and demonstrably frivolous because an application of the plain language of public federal law—that is, the CMS's authoritative interpretation of its governing regulation regarding licensure set forth in the *State Operations Manual*—and application of the easily obtainable public facts—that Trofort held a valid, active multistate license during her employment with the defendants—lead to the inexorable conclusion that the relator's action is groundless." *Id.* at *4.[2]

## II.     LEGAL BACKGROUND

---

[1] As before, Relator bemoans the fact that he did not learn from Defendants of CMS's authoritative public interpretation of law that necessarily disposes of his action until discovery. *See* ECF 353 at 6. But Relator has no reason to complain. First, Relator's counsel, at a minimum, when accusing Defendants of fraud for violating law, should be aware of what the law actually provides, including the relevant federal agency's authoritative public interpretation of the law. Second, rather than dismiss the lawsuit once Relator learned from Defendants of CMS's dispositive, plain language interpretation of its own regulation, as one would expect, Relator instead elected to enter into an accelerated campaign, on multiple occasions, of discovery abuse, asserting a contention that one appellate court had already branded as facially frivolous and breaching a confidentiality provision in a settlement agreement with Defendants all in an attempt to salvage his case—all of which caused Defendants to incur substantial expense to defend against Relator's conduct. Consistent with Congress's intent in creating the FCA's fee-shifting provision, Relator should now bear that expense. *See, e.g., U.S. ex rel. Grynberg v. Praxair, Inc.*, 389 F.3d 1038, 1058 n.22 (10th Cir. 2004) (finding purpose of fee shifting provision is to penalize a plaintiff who "has misused his statutory privilege and distorted the intent of the legislation").

[2] The Court further observed that because its determination of frivolousness was dispositive of this issue, it did not need to analyze further Defendants' contentions that Relator's action was also clearly vexatious and brought primarily for purposes of harassment. *Id.* at *4. But the Court noted that it was also "persuaded by the defendants' arguments in regard to those assertions." *Id*. Relator did not address in his Motion to Reconsider the Court's observation that it was also persuaded by Defendants' contentions that Relator's action was also clearly vexatious and brought primarily for purposes of harassment. Hence, Relator waives his ability to raise these issues in his Reply, inasmuch as Defendants' lack the ability in this Opposition to rebut contentions that Relator, to date, has not specifically raised. *See Gillaspy v. Dallas Indep. Sch. Dist.*, 278 F. App'x 307, 315 (5th Cir. 2008) ("It is the practice of this court and the district courts to refuse to consider arguments raised for the first time in reply briefs."); *see also Degruy v. Wade*, No. 4:12-CV-25-SA-JMV, 2014 WL 12651183, at *5 (N.D. Miss. Mar. 26, 2014), *aff'd*, 586 F. App'x 652 (5th Cir. 2014).

Relator seeks relief under Fed. R. Civ. P. 54(b) under which courts may exercise their discretion to reconsider previously issued interlocutory orders. *See* ECF 353 at 1. Although "the rule grants the court broad discretion to reconsider, this power is exercised sparingly in order to forestall the perpetual reexamination of orders and the resulting burdens and delays." *Moore v. City of Clarksdale*, No. 4:22-CV-41-DMB-JMV, 2022 WL 17097425, at *2 (N.D. Miss. Nov. 21, 2022) (quoting *Lafayette City-Par. Cons. Gov. v. United States*, No. 6:22-CV-01127, 2022 WL 3570927, at *2 (W.D. La. Aug. 18, 2022)). Further, because "many of the same policy considerations apply both to motions for reconsideration under Rule 54(b) and to motions for reconsideration under Rule 59(e)," district courts "frequently apply the same standards to the two." *eTool Dev. Inc. v. Nat'l Semiconductor Corp.*, 881 F. Supp. 2d 745, 748 (E.D. Tex. 2012) (collecting cases); *see also Carr v. Cain*, No. 3:19-CV-274, 2023 WL 2186436, at *2 (N.D. Miss. Feb., 23, 2023) (applying the Rule 59(e) standards to a Rule 54(b) motion for reconsideration and denying the motion for reconsideration); *Pinkston v. Kuiper*, No. 4:17-CV-00039, 2019 WL 5777384, at *2 (N.D. Miss. Nov. 5, 2019) (same); *Hillie v. Williams*, No. 4:17-CV-69, 2018 WL 280531, at *1 (N.D. Miss. Jan. 3, 2018) (same).

A motion under Rule 59(e) must clearly establish either a manifest error of law or fact or must present newly discovered evidence. *See Pinkston*, 2019 WL 5777384, at *2. A Rule 59(e) motion is "not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 478-99 (5th Cir. 2004) (citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)). As a result, courts reject the losing party's Rule 54(b) motion when, like here, that party fails to identify any manifest error of law or fact or does not present any newly discovered evidence, but instead presents only the same arguments previously considered and rejected. *See e.g., Pinkston,*

6

2019 WL 5777384, at *2 (rejecting losing party's Rule 54 motion when he "fails to identify any manifest error of law or fact nor does he present any newly discovered evidence" but "[i]nstead his motion consists only of the same arguments previously considered and rejected by the court…").

## ARGUMENT

I. **COURT SHOULD DENY RELATOR'S RULE 54 MOTION BECAUSE RELATOR ONLY REPEATS THE SAME ARGUMENTS THE COURT PREVIOUSLY CONSIDERED AND REJECTED**

Relator does not state anywhere that he is offering new facts that were previously unavailable nor does Relator purport to offer any new case law. Instead, all Relator unapologetically offers are *precisely* the same contentions that this Court has already rejected. For example, leaving aside the multiple occasions Relator raised the same contentions he raises here during the merits phase of the case, Relator raised both his contentions (i) that the district court's decision at the pleading stage grants Relator immunity from application of the FCA's fee-shifting provision and (ii) that CMS's governing interpretation of its regulation should be discarded because it purportedly involves "surveying" and not "billing" in *substantially more detail* during the briefing cycle regarding Defendants' Joint Motion for Attorney's Fees than he does here in his Motion for Reconsideration.[3]

---

[3] As to Relator's contention that the Court's ruling at the pleading stage provides immunity from being found liable for attorney's fees at the conclusion of litigation, *see* ECF 334 at 2 ("Defendants ignore the fact that … this Court rejected [Defendants'] argument and allowed the case to proceed."), 7 ("Defendants' attempt to characterize this case as 'clearly frivolous' is squarely foreclosed by the Court's denial of Defendants' motion to dismiss …"), 8 ("If [Defendants' arguments] were true, the Court would not have denied Defendants' Motion to Dismiss …"). For Defendants' responses, the last time around, *see* ECF 338 at 5-10.

As to Relator's contention he previously raised, related to this argument, that Judge Mills' two-page recusal order—issued after Judge Mills, in his only decision after full briefing at summary judgment, had characterized Relator's action as "unfair[]," "absurd[]," "unjustifiable," "disproportionate," and "unjust," ECF 303 at 3-4, 7, 10-11, and before the Court had the benefit

Because Relator unabashedly does nothing more but retread contentions raised many times and rejected many times, there is no reason for the Court to exercise its discretion to yet again review these same contentions. Relator has simply given the Court no reason to reconsider its prior rulings. *See Kuiper,* 2019 U.S. Dist. LEXIS 191486, at *5. Indeed, aside from the absence of new facts or law, the only relevant legal development that has occurred since prior briefing on Defendants' Motion for Attorney's Fees is that the Fifth Circuit upheld the Court's dismissal of this action and fully endorsed the Court's analysis of the precise legal issues underlying Relator's lawsuit.

## II. RELATOR'S MOTION SHOULD ALSO BE DENIED BECAUSE RELATOR'S SAME ARGUMENTS ARE AS BASELESS AS THE LAST TIME RELATOR RAISED THE SAME ARGUMENTS AND THE COURT REJECTED THEM

Further, even if the Court were inclined to review the same contentions that Relator recently raised and that the Court rejected, those arguments should be rejected again because they are just as meritless as the last time Relator raised them.

Relator first contends that the fact that his action survived a Rule 12(b)(6) motion to dismiss demonstrates that his action is not clearly frivolous. *See* ECF 353 at 3-4. This is wrong for several reasons. *First*, as detailed at length the last time Relator raised the same issue, courts have not hesitated, when appropriate, to require FCA plaintiffs to compensate defendants for their reasonable attorney fees and expenses even after a plaintiff prevailed on the claim at the trial court

---

of Defendants' Opposition to Relator's response to the Court's Show Cause Order—also provides immunity from the FCA's fee-shifting provision, *see* ECF 334 at 2, 7, 8. For Defendants' responses, the last time around, to Relator's same contentions, *see* ECF 338 at 7-8 and n.6.

As to Relator's contention that CMS's only interpretation of the governing regulation should be ignored, *see* ECF 334 at 3, 10-11 (noting that CMS's dispositive guidance should be ignored because CMS provided the guidance in the context of survey guidance and not the billing process). For Defendants' responses, the last time around, *see* ECF 338 at 9-10 & n.8.

8

level *on the merits* (let alone here at the pleading stage). *See, e.g., U.S. ex rel. Wall v. Circle C Constr., LLC*, 813 F.3d 616 (6th Cir. 2016); *see also* ECF 338 at 5-10 (Defendants' response the last time Relator raised this contention before the Court last rejected it).

*Second,* the Court, at the motion to dismiss stage, obviously did not have the full record of Relator's conduct during the entire course of this proceeding that it had when it later ruled that Relator's action was clearly frivolous. For example, the Court did not know, among other things, (i) that Relator's counsel brought this action without any inside first-hand knowledge of company operations (such as that it routinely confirms the licensure status of professionals, such as Nurse Trofort, at the time of employment, consistent with the plain language of CMS's interpretation of governing law); (ii) that Relator failed to undertake even a minimal investigation into the validity of the allegations before filing even though a five-minute check (*see* ECF 338 at 3-4 n.3) would have revealed to him that the core allegation underlying this action was demonstrably false;[4] (iii)

---

[4] Relator falsely contends in his brief that the Court was wrong in stating that "relator does not dispute that he failed to conduct a simple online inquiry of Virginia's public records which would have informed him that his core allegation and he [sic] primary basis for this lawsuit—that Trofort lacked a valid multistate license—was demonstrably wrong." ECF 353 at 4 n.2. Relator's contention that the Court is wrong is baseless because Nurse Trofort, under the plain language of CMS's interpretation of its regulation, had always had a valid multistate license during her employment. Defendants had confirmed that fact through a five-minute inquiry with the Virginia Board of Nursing. ECF 337-1 at 2. But, contrary to Relator's assertion, the Court was correct in that Relator also failed to conduct a simple online search or any other type of search, as Relator himself confirmed as much during his deposition. *See* ECF 331 at 5 (quoting Relator's testimony during his deposition: "Q. Now, before filing your action, did you ever check with the Virginia nursing board to find out whether her [Nurse Trofort's] license had been reinstated prior to the time in which she was actually hired at Southaven? A. Did I check with the Virginia nursing board? No"). As stated previously, Relator's failure to conduct this simple inquiry of easily available public records is bizarre and inexplicable because when Relator himself deposed Nurse Trofort in a prior lawsuit, Nurse Trofort swore under oath to Relator *six* times that she always possessed a valid Virginia multistate license, and she pleaded with Relator to simply check publicly available records to confirm that fact. *See* ECF 338 at 3 n.2 (quoting testimony). Notwithstanding Nurse Trofort's plea, Relator, by his own admission, completely failed to conduct a five-minute inquiry into readily available and easily accessible public records, which resulted in his filing this frivolous, baseless lawsuit.

that once learning of the fatal flaw to the lawsuit—that is, falsely contending that Nurse Trofort had no license when during her employment she always had an active license—Relator simply decided to try to plead around that inconvenient fact by deriving a theory of a professional's license being invalid that is directly contrary to the relevant federal agency's interpretation of when that professional's license becomes invalid, *see* ECF 331 at 6; (iv) that once Defendants informed Relator's counsel that CMS's plain language interpretation of its own regulation foreclosed Relator's theory that Nurse Trofort's nursing license was invalid simply because Relator would like it to be invalid, Relator decided to engage in discovery abuse to create an issue of fact by enlisting a representative of the State to submit a declaration when CMS would not respond to Relator's discovery request, *see* ECF 338 at 10-11 & n. 9; (v) that, once the Court in a Show Cause Order characterized Relator action as "unfair[]," "absurd[]," "unjustifiable," "disproportionate," and "unjust," ECF 303 at 3-4, 7, 10-11, Relator, in desperation, engaged in the same discovery abuse the Court previously identified by filing into the docket irrelevant, inflammatory and uncross-examined information—including deposition testimony, photographs, graphic depiction of bedsores alleged to have been sustained in a settled lawsuit—months after the close of discovery, claiming to link alleged substandard care provided to Cassie Taylor, Relator's former client, to Nurse Trofort in an attempt to salvage the lawsuit, *see* ECF 338 at 11-12; (vi) that Relator would also, in response to the Show Cause Order, assert that "Defendants['] False Certifications Were Material" by relying only upon alleged care provided to a non-Medicare, non-Medicaid patient, a contention that a Circuit Court of Appeals had branded facially frivolous in a public ruling on the FCA fee-shifting provision, *see* ECF 338 at 14-15; *see also* ECF 331 at 7 n.3, and (vii) that, finally, to attempt to personally financially enrich himself, Relator caused a client to breach a confidentiality provision to attempt to prolong the inevitable dismissal of this lawsuit. *See* ECF

10

331 at 9-10; ECF 338 at 15-16. None of these facts were before the district court at the time it ruled at the preliminary motion to dismiss stage and, as pointed out the last time Relator raised these same contentions, all these facts, whether taken individually or collectively, demonstrate that Relator's action is clearly frivolous.

*Third*, Relator's position that CMS's interpretation of its own regulation should be ignored because that interpretation is solely confined to surveys and not to the "billing process" is itself frivolous and should be rejected, as stated previously, for multiple reasons. *See* ECF 338 at 9-10 & n.8. *First*, CMS's interpretation of its own regulation is clear and unambiguous and, as the Court noted the last time Relator raised the issue, resolves the precise issue in this case—namely, when a nurse's license is no longer valid. *See Jehl II*, at *3 ("[D]espite the well-settled proposition that courts afford substantial deference to the CMS manual provisions interpreting the CMS's own regulations, the relator ignored the CMS rules … which state plainly and unambiguously, … 'that a facility breaches the governing regulation … only when (i) the authority having jurisdiction regarding noncompliance with its applicable laws issues a final adverse action and (ii) that action is not under appeal or litigation by the facility or the professional providing services.'"). *Second*, the artificial distinction between surveys and billing Relator attempts to create has no meaning in this context when, in the first instance, nurses, as this Court and the Fifth Circuit, noted, do not bill for their services. *See Jehl I* at *6 (noting summary judgment evidence shows "no linkage between nurse licensure and the amount the government pays to the defendants in satisfaction of their submitted claims"); *Jehl III* at *5 (same, quoting district court ruling).[5] There is no billing

---

[5] Relator's citation to *U.S. ex rel. Johnson v. Golden Gate Nat'l Sen. Care LLC*, 223 F. Supp. 3d 882 (D. Minn. 2016) (*see* ECF 353 at 5-6), as has been mentioned many times before when the Court has rejected Relator's position, including most recently on Defendants' Motion for Fees (*see* ECF 334 at 10-11), is inapposite for multiple reasons. First, *Johnson* is completely inapplicable to this action because there was no issue in *Johnson* of what constitutes a valid professional license

guidance that CMS could issue relevant to this issue, and certainly Relator, who has the burden of proof, has not cited to and cannot cite to any.

## CONCLUSION

Because Relator simply repeats the same arguments he previously raised and the Court previously rejected and because his contentions are baseless, the Court should deny Relator's motion to reconsider.

Date:  April 24, 2023                                          Respectfully submitted,


/s/ Margaret Sams Gratz
Margaret Sams Gratz, Esq. (MSB # 99231)
William Grant Armistead (MSB # 9786)
Mitchell, McNutt & Sams, P.A.
P. O. Box 7120
Tupelo, MS  38802-7120
Telephone:  (662) 842-3871
Facsimile:  (662) 842-8450
mgratz@mitchellmcnutt.com

Robert Salcido (*pro hac vice*)

---

or what criteria is used to determine whether a license is valid or invalid, and there was no citation to CMS's Manual provision that contains CMS's interpretation of law.  Second, *Johnson*, unlike this case, *did* involve clinicians (rehabilitation therapists) who *did* actually bill time to claims that potentially enhanced payments the government made on those claims.  Hence, billing guidance could potentially be applicable.  Here, by contrast, nurses, like Nurse Trofort, do not record time on claims, and therefore no claims, as this Court and the Fifth Circuit have already pointed out, contain entries that are taken into account in the payment the government makes on a claim.  *See infra* in text, quoting decisions.  Thus, unsurprisingly, there are *no* CMS billing manuals that address when a nursing license is valid or invalid for billing purposes – *because there are no relevant billings*.  Here, all that exists as guidance is the plain language of CMS's interpretation of its regulation in its *State Operations Manual*, and that interpretation disposes of this "fraud" litigation because, as this Court and the Fifth Circuit have already concluded, Defendants have a right to rely on the plain language of government guidance when they submit claims to the government.  *See Jehl III* at *4 ("GGNSC was entitled to rely on [CMS] guidance as this court affords deference to CMS's manual provisions interpreting its own regulations.") (citations omitted); *Jehl I* at *4 ("To ensure objective rules guide a facility's conduct, CMS issued bright line rules so that facilities have guidance regarding when they must terminate needed healthcare professionals and so that they presumption of innocence and due process applies.").

12

        D.C. Bar No. 447951  
        California Bar No. 139138  
        Akin Gump Strauss Hauer & Feld LLP  
        2001 K. Street, N.W.  
        Washington, D.C. 20006  
        Telephone: 202-887-4000  
        Facsimile: 202-887-4288  
        rsalcido@akingump.com  

        ***Attorneys for Defendants***  
        **GGNSC Southaven LLC; GGNSC**  
        **Administrative Services LLC; GGNSC**  
        **Clinical Services**

## CERTIFICATE OF SERVICE

This is to certify that I, Robert Salcido, one of the attorneys for GGNSC Southaven, LLC individually and on behalf of all Defendants have this day furnished a true and correct copy of the above and foregoing **MEMORANDUM OF LAW IN SUPPORT OF RESPONSE IN OPPOSITION TO RELATOR'S MOTION FOR RECONSIDER ORDER FINDING THAT THIS CASE WAS FRIVOLOUS AND GRANTING ATTORNEYS' FEES TO DEFENDANTS** to the following via ECF filing:

Robert B. McDuff (MSB # 2532)
Law Office of Robert B. McDuff
767 North Congress Street
Jackson, MS 39202
Telephone: 601.259.8484
rbm@mcdufflaw.com

Richard R. Barrett (MSB #99108)
Law Office of Richard R. Barrett, PLLC
2086 Old Taylor Road
Suite 1011
Oxford, MS 38655
Telephone 662.380.5018
rrb@rrblawfirm.net

Philip N. Elbert, Esq.
Lisa P. Binder, Esq.
Nathan C. Sanders, Esq.
Neal & Harwell, PLC
1201 Demonbreun St., Suite 1000
Nashville, TN 37203
pelbert@nealharwell.com
lbinder@nealharwell.com
nsanders@nealharwell.com

This 24th day of April 2023.

*/s/ Robert Salcido*