# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. CAMERON JEHL,<br><br>Plaintiffs,<br><br>v.<br><br>GGNSC SOUTHAVEN LLC D/B/A GOLDEN LIVING CENTER-SOUTHAVEN et al.<br><br>Defendants. | Case No. 3:19cv091-NBB-JMV |

DECLARATION OF MARGARET SAMS GRATZ
IN SUPPORT OF DEFENDANTS' SUBMISSIONS AND BRIEFINGS
IN SUPPORT OF AN AWARD OF ATTORNEYS' FEES

Margaret Sams Gratz of Mitchell, McNutt & Sams, P.A., which is counsel for GGNSC Southaven LLC; GGNSC Administrative Services LLC; and GGNSC Clinical Services LLC in this action, respectfully declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following statement is true and correct:

**A.     Background**

1.     I am a shareholder at Mitchell, McNutt & Sams, P.A., and have been representing GGNSC Southaven LLC; GGNSC Administrative Services LLC; and GGNSC Clinical Services (hereinafter "Southaven") in this litigation since April, 2020.

2.     I have worked at Mitchell, McNutt & Sams, P.A. for approximately 18 years. My practice focuses primarily on nursing home defense, commercial disputes, employment litigation and other complex litigation matters. I have represented corporate clients, businesses and insurance companies in the state and federal courts of Mississippi and Tennessee.

3107494

3. I have published extensively on general litigation matters, including authoring the Damages Chapter in the *Mississippi Encyclopedia of Law* (2001 ed.). I have also received a number of honors throughout my career, including being named to the Best Lawyers in America list from 2013-2022 and sitting on the Governor's Judicial Advisory Committee from 2012-2018.

**B.     Mitchell, McNutt & Sams, P.A.**

4. Mitchell, McNutt & Sams, P.A. is one of Mississippi's largest law firms and practices in commercial law, general litigation and diversified areas of civil law. The firm has over 30 lawyers admitted to practice in Mississippi, Tennessee and Alabama.

5. We serve clients out of our offices in Tupelo, Mississippi; Columbus, Mississippi; Oxford, Mississippi; Memphis, Tennessee; and Starkville, Mississippi.

**C.     Legal Fees**

6. I first incurred legal fees in this action in April 2020.

7. In 2020, my rate was $160 per hour.

8. In 2021 and 2022, my rate was $200 per hour.

9. These rates are commensurate with my standard hourly rates for my other clients.

**D.     Role in This Litigation**

10. My role in this action was primarily to handle issues of general litigation that arose, including discovery matters and disputes that arose during the course of litigation.

11. To effectuate my role in this litigation, I worked closely with shareholders, attorneys and paralegals at Mitchell, McNutt & Sams, P.A. who had experience with general and complex litigation matters, including Brad Dillard, William Armistead, Amanda Burch and Casey Burgess.

12. I also worked closely with Robert Salcido from Akin Gump Strauss Hauer & Feld LLP ("Akin"). Mr. Salcido handled specialized issues in this case related to the False Claims Act ("FCA").

13. Mr. Salcido's expertise was necessary for this litigation, which presented complex theories of FCA liability. Mitchell, McNutt & Sams, P.A. does not have a practice focused on FCA litigation. I am familiar with the local legal market, and I am aware of no other firms with similar specialized FCA expertise.

14. A review of the 8 largest offices for legal offices in the Oxford, Mississippi area—in order from largest to smallest, Markow Walker, P.A.; Daniel Coker Horton & Bell, P.A.; Holcomb, Dunbar, Watts, Best, Masters & Golmon, P.A.; Upshaw, Williams, Biggers & Beckham, LLP; Campbell DeLong, LLP; Merkel & Cocke, P.A.; and Webb Sanders & Williams PLLC[1]—confirms the lack of specialized FCA expertise in the District. In reviewing the websites for these firms, I did not observe among these firms any practitioners who hold themselves out as False Claims Act practitioners. None of the law firms mentioned any particular experience with False Claims Act litigation except for Holcomb, Dunbar, Watts, Best, Masters & Golmon, P.A, which contains a page describing the general of its experiences of its criminal defense team as including "representing white collar criminal defendants for indictments involving False Claims Act."[2] This case is not a criminal FCA case.

**D. Attorney Fees in This Litigation**

---

[1] *See Oxford, MS Law Firms*, Martindale, https://www.martindale.com/search/attorneys-law-firms-articles/?term=Oxford%2C%20MS&loc=1 (last accessed Apr. 25, 2023).

[2] *See Your Criminal Defense Matters – Meet the Holcomb Law Group Team*, Holcomb Law Group, https://holcombgroup.com/meet-holcomb-dunbars-criminal-defense-team/ (last accessed Apr. 25, 2023).

3

15. Brad Dillard was, during the relevant times, a shareholder with Mitchell, McNutt & Sams, P.A. who handled a wide range of litigation defense matters in a variety of jurisdictions, including healthcare/long term care claims, employment and civil rights claims, and other general litigation matters. His rate in 2019 and 2020 was $160 per hour. I took over this litigation after Mr. Dillard passed away in April, 2020.

16. William Armistead is an attorney with Mitchell, McNutt & Sams, P.A. whose practice primarily focuses upon nursing home defense and insurance defense litigation, along with the defense of workers' compensation and employment claims. Mr. Armistead assisted with this matter in March and April 2020, following Mr. Dillard's death. His rate in 2020 was $160 per hour.

17. Amanda Burch is an attorney with Mitchell, McNutt & Sams, P.A. whose practice areas include general litigation, bankruptcy & creditors' rights, family law, and estate planning, probate & elder law. Ms. Burch has been assisting me with this matter from November 2020 to August 2021. Her rate in 2020 was $140 per hour. Her rate in 2021 was $160 per hour.

18. Casey Burgess was a paralegal with Mitchell, McNutt & Sams, P.A. until December, 2022, with whom I have worked extensively on litigation matters. She has assisted with this case since November 2019. Her rate in 2019 and 2020 was $67 per hour. Her rate in 2021 and 2022 was $90 per hour.

19. I worked closely with the shareholders, attorneys and paralegals. I supervised Ms. Burch and Ms. Burgess to ensure that they were working efficiently on all matters. The number of hours all of these individuals expended was reasonable, given the complexity, length and importance of this case.

20. Based on my experience practicing in Mississippi and my contact with other litigators in the State, including in the Northern District, my rate is consistent with that billed by the legal community for comparable work by attorneys with comparable experience.

21. Annexed hereto as Exhibit A is a true and correct copy of Microsoft Excel spreadsheet listing the monthly attorneys' fees billed and paid in this matter, and the supporting redacted invoices of Mitchell, McNutt & Sams, P.A. for attorney's fees and expenses in this matter.

**D.    Costs for Expert Work Performed in Connection with This Litigation**

22. In my role, I assisted with retaining the experts Robert Lane, Rick Harris, and W. Shane Hariel for purposes of this litigation and oversaw the work that they performed.

23. Mitchell, McNutt & Sams, P.A. retained Mr. Lane to provide his evaluation and opinions regarding whether the defendants' practices to verify prospective nursing employees' licenses are reasonable and conform to industry standards, whether a skilled nursing facility ("SNF") would reasonably be able to rely on state nursing board representations of validity of a nursing license presented as part of the hiring process, and the role of the SNF in assuring compliance with existing professional licensure standards. Mr. Lane prepared an expert report and was deposed.

24. Mr. Lane was compensated at a rate of $355 per hour, a rate that we determined was commensurate with rates customarily paid to experts preparing export reports and sitting for depositions and certainly reasonable given Mr. Lane's expert knowledge of industry standards. We retained Mr. Lane based on his experience as a licensed and certified nursing home administrator with approximately 39 years of health care and management experience, including 34 years of experience in the post-acute and long-term care sector.

25. The hours that Mr. Lane spent preparing his expert report and preparing for and attending deposition were reasonable, given the complexity of analyzing nurse licensure industry standards and the roles of the state nursing board and SNF in ensuring compliance with applicable standards.

26. Annexed hereto as Exhibit B is a true and correct copy of expenses incurred by Defendants in this matter, with expenses for Mr. Lane totaling $7,578.60. Mr. Lane's expenses were incurred in conjunction with the preparation and submission of his expert report, as well as preparation and deposition support services. Based on representations by Mr. Lane and the complexity of analyzing nurse licensure industry standards and the roles of the state nursing board and SNF in ensuring compliance with applicable standards, a fee of $7,578.60 is reasonable.

27. Mr. Harris was retained to opine as to the framework the nursing home industry employs to determine whether a nurse's license is current and active, when industry perceives that a nurse's license is no longer current and active, and what industry generally understands would be the remedy if a nurse continued to work after her license was no longer current and active. Mr. Harris prepared an expert report and was deposed.

28. Mr. Harris was compensated at a rate of $400 per hour, a rate that we determined was commensurate with rates customarily paid to experts preparing export reports and sitting for depositions and eminently reasonable given Mr. Lane's expertise with state and federal surveying. We retained Mr. Harris based on his extensive, 15-year experience as director of the Alabama state survey agency, part of the Alabama Department of Health, as well as his subsequent work as a consultant for CMS and trainer/subject matter expert for federal contractors employed by CMS. He also supervised paralegals that were compensated at a rate of $150 per hour for research in preparation for Mr. Harris' report.

29. The hours that Mr. Harris spent preparing his expert report and preparing for and attending deposition were reasonable, given the complexity of analyzing nurse licensure industry standards.

30. As reflected in Exhibit B, expenses for Mr. Harris totaled $14,680.00 and were incurred in conjunction with drafting his expert report and preparing and attending deposition. Based on representations by Mr. Harris as to the complexity of nurse licensure industry standards and the CMS surveying process, a fee of $14,680.00 is reasonable.

31. We retained Mr. Hariel to opine as to the Medicare and Medicaid ramifications stemming from the disputed licensure status of Nurse Trofort.

32. Mr. Hariel was compensated at a rate of $360 per hour, a rate that we determined was commensurate with rates customarily paid to experts preparing export reports and sitting for depositions and very reasonable given Mr. Hariel's extensive experience in healthcare accounting. We retained Mr. Hariel based on his extensive experience working with the healthcare industry as a licensed certified public accountant in the State of Mississippi. Mr. Hariel has spent more than 30 years working with the healthcare industry, and is a partner at Carr, Riggs & Ingram, one of the largest twenty-five public accounting firms in the nation. Mr. Hariel also supervised senior managers that were compensated at a rate of $265 per hour, managers that were compensated at a rate of $180 per hour, supervising senior accountants that were compensated at a rate of $165 per hour, and associate accountants that were compensated at rate of $130 per hour.

33. The hours that Mr. Hariel spent preparing his expert report and preparing for and attending deposition were reasonable, given the complexity of the Medicare and Medicaid reimbursement scheme and the reimbursement analysis that must be performed in a complex FCA action.

34.  As reflected in Exhibit B, expenses for Mr. Hariel totaled $21,240.00 and were incurred in conjunction with drafting his expert report and preparing and attending deposition. Based on representations by Mr. Harris as to the complexity of Medicare and Medicaid reimbursement, a fee of $21,240.00 is reasonable.

D.  **Mitchell, McNutt & Sams, P.A.'s Submitted and Paid Invoices**

35.  Our billing statements detail the work performed for this case. *See* Exhibit A. Some of the entries have been redacted to protect privileged attorney-client information.

36.  As to billing at Mitchell, McNutt & Sams, P.A., each client the firm represents is assigned a six-digit matter number. Each attorney records the time spent on a matter onto a timesheet. The timekeeper accounts for time in 1/10-of-an-hour increments. In addition to the matter number and the amount of time spent on the matter, the timekeeper provides a detailed description of the work performed for the matter during that time. The information on that timesheet is entered into an automated system called Surepoint Legal Management System (formerly Rippe & Kingston). At the end of each month, the system generates a bill for each client matter number.

37.  Expenses are charged to a client consistent with attorney time. When Mitchell, McNutt & Sams, P.A incurs an expense on behalf of a client matter, the matter number is recorded with the expense. The firm's accounting department tracks all expenses the client incurs and inputs the expenses into the Surepoint LMS system by matter number. When the client's monthly bill is generated by Surepoint LMS expenses incurred during the period billed appears on the bill.

38.  The bill lists the date worked, the description of the work performed, the timekeeper's name and the amount of time spent for each day worked on that matter during the billing period. The bill then summarizes total time the timekeeper expended, the timekeeper's rate

8

and the total value of the work the timekeeper performed. The bill sums the total value of work all timekeepers performed who worked on the matter during the billing period. The bill also itemizes expenses incurred on the matter, providing a description of the expense and the cost, and sums the total cost of expenses. Finally, the bill provides a total amount of the invoice, which includes the total value of the timekeepers' time and the expenses.

39. The bills are reviewed each month before they are submitted to the client. If applicable, all mistakes are corrected and revised bills are generated. This process was followed for all bills pertaining to this matter.

40. As detailed in Exhibit A, the amount of fees incurred by Mitchell, McNutt & Sams, P.A in this litigation through August 2022, when filing was complete on Relator's Fifth Circuit appeal, was $173,098.30.

41. As detailed in Exhibit B, the amount of expert expenses incurred by Mitchell, McNutt & Sams, P.A in this litigation through August 2022, when filing was complete on Relator's Fifth Circuit appeal, was $43,498.60.

42. Since that time, Relator has filed a motion for reconsideration on the Court's ruling finding Relator liable for Defendants' attorneys' fees. The client was billed $600.00 for submitting a response.

43. Defendants also incurred time and expense preparing this fee petition. The client was billed $685.00 for Defendants' work in preparing Defendants' submission for attorneys' fees.

44. Given what was at stake in this case—a complex FCA case in which Relator committed flagrant and repeated discovery abuse and—the number of hours that all Mitchell, McNutt & Sams, P.A attorneys and paralegals spent on this matter is reasonable for what was required to defend this matter.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: April 27, 2023
Tupelo, Mississippi

_____
Margaret Sams Gratz, MBA #99231