**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**

| | |
|---|---|
| **UNITED STATES OF AMERICA ex rel.**<br>**CAMERON JEHL,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**GGNSC SOUTHAVEN LLC D/B/A**<br>**GOLDEN LIVING CENTER-**<br>**SOUTHAVEN et al.**<br><br>**Defendants.** | Case No. 3:19cv091-NBB-JMV |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR AWARD OF**
**ATTORNEYS' FEES AND OTHER EXPENSES[1]**

Defendants submit this Memorandum in Support of their Motion for Award of Attorneys'
Fees and Other Expenses under the False Claims Act ("FCA"), 31 U.S.C. § 3730(d)(4).  On April
13, 2022, Defendants moved under the FCA for attorneys' fees and other expenses incurred over
the course of this litigation.  ECF 330.  On March 28, 2023, this Court held that Relator's lawsuit
was "patently and demonstrably frivolous" and granted Defendants' motion for attorneys' fees.
*United States ex rel. Jehl v. GGNSC Southaven, LLC*, No. 3:19-CV-091-NBB-JMV, 2023 WL
2668514, at *4 (N.D. Miss. Mar. 28, 2023).  Consistent with Federal Rule of Civil Procedure
54(d)(2)(C) and the Court's March 28, 2023 order, ECF 349, Defendants now move for an award
of attorneys' fees and other expenses in the total amount of $2,002,591.76.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

      A.      **Relator Files Initial and Amended Complaint Based on Demonstrably (and**
              **Publicly) False Information and Shifts to a New Theory of Liability.**

---

[1] Defendants do not move generally for costs in this filing, as the Clerk has already taxed costs in this
action.  ECF 336.

On April 23, 2019, Relator, a lawyer who has never worked for Defendants, filed an FCA action and common law claims against Defendants. Relator's initial complaint asserted that eight defendants—GGNSC Administrative Services LLC, GGNSC Clinical Services LLC, GGNSC Southaven LLC, GGNSC Equity Holding LLC, GGNSC Holdings LLC, GGNSC National Senior Care LLC, Drumm Corp. and Ronald E. Silva—breached the FCA.[2] ECF 2. Both Relator's initial complaint and March 11, 2020 amended complaint asserted that Defendants' claims were false because a single nurse, Nurse Lionelle Trofort, who undisputedly was educated and licensed as a nurse, purportedly lacked a multistate license. *See id.* at ¶ 64; ECF 59 at ¶ 60.

As Relator does not dispute, this claim was entirely, demonstrably, and publicly false. *See* ECF 350 at 5; *see also* ECF 303 at 12; ECF 327 at 9-10. In Defendants' initial motion to dismiss, filed on December 16, 2019, Defendants pointed out to Relator and provided documentation plainly demonstrating that at the time of Nurse Trofort's employment at Southaven, Southaven obtained direct, unrebutted proof from Virginia that Nurse Trofort held a valid multistate license at all times. *See* ECF 31-1; ECF 31-2; ECF 32 at 12-13.

Rather than concede that his FCA action was based upon a fundamental flaw, Relator chose, instead, to simply change the theory of the case. On July 10, 2020, Relator filed a Second Amended complaint, suddenly arguing that Nurse Trofort's license was invalid because Nurse Trofort had

---

[2] Mr. Dillard first appeared on behalf of GGNSC Southaven LLC and all defendants on November 20, 2019. *See* ECF 16. Mr. Salcido's motion to appear pro hac vice on behalf of the first six defendants was granted on December 4, 2019. *See* ECF 26. Mr. Dillard withdrew and Mr. Phillips stepped in as substitute counsel for Drum Corp. and Ronald E. Silva on December 10, 2019. ECF 29. Ms. North's motion to appear pro hac vice on behalf of Drum Corp. and Ronald E. Silva was granted on December 16, 2019. *See* ECF 30. This action was dismissed without prejudice as to Defendants GGNSC Equity Holdings LLC, GGNSC Holdings LLC, Golden Gate National Senior Care, LLC, Drumm Corp. and Ronald E. Silva on January 29, 2020. ECF 40. Mr. Armistead entered an appearance on behalf of Defendants on March 30, 2020. ECF 62. Ms. Gratz entered an appearance on behalf of Defendants on April 20, 2020. ECF 70.

changed her state of residence. *See* ECF 90. Relator sought over $30 million in damages under this theory of FCA liability. *See* ECF 303 at 5.

**B.    Relator Engages in Discovery Abuses in Conjunction with Summary Judgment and Briefing on Show Cause Order.**

After months of Discovery, Defendants filed a motion for Summary Judgment on May 13, 2021. ECF 246. In his response filed May 27, 2021, Relator engaged in the first of two acts of discovery abuse in this case by purporting to rely on the Declaration of Alwin Dockins, a State employee who was not named on any of Relator's initial disclosures, had no personal knowledge of the facts underlying this lawsuit and conducted no investigations of Defendants. *See* ECF 262-1; ECF 263. Defendants filed evidentiary objections in response to this blatant instance of discovery abuse on June 3, 2021. ECF 274-3. Relator filed a brief responding to these evidentiary objections on June 30, 2021. ECF 302. Defendants responded to Relator's brief on July 7, 2021. ECF 306. The Court has characterized Relator's action as a discovery violation. *See* ECF 303 at 13 n.3 (finding that Relator's production of Dockins' Declaration "late in this case and after discovery deadlines had passed" to be a "discovery violation").

On July 6, 2021, Judge Mills issued a Show Cause Order regarding why Relator's lawsuit should not be dismissed. The Court found that the government, through the Centers for Medicare & Medicaid Services ("CMS"), which promulgates rules governing the Medicare and Medicaid programs, issued rules regarding when a nursing license is invalid and that under the government's clear rules, Nurse Trofort possessed a valid license. *See* ECF 303 at 13.

On August 3, 2021, Relator then engaged in a second act of discovery abuse by filing into the record deposition testimony, photographs and a declaration as exhibits to his response to the Show Cause Order. ECF 312-5; ECF 312-12; ECF 312-13; ECF 312-14; ECF 312-15; ECF 312-16. Not only were these exhibits filed months after the close of discovery, but they also caused

the administrator of a patient's estate to breach the terms of a 2017 settlement agreement. *See* ECF 331 at 9-10. On August 13, 2021, Defendants filed a motion to strike these exhibits in response to this flagrant breach of the Federal Rules of Civil Procedure and the confidentiality provisions of Relator's former clients' settlement agreement. ECF 315. Relator filed a response in opposition on August 23, 2021, ECF 317, and Defendants filed a reply on September 8, 2021, ECF 324.

### C. After This Court Grants Summary Judgment, Relator Unsuccessfully Appeals to the Fifth Circuit and Unsuccessfully Petitions for Rehearing En Banc.

On March 30, 2022, after permitting extensive briefing—including providing Relator with an opportunity to address the Court's concerns about the lawsuit in the Show Cause Order—the Court granted Defendants' motion for summary judgment, holding that there was "a complete failure of proof on each of the essential elements of [Relator's] claims." *U.S. ex rel. Jehl v. GGNSC Southaven, LLC*, No. 3:19-cv-091-NBB-JMV, 2022 WL 983644, at *7 (N.D. Miss. Mar. 30, 2022).

Following the Court's decisive summary judgment ruling, Relator appealed this case to the Fifth Circuit. ECF 329. Relator filed an Appellant Reply Brief in that action on June 13, 2022, *U.S. ex rel. Jehl v. GGNSC Southaven, LLC*, No. 22-60209, 2022 WL 17443684 (5th Cir. Dec. 6, 2022), ECF 36, and Defendants filed an Appellee Brief on July 13, 2022, *id.*, ECF 39. On December 6, 2022, the Fifth Circuit affirmed this Court's summary judgment ruling on the merits, also holding that Defendants had "demonstrated a complete failure of proof on each of the essential elements of [Relator's] claims." *Id.* at *5 (internal quotation marks and citation omitted). On December 20, 2022, Relator then petitioned the Fifth Circuit for rehearing en banc. *Id.*, ECF 68. This petition was denied, without poll, on January 4, 2023. *Id.*, ECF 71.

### D. This Court Awards Costs and Grants Motion for Attorneys' Fees and Expenses, the Latter of Which Relator Continues to Challenge.

On April 13, 2022, two weeks after the District Court's ruling, Defendants filed a bill of costs and moved for attorneys' fees and expenses under the FCA's fee-shifting provision, citing the frivolous nature of Relator's case and the pattern of vexatious and harassing conduct Relator engaged in throughout this litigation. ECF 331. Relator filed a response in opposition to the motion for attorneys' fees on April 27, 2022, ECF 333, and a motion objecting to the clerk's taxation of Defendants' costs on May 10, 2022, ECF 340, which led to additional briefing between the parties.

After the Fifth Circuit's ruling, on March 28, 2023, this Court denied Relator's motion objecting to the clerk's taxation of costs and granted Defendants' motion for attorneys' fees and expenses, holding that Relator's lawsuit was "patently and demonstrably frivolous." *Jehl*, 2023 WL 2668514, at *4. Relator then proceeded to file a motion for reconsideration on April 10, 2023, ECF 352, a motion that, as discussed in Defendants' April 24, 2023 response, simply repeats the same arguments raised in his April 27, 2022 response to Defendants' April 13, 2022 motion for attorneys' fees. *See* ECF 355; *compare* ECF 353 *with* ECF 334.

## II. THE COURT SHOULD AWARD DEFENDANTS THE FULL AMOUNT OF ATTORNEYS' FEES INCURRED FOR LEGAL WORK PERFORMED BY MR. SALCIDO AND AKIN DURING THE COURSE OF THIS LITIGATION, AS WELL AS AN UPWARD ADJUSTMENT TO MR. SALCIDO'S LODESTAR.

Under the FCA, in cases where the government does not intervene in the action, "the court may award to the defendant its reasonable attorneys' fees and expenses if the defendant prevails in the action and the court finds that the claim of the person bringing the action was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment." 31 U.S.C. § 3730(d)(4). In the Fifth Circuit, "courts apply a two-step method for determining a reasonable attorney's fee award." *Combs v. City of Huntington*, 829 F.3d 388, 391 (5th Cir. 2016) (internal citation omitted). *First*, the court must calculate the lodestar by taking the "product of the hours

reasonably expended by the law firms and the reasonable hourly rate for their services." *McClain v. Lufkin Indus.*, 649 F.3d 374, 381 (5th Cir. 2011) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). *Second*, the court "may then adjust the lodestar upward or downward depending on the respective weights of the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 [(5th Cir. 1974)]." *Forbush v. J.C. Penney Co.*, 98 F.3d 817, 821 (5th Cir. 1996).

As outlined in Mr. Salcido's Declaration, the amount of Akin's fees and expenses in this litigation through August 2022, when filing was complete on Relator's Fifth Circuit appeal, is $1,664,196.00. Salcido Decl. at ¶ 33 (attached in Ex. 1 to Defs.' Mot. for Award of Att'ys' Fees and Other Expenses). Over the course of this litigation, Mr. Salcido billed at a discounted rate of $770 per hour. *Id.* at ¶ 18. He worked with and/or supervised other attorneys in this matter, collaborating most extensively with three attorneys who billed at rates ranging from $500 to $740 per hour. *Id.* at ¶ 23.

Defendants request that the Court award Defendants attorneys' fees in the amount of $2,002,591.76, consistent with the time reasonably expended by Akin with regards to this litigation multiplied by the discounted rates of Mr. Salcido and the attorneys he supervised on this matter, pursuant to the lodestar approach, with an upward adjustment under the *Johnson* factors for Mr. Salcido's lodestar by 17.6% for fees incurred in 2019, 20.4% for fees incurred in 2020, by 30.6% for fees incurred in 2021 and by 34.5% for fees incurred in 2022.

**A.    The Court Should Multiply the Akin Attorneys' Discounted "Home" Rates Charged to the Client by the Reasonable Hours Expended in This Litigation to Calculate a Lodestar of $1,664,196.00.**

**1.    Mr. Salcido's Extensive Experience with the FCA, and the Lack of Available Expertise in the Northern District of Mississippi, Supports the Use of Akin's Discounted "Home" Rates in the Lodestar Calculation.**

6

*First*, because it was necessary for Defendants to retain out-of-district counsel with specialized FCA expertise, such as Mr. Salcido and the other attorneys on the Akin team, the Court should utilize Akin's "home" rates—here, Akin's significantly discounted hourly rates commensurate with the Washington, D.C. legal market—to calculate the lodestar.

When determining what constitutes a "reasonable hourly rate," courts are to look to "the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). The prevailing market rate is the rate in the relevant community "for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* The Fifth Circuit has held that "when an attorney's customary billing rate is the rate at which the attorney requests the lodestar be computed and that rate is within the range of prevailing market rates, the court should consider this rate when fixing the hourly rate to be allowed." *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 328 (5th Cir. 1995) (quoting *Islamic Ctr. of Mississippi, Inc. v. City of Starkville, Miss.*, 876 F.2d 465, 469 (5th Cir. 1989)). "When that rate is not contested, it is *prima facie* reasonable." *Id.* (quoting same).

The Supreme Court "has been silent on how to determine the 'relevant community'" under fee-shifting statutes. *United States v. Bollinger Shipyards, Inc.*, No. CIV.A. 12-920, 2015 WL 5306233, at *4 (E.D. La. Sept. 10, 2015). In many cases, the relevant community will be the forum in which the court sits. *McClain*, 649 F.3d at 382. But where it is necessary to turn to out-of-district counsel in a particular case, "[counsel's] 'home' rates should be considered as a starting point for calculating the lodestar amount." *Id.*; *see also Bollinger*, 2015 WL 5306233, at *4-5 (E.D. La. Sept. 10, 2015) (awarding attorneys' fees in an FCA action based upon the reasonable hourly rates of Washington, D.C.-based attorneys where counsel's declarations set forth "(1) his firm's unique qualifications and expertise in this type of litigation, (2) the apparent corresponding

7

lack of such expertise in the New Orleans market and (3) the reasonableness of the number of hours submitted [ ] in this matter").

Courts have awarded "home" rates where it is necessary to retain out-of-district attorneys with specialized expertise that is not available in the District, such as FCA expertise. *See Bollinger*, 2015 WL 5306233, at *5 (noting that counsel's law firm, "according to [counsel's] declarations, possess a particular expertise in federal procurement fraud and federal False Claims Act ('FCA') litigation that is not to be found in the New Orleans market" and finding that "the information and procedural history that can be gleaned solely from the docket sheet in this case demonstrates that it was both appropriate and necessary from the initiation of this matter for Bollinger to retain out-of-district counsel with both expertise and experience in federal procurement fraud and FCA litigation"); *see also Aldridge on behalf of United States v. Corp. Mgmt. Inc.*, No. 116CV00369HTWLRA, 2022 WL 983167, at *15 (S.D. Miss. Mar. 30, 2022) (observing that "FCA *qui tam* litigation normally involves complex issues").

Because of Mr. Salcido's extensive experience in FCA litigation—experience necessary to litigate this case—and the lack of comparable expertise in the relevant forum, the Court should award attorneys' fees for Mr. Salcido commensurate with his Washington, D.C.-based[3] rates. As described at length in Section I, this case involved shifting theories of FCA liability that resulted in extensive briefing before this Court, including additional briefing ordered *sua sponte*; substantial resources devoted to fact and expert discovery on issues of the CMS survey process, SNF industry standards and Medicaid and Medicare reimbursement issues; and a Fifth Circuit appeal. The stakes of this litigation, in which Relator was seeking $30 million in damages, were

---

[3] For the majority of this litigation, Mr. Salcido worked out of Akin's Washington, D.C. office. He now splits his time between Akin's Washington, D.C. office and Irvine, California office. Salcido Decl. at ¶ 2.

significant. Defendants relied on Mr. Salcido's extensive experience in FCA litigation, accumulated over the course of a 5-year career practicing FCA litigation at the Department of Justice ("DOJ"), Salcido Decl. at ¶ 3, and a 30-year career practicing FCA litigation and investigations work at Akin, *id.* at ¶ 2. *See also id.* at ¶ 4 (discussing awards, litigation wins, lectures and publications, including a 1,050-page treatise on the FCA published by the American Health Law Association). Specialized expertise in civil FCA litigation of this kind is simply not available in the Northern District of Mississippi. *See* Sams Gratz Decl. at ¶¶ 13-14 (attached at Ex. 2 to Defs.' Mot. for Award of Att'ys' Fees and Other Expenses) (noting that Ms. Sams Gratz is "familiar with the local legal market" but "aware of no other firms with similar specialized FCA experience" and describing her inability to find similar specialized FCA experience in a survey of the largest Oxford, Mississippi-based firms); *see also* Salcido Decl. at ¶ 5 ("The FCA is a specialized area of law. DOJ has a dedicated core unit that enforces the FCA, there are counsel who frequently act as Relator's counsel and market themselves as such, and there are defense counsel, like me, who primarily or exclusively, work in defending FCA actions.").

Here, rather than request the rate customarily earned, Akin requests only the discounted rates that its attorneys received for their work in this action. Mr. Salcido's rate of $770 per hour is substantially lower than his standard rate at Akin. *See id.* at ¶ 18 (noting that $770 was a 26% discount off of Mr. Salcido's standard rate in 2019, a 33% discount in 2020, a 38% discount in 2021, a 43% discount in 2022, and a 48% discount in 2023). This rate is also consistent with, and in fact, significantly lower than, customary fees charged by law firm partners in Washington, D.C. *See id.* at ¶ 26 (citing to results of biennial *Partner Compensation Survey* promulgated by Major, Lindsey & Africa, which found that the average billing rate for a Washington, D.C. law firm partner was $885 in 2018, $988 in 2020 and $1,048 in 2022). Similarly, the rates incurred by associates

Mr. Salcido worked with and supervised in this matter, are commensurate with the rates of other similarly experienced and educated associates at both Akin and other large Washington D.C. firms. *See id.* at ¶ 23; *see also Missouri v. Jenkins*, 491 U.S. 274, 285 ("We thus take as our stating point the self-evident proposition that the 'reasonable attorney's fee' provided for by statute should compensate the work of paralegals, as well as that of attorneys."). The discounted fees charged by Akin attorneys are reasonable hourly rates for purposes of a lodestar calculation. *See Bollinger*, 2015 WL 5306233, at *6 ("If Bollinger and its counsel were satisfied that the discounted [home] rate charged during that time was reasonable and appropriate for the work being done . . . then as far as this Court is concerned, the objectively reasonable rate for this work is established.").

> **2.**     **The Hours That Akin Attorneys Expended in Litigating This Case Were Reasonable.**

The hours that Akin attorneys billed in this matter were reasonably expended, and the Court should incorporate them into its calculation of the lodestar. To calculate the lodestar, a court must determine the "hours reasonably expended by the law firms." *McClain*, 649 F.3d at 381 (citing *Hensley*, 461 U.S. at 433). The Supreme Court has noted that "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Hensley*, 461 U.S. at 435. When moving for attorneys' fees, "[n]ormally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified." *Id*.; *see also Bollinger*, 2015 WL 5306233, at *7-8 (noting that as "to the reasonableness of the hours claimed, the Court is guided initially by the notion that the result is what matters" and holding that because it "cannot be seriously argued that Bollinger achieved anything other than an excellent result here[,] it follows that they are entitled to a fully compensatory fee under the law").

From November 2019 to March 2023, Akin attorneys and paralegals billed approximately 2,272 hours defending this litigation. *See* Salcido Decl. at Ex. B. Mr. Salcido alone billed

approximately 1,893.70 hours in his representation of Defendants in this matter. *See id.* These hours were reasonably expended.

*First*, as described at length in Section I, this case has been heavily litigated. *See id.* at ¶ 14. This action has involved three complaints (the last of which presented an entirely new theory of FCA liability), briefing on motions to dismiss, months of discovery, briefing on discovery abuses, briefing on a *sua sponte* Show Cause Order, briefing on summary judgment, briefing on appeal at the Fifth Circuit and finally briefing on attorneys' fees and costs. "Given what was at stake in this case—Relator seeking an award of more than $30 million dollars—as well as the burden and cost associated with responding to multiple, shifting theories of liability Relator raised and discovery abuse that occurred, the number of hours that all Akin attorneys spent on this matter is reasonable for what was required to defend this matter." *Id.* at ¶ 34; *see also id.* at ¶ 24 (explaining that he "worked closely" with attorneys Catherine Creely, Maureen McDonald and Emily Gerry "to ensure that they were working efficiently on all matters" and concluding that the "number of hours expended in this litigated was reasonable, given the complexity, length and importance of this case and the multiple filings in this action as reflected on the docket sheet, and the amount of damages Relator sought").

*Second*, Defendants' success in this litigation demonstrates the reasonableness of the hours expended. After briefing and extensive fact and expert discovery, Defendants were able to "demonstrate[] a complete failure of proof on each of the essential elements of [Relator's] claims," both to this Court and to the Fifth Circuit. *Jehl*, 2022 WL 983644, at *7 (this Court); *Jehl*, 2022 WL 17443684, at *5 (Fifth Circuit). Defendants were further able to establish that Relator's "novel" theory of FCA liability was not only wrong, but so demonstrably wrong as to be frivolous. *Jehl*, 2023 WL 2668514, at *4. As it "cannot be seriously argued" that Defendants "achieved

anything other than an excellent result here," *Bollinger*, 2015 WL 5306233, at \*8, the Court should use all time billed for Akin timekeepers in its lodestar calculation.

Because Akin's discounted Washington, D.C.-based home rates are reasonable, given the need for Mr. Salcido's specialized FCA expertise and the lack of availability of such expertise in the Northern District of Mississippi, and because Akin's hours are reasonable, given the extensive work that has gone into litigating this complex, litigation-heavy case and the success that Defendants have had in disproving Relator's new theory of FCA liability before this Court and before the Fifth Circuit, Akin should be awarded a lodestar of $1,664,196.00, equal to the product of the discounted home rate of each attorney or paralegal multiplied by the hours billed in this case.

**B.** **Additionally, the Court Should Adjust the Lodestar Upward Under *Johnson* to Make It Commensurate with the Amount Billed to Defendants Using Akin's Discounted Rates.**

Given the balance of the *Johnson* factors, in addition to awarding Akin a lodestar consistent with its discounted home rate, the Court should adjust the lodestar for Mr. Salcido upward by 17.6% for fees incurred in 2019, 20.4% for fees incurred in 2020, 30.6% for fees incurred in 2021, and 34.5% for fees incurred in 2022, for a total award of $2,002,591.76.

After calculating the lodestar, the Court "must then consider whether the lodestar should be adjusted." *McClain*, 519 F.3d at 284. The court must consider the 12 factors enumerated in *Johnson v. Georgia Highway Express, Inc., see id.,* namely: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience,

reputation, and ability of the attorneys; (10) 'the undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19.

District courts have awarded significant upward adjustments of the lodestar to attorneys litigating complex FCA actions. *See Aldridge*, 2022 WL 983167, at *14 (awarding a 15% upward adjustment to the lodestar, citing to "the novelty and difficulty of the questions" and explaining that the "additional convolutions of this particular *qui tam* case" were not adequately factored into the lodestar and that the "hard-fought, protracted nature of the litigation . . . attest[s] to the extraordinary difficulty of the case"); *U.S. ex rel. Garibaldi v. Orleans Par. Sch. Bd.*, 46 F. Supp. 2d 546, 572 (E.D. La. 1999), *vacated on other grounds*, 244 F.3d 486 (5th Cir. 2001) (awarding a 50% upward adjustment to the lodestar, citing to "the novelty and difficulty of the questions" and "the amount involved and the results obtained" and noting a "paucity of Fifth Circuit precedent on many issues, because so few *qui tam* actions are successfully litigated past the early stages").

Here, the *Johnson* factors weigh in favor of an upward adjustment.

*First*, with regard to the <u>fourth</u> and <u>seventh</u> *Johnson* factors, due to Mr. Salcido's acceptance of this case and the 1,893.70 hours of billable time it has consumed, Mr. Salcido was necessarily precluded from undertaking other client work for which he would have billed a much higher rate. As noted above, at the time Mr. Salcido negotiated a discounted rate with Defendants in 2019, the discount was a 26% reduction in his standard rate. Salcido Decl. at ¶ 18. By 2023, this had increased to a 48% reduction in his standard rate. *Id.*

The average of Mr. Salcido's billed rate to all other clients, which ranged from $930.78 in 2019 to $1,259.16 in 2023, is further evidence that Defendants paid significantly below the value the legal market otherwise was willing to pay for Mr. Salcido's FCA expertise. *Id.* at ¶ 19. While

this litigation accounted for 35% of Mr. Salcido's billed hours in 2021, for instance, it accounted for only 27% of his total billed fees for the year. *Id.* This time-consuming litigation has a had a significant impact on Mr. Salcido's ability to generate other business at the rates the market will pay.

*Second*, with regard to the <u>eleventh</u> *Johnson* factor, Mr. Salcido's discounted rates are a product of the nature and length of the professional relationship he has with the Company and are not representative of the overall higher value of his time. The Company first retained Mr. Salcido to defend its FCA litigation in 2008. *Id.* at ¶ 12. Due to Mr. Salcido's extensive history with handling FCA lawsuits and investigations for the Company, Mr. Salcido engaged in negotiations with the Company to perform his work at a significant discount. *See id.* at ¶¶ 12, 18.

*Third*, with regard to the <u>third</u> and <u>ninth</u> *Johnson* factors, as described at length in our discussion of the reasonableness of Akin's discounted home rates in Section II.A.1, Mr. Salcido's decades-long experience with FCA litigation and the special skills he brings to this case as a dedicated FCA civil defense attorney are profoundly important. *See* Salcido Decl. at ¶¶ 1-6; *see also Aldridge*, 2022 WL 983167, at *14 (characterizing this factor as "the special skill and experience of counsel"). Mr. Salcido's skills were requisite to the successful outcome of this action. *See, e.g.*, Sams Gratz Decl. at ¶¶ 12-13.

*Fourth*, with regards to the <u>second</u> *Johnson* factor, this case has involved difficult legal questions. While Relator's first legal theory was premised on demonstrably false information, and while Relator's second legal theory was ultimately shown to be frivolous, litigating an FCA implicating CMS' survey process and the complex statutory and regulatory scheme underlying Medicare and Medicaid is a difficult task. This inherent difficulty was compounded by Relator's switch in legal theory and multiple acts of discovery abuse. Salcido Decl. at ¶ 14; *see also*

14

*Aldridge*, 2022 WL 983167, at *15 (noting that "FCA *qui tam* litigation normally involves complex issues" but that the "complexities surrounding the issues in [this case] were compounded" by the circumstances of the case).

*Fifth*, with regards to the <u>twelfth</u> *Johnson* factor, although attorneys' fees were not awarded in these actions—because the United States, and not a relator, as here, was the plaintiff—it is worth noting that the amount that Defendants have paid Akin with regards to this litigation is substantially lower than the amount paid in comparable FCA cases Mr. Salcido defended for GGNSC Holdings LLC and its affiliates in prior years that were determined on the merits. Salcido Decl. at ¶ 21 (noting that attorneys' fees of $4.3 million were incurred to successfully defend the Company on the merits in *United States of America ex rel. Jamison v. McKesson Corp.*, 900 F. Supp. 2d 683 (N.D. Miss. 2012) and that attorneys' fees of $2.3 million were incurred to successfully defend the Company on the merits in *United States ex rel. Lawson v. Aegis Therapies*, Inc., 2015 U.S. Dist. LEXIS 45221 (S.D. Ga. Mar. 31, 2015)).

*Finally*, with regards to the <u>first</u> *Johnson* factor, as we have detailed extensively in Section I and in our discussion of the reasonableness of hours expended in this action in Section II.A.2, the amount of time and labor involved in this action for Mr. Salcido since the initial complaint was unsealed in November 2019 has been substantial.

Taken together, the *Johnson* factors indicate that an upward adjustment to the loadstar is appropriate in this action. Specifically, the Court should adjust upward Mr. Salcido's lodestar by 17.6% for fees incurred in 2019 (for a 2019 award of $53,557.16), by 20.4% for fees incurred in 2020 (for a 2020 award of $701,512.18), by 30.6% for fees incurred in 2021 (for a 2021 award of $988,580.43) and by 34.5% for fees incurred in 2022 (for a 2022 award of $258,941.99). This adjustment would result in a total award of $2,002,591.76. This adjustment reflects the additional

amount that Defendants would have paid to Akin for Mr. Salcido's time, had they been charged the average amount all clients excluding the Company were charged for Mr. Salcido's time between 2019 and 2023, *see* Salcido Decl. at ¶ 19, Table 3, rather than the heavily discounted rate that the Company was charged for Mr. Salcido's time.

III.   **THE COURT SHOULD AWARD DEFENDANTS THE FULL AMOUNT OF ATTORNEYS' FEES INCURRED FOR LEGAL WORK PERFORMED BY MS. SAMS GRATZ AND MITCHELL, MCNUTT & SAMS DURING THE COURSE OF THIS LITIGATION.**

As outlined in Ms. Sams Gratz's Declaration, the amount of Mitchell, McNutt & Sams' attorneys' fees in this litigation through August 2022, when filing was complete on Relator's Fifth Circuit appeal, is $173,098.30.  Sams Gratz Decl. at ¶ 9 (attached at Ex. 2 to Defs.' Mot. for Award of Att'ys' Fees and Other Expenses).   Since that time, she has billed Defendants $600 for submitting a response to Relator's motion for reconsideration and $685 for work in preparing Defendants' submission for attorneys' fees.  *Id*.  Ms. Sams Gratz billed at a rate of $160 per hour in 2020 and $200 per hour in 2021 and 2022.  *Id.* at ¶¶ 7-8.  She worked with and/or supervised other attorneys billing at rates ranging from $140 to $160 per hour and a paralegal whose rate ranged from $67 to $90 per hour.  *See id.* ¶¶ at 15-19.  Defendants request that the Court award Defendants attorneys' fees in the full amount of $174,383.30 using the lodestar method, consistent with the time reasonably expended by Mitchell, McNutt & Sams with regards to this litigation multiplied by the standard rates of Ms. Sams Gratz and the attorneys she worked with and/or supervised on this matter.

*First*, a lodestar rate of $160 or $200 per hour for an attorney practicing in the Northern District of Mississippi is consistent with, or even lower than, the fees that have been awarded as reasonable hourly rates in numerous cases in the District.  *See, e.g., Smith v. Humphreys Cnty., Mississippi*, No. 4:21-CV-84-SA-JMV, 2023 WL 2587483, at *3 (N.D. Miss. Mar. 21, 2023)

(awarding attorney's fees based on $200 per hour hourly rate, an hourly rate described as "at the lower end of the hourly range submitted to Mississippi federal courts"); *Berkley v. Lafayette Cnty., Mississippi*, No. 3:19-CV-217-MPM-JMV, 2022 WL 533051, at *5 (N.D. Miss. Feb. 22, 2022) (awarding attorneys' fees at rate of $350 per hour to litigation partner, $260 for litigator and $125 for paralegal and characterizing them as "appropriate market rates in the relevant community"); *Big Binder Express, LLC v. Liberty Mut. Fire Ins. Co*., No. 3:19CV22-M-P, 2021 WL 5135479, at *2 (N.D. Miss. Nov. 3, 2021) (awarding attorneys' fees of $350 per hour).

These rates are also consistent with what Ms. Sams Gratz understands, based on her experience and contact with other litigators, to be the customary rate in the District. Sams Gratz Decl. at ¶ 20. Moreover, these rates are commensurate with Ms. Sams Gratz's standard hourly rates for her other clients. *Id.* at ¶ 9. Because Ms. Sams Gratz's customary billing rate, as well as the billing rates of her peers at Mitchell, McNutt & Sams, is within the range of prevailing market rates, the Court should utilize the rates that Mitchell, McNutt & Sams charged to Defendants in this matter as reasonable hourly rates for purposes of calculating the lodestar. *See Louisiana Power & Light*, 50 F.3d at 328.

*Second*, all hours billed by Mitchell, McNutt & Sams in this litigation were hours reasonably expended by the law firm and should be included in the lodestar calculation. As discussed, this case has been heavily litigated and extensively briefed. "Given what was at stake in this case—a complex FCA case in which Relator committed flagrant and repeated discovery abuse and—the number of hours that all Mitchell, McNutt & Sams, P.A attorneys and paralegals spent on this matter is reasonable for what was required to defend this matter." Sams Gratz Decl. at ¶ 44; *see also id.* at ¶ 19 ("I worked closely with the shareholders, attorneys and paralegals. I supervised Ms. Burch and Ms. Burgess to ensure that they were working efficiently on all matters.

The number of hours all of these individuals expended was reasonable, given the complexity, length and importance of this case.").  Moreover, as described in Section II.A.1, Defendants' success in this litigation, *see Jehl*, 2022 WL 983644, at *7; *Jehl*, 2022 WL 17443684, at *5; *Jehl*, 2023 WL 2668514, at *4.  As it "cannot be seriously argued" that Defendants "achieved anything other than an excellent result here," *Bollinger*, 2015 WL 5306233, at *8, the Court should use all time billed for Mitchell, McNutt & Sams timekeepers in its lodestar calculation.

In sum, the Court should award Defendants attorneys' fees by calculating the lodestar as the product of the time billed by Mitchell, McNutt & Sams in this matter and the rates at which Defendants were, for an award of $174,383.30 using the lodestar method.

## IV. THE COURT SHOULD AWARD DEFENDANTS THE FULL AMOUNT OF ATTORNEYS' FEES AND EXPENSES INCURRED FOR LEGAL WORK PERFORMED BY MS. NORTH AND BENESCH, FRIEDLANDER, COPLAN & ARONOFF DURING THE COURSE OF THIS LITIGATION.

Per Ms. North's Declaration, the amount of Benesch, Friedlander, Coplan & Aronoff's attorneys' fees in this litigation is approximately $19,665.  *See* North Decl. at Ex. A (attached at Ex. 3 to Defs.' Mot. for Award of Att'ys' Fees and Other Expenses).  Benesch, Friedlander, Coplan & Aronoff will also charge Defendants an hourly rate of $495 for the 2.2 hours Ms. North spent researching and preparing for her declaration, for a total of $1,089.  *Id*. at ¶ 4.

Ms. North billed at a rate of $450 per hour in 2019, 2020 and 2021.  *Id.*  Defendants request that the Court award Defendants attorneys' fees in the full amount of $20,754 using the lodestar method, consistent with the time reasonably expended by c with regards to this litigation multiplied by the Ms. North's standard rate.

*First*, because it was necessary for former Drumm Corp. and Mr. Silva to retain Ms. North as out-of-district counsel—given the fact that Drumm Corp. and Mr. Silva had no contacts with

18

the State of Mississippi and given Ms. North's extensive and particularized experience with defending Drumm Corp. and Mr. Silva in complex litigation that relates to the nature of their relationship to the Company—the Court should use Ms. North's home rate of $450 in calculating the lodestar. *See McClain*, 649 F.3d at 382; *Bollinger*, 2015 WL 5306233, at *4-5.

Based on her experience in the forum, Ms. North believes her fees to be reasonable for an attorney "with [her] skill and experience based in California," *see* North Decl. at ¶ 7, and her fees are consistent with those awarded to attorneys working for firms in the San Francisco Bay Area, *see, e.g., Foster v. Adams & Assocs., Inc*., No. 18-CV-02723-JSC, 2022 WL 425559, at *9 (N.D. Cal. Feb. 11, 2022) (awarding attorneys' fees ranging to San Francisco law firm attorneys ranging from $265-$975 per hour). Because it was necessary to retain Ms. North as out-of-state counsel, and because Ms. North's rates appear to fall within the prevailing market rate for her home forum, the court should utilize $450 per hour for the lodestar.

*Second*, all hours billed by all hours billed by Benesch, Friedlander, Coplan & Aronoff in this litigation were hours reasonably expended by the law firm and should be included in the lodestar calculation. As discussed, this case has been heavily litigated and extensively briefed. Moreover, as described in Section II.A.1, Defendants' success in this litigation, *see Jehl*, 2022 WL 983644, at *7; *Jehl*, 2022 WL 17443684, at *5; *Jehl*, 2023 WL 2668514, at *4. Here, Ms. North was able to achieve dismissal for her clients with an expenditure of only 45.9 hours on this matter, including 2.2 spent preparing her declaration. *See* North Decl. at ¶ 4. As it "cannot be seriously argued" that Defendants "achieved anything other than an excellent result here," *Bollinger*, 2015 WL 5306233, at *8, the Court should use all time billed for Benesch, Friedlander, Coplan & Aronoff in its lodestar calculation.

*Finally*, Ms. North seeks reimbursement of three reasonable expenses incurred in this action, totaling $268.18. These include delivery services (for $48.55), computerized legal research (for $194) and fees related to completing a pro hac vice application ($25.63). As these expenses were reasonably incurred to represent Defendants in the litigation, the Courts should reimburse these expenses in full.

## V. THE COURT SHOULD AWARD DEFENDANTS THE FULL AMOUNT OF ATTORNEYS' FEES AND EXPENSES INCURRED FOR ALL OTHER LEGAL WORK PERFORMED BY RETAINED LEGAL COUNSEL IN CONNECTION WITH THIS LITIGATION.

During the course of this litigation, Defendants were also represented by the following individuals, for whom Defendants seek an award of attorneys' fees equivalent to the billed to them, consistent with the lodestar method:

*First*, Paul Killeen, former Senior Vice President of Litigation for the Company, was retained to assist with necessary and extensive pre-trial preparation in this case. *See* Killeen Decl. at ¶¶ 1-3 (attached at Ex. 4 to Defs.' Mot. for Award of Att'ys' Fees and Other Expenses). *Second*, Kynda Alfmety of Hardin, Jesson & Terry, PLC was retained to provide necessary assistance on corporate issues in connection with this litigation and offer testimony as a corporate representative. *See* Alfmety Decl. at ¶ 4 (attached at Ex. 5 to Defs.' Mot. for Award of Att'ys' Fees and Other Expenses). *Third*, Jan Ahrens of Quintaros, Prieto, Wood & Boyer, PA was retained for the purpose of reviewing and finalizing production of e-discovery documents. Ahrens Decl. at ¶ 1 (attached at Ex. 6 to Defs.' Mot. for Award of Att'ys' Fees and Other Expenses). *Fourth*, Mark S. Brennan of Woods Rogers Vandeventer Black, PLC (formerly Vandeventer Black, LLP) was retained for the purpose if investigating the licensure of Nurse Trofort in the Commonwealth of Virginia. Brennan Decl. at ¶ 1 (attached at Ex. 7 to Defs.' Mot. for Award of Att'ys' Fees and Other Expenses). *Fifth*, Michael Phillips of Hagwood and Tipton, P.C. was retained for the purpose

of seeking dismissal of former defendants Drum Corp. and Mr. Silva. Phillips Decl. at ¶ 1 (attached at Ex. 8 to Defs.' Mot. for Award of Att'ys' Fees and Other Expenses).

All of these individuals charged at rates consistent with customary fees in the forum. *See* Killeen Decl. at ¶ 4 (charging $300 per hour); Alfmety Decl. at ¶ 4 (charging $225 per hour); Ahrens Decl. at ¶ 5 (charging $198 per hour); Brennan Decl. at ¶ 3 (charging $198 per hour); Phillips Decl. at ¶ 4 (charging $325 per hour); *see also Big Binder Express, LLC*, 2021 WL 5135479, at *2. And all of these individuals expended a reasonable number of hours given the complexity of this litigation. *See* Killeen Decl. at ¶ 5; Alfmety Decl. at ¶ 6; Ahrens Decl. at ¶ 5; Brennan Decl. at ¶ 4; Phillips Decl. at ¶ 5. The Court should grant attorneys' fees in the amount of $18,125.00 for Mr. Killeen, *see* Killeen Decl. at Ex. A; in the amount of $14,197.50 for Ms. Almefty, Alfmety Decl. at ¶ 8; in the amount of $6,454.80 for Mr. Ahrens, Ahrens Decl. at ¶ 5; in the amount of $6,188.50 for Mr. Brennan, *see* Brennan Decl. at Ex. A; and in the amount of $6,066.00 for Mr. Phillips, Phillips Decl. at ¶ 7-8. The Court should also award Defendants reasonable expense in the amount of $150 for court fees. Phillips Decl. at ¶ 6.

## VI.  THE COURT SHOULD AWARD DEFENDANTS THE FULL AMOUNT OF EXPENSES EXPERT AND E-DISCOVERY SERVICES.

Finally, the Court should award Defendants expenses for experts W. Shane Hariel, Robert Lane and Rick Harris.

*First*, Mr. Lane was retained by Mitchell, McNutt & Sams, P.A. to provide his evaluation and opinions regarding whether the defendants' practices to verify prospective nursing employees' licenses are reasonable and conform to industry standards, whether a skilled nursing facility ("SNF") would reasonably be able to rely on state nursing board representations of validity of a nursing license presented as part of the hiring process, and the role of the SNF in assuring compliance with existing professional licensure standards. *See* Sams Gratz Decl. at ¶ 23. *Second*,

21

Mr. Harris was retained to opine as to the framework the nursing home industry employs to determine whether a nurse's license is current and active, when industry perceives that a nurse's license is no longer current and active, and what industry generally understands would be the remedy if a nurse continued to work after her license was no longer current and active. *Id.* at ¶ 27. *Third*, Mr. Hariel to opine as to the Medicare and Medicaid ramifications stemming from the disputed licensure status of Nurse Trofort. *Id.* at ¶ 31. All of these experts prepared reports and were deposed. *Id.* ¶¶ 23, 27, 31. Mr. Lane was compensated at a rate of $355 per hour, Mr. Harris at $400 per hour, and Mr. Hariel at $360 per hour—all rates that are reasonable and customary for such experts. *Id.* ¶¶ 24, 28, 32. Defendants seek reimbursement of expenses in the amounts of $7,578.60 for Mr. Lane, $14,680.00 for Mr. Harris and $21,240.00 for Mr. Hariel. *Id.* ¶¶ 26, 30, 34.

*Finally*, Defendants seek reimbursement of e-discovery services need to host and process a substantial volume of documents for this litigation. *See* Ramussen-Jones Decl. (attached at Ex. 9 to Defs.' Mot. for Award of Att'ys' Fees and Other Expenses) at ¶¶ 14-15.

Date:  April 27, 2023             Respectfully submitted,


*/s/ Margaret Sams Gratz*
Margaret Sams Gratz, Esq. (MSB # 99231)
William Grant Armistead (MSB # 9786)
Mitchell, McNutt & Sams, P.A.
P. O. Box 7120
Tupelo, MS  38802-7120
Telephone:  (662) 842-3871
Facsimile:  (662) 842-8450
mgratz@mitchellmcnutt.com

Robert Salcido (*pro hac vice*)
D.C. Bar No. 447951
California Bar No. 139138
Akin Gump Strauss Hauer & Feld LLP
2001 K. Street, N.W.
Washington, D.C. 20006
Telephone: 202-887-4000
Facsimile: 202-887-4288
rsalcido@akingump.com

**Attorneys for Defendants**
**GGNSC Southaven LLC; GGNSC**
**Administrative Services LLC; GGNSC**
**Clinical Services**

**CERTIFICATE OF SERVICE**

This is to certify that I, Robert Salcido, one of the attorneys for GGNSC Southaven, LLC individually and on behalf of all Defendants have this day furnished a true and correct copy of the above and foregoing **MEMORANDUM OF LAW IN SUPPORT OF RESPONSE IN OPPOSITION TO RELATOR'S MOTION FOR RECONSIDER ORDER FINDING THAT THIS CASE WAS FRIVOLOUS AND GRANTING ATTORNEYS' FEES TO DEFENDANTS** to the following via ECF filing:

> Robert B. McDuff (MSB # 2532)
> Law Office of Robert B. McDuff
> 767 North Congress Street
> Jackson, MS 39202
> Telephone: 601.259.8484
> rbm@mcdufflaw.com
>
> Richard R. Barrett (MSB #99108)
> Law Office of Richard R. Barrett, PLLC
> 2086 Old Taylor Road
> Suite 1011
> Oxford, MS 38655
> Telephone 662.380.5018
> rrb@rrblawfirm.net
>
> Philip N. Elbert, Esq.
> Lisa P. Binder, Esq.
> Nathan C. Sanders, Esq.
> Neal & Harwell, PLC
> 1201 Demonbreun St., Suite 1000
> Nashville, TN 37203
> pelbert@nealharwell.com
> lbinder@nealharwell.com
> nsanders@nealharwell.com
>
> This 27th day of April 2023.

> */s/ Robert Salcido*