# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| **UNITED STATES OF AMERICA ex rel. CAMERON JEHL,** | |
| **Plaintiffs,** | |
| v. | Case No. 3:19cv091-NBB-JMV |
| **GGNSC SOUTHAVEN LLC D/B/A GOLDEN LIVING CENTER-SOUTHAVEN et al.** | |
| **Defendants.** | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' REPLY TO RELATOR'S OPPOSITION TO DEFENDANTS' MOTION FOR AWARD OF ATTORNEYS' FEES AND OTHER EXPENSES**

**I.      INTRODUCTION**

In his response, Relator seeks to create the impression that, as a result of his frivolous filing, all that was required was a purely mechanical application of the False Claims Act's ("FCA's") core elements based on a purely mechanical application of hornbook FCA precedent. If that were all that was required, there would not be more than 360 entries on the Court's docket and a Fifth Circuit record including more than 4,350 pages of material filed in this Court.

As part of the journey leading to this Court and the Fifth Circuit concluding Relator's action constituted a "complete failure of proof," Defendants were compelled to research and brief why all of Relator's positions constituted a complete failure of proof—even when they were clearly frivolous.[1] Defendants incurred its fees and expenses because of Relator's efforts in prosecuting a clearly frivolous case. Once Relator learned his initial factual contention was false, he preferred to compel Defendants to bear, at each step, the costs of defense, rather than to simply admit defeat.

Congress enacted the FCA's fee-shifting provision so Defendants can obtain reasonable attorneys' fees and expenses to prevent precisely this type of conduct. *See* Appendix B-2. S. Rep. No. 99-345 (1986), *as reprinted at* 1986 U.S.C.C.A.N. 5266, 5281 ("[T]he Justice Department expressed concerns that the broadening of qui tam provisions under [the 1986 FCA Amendments] might provoke a greater number of frivolous suits . . . As a further prevention of frivolous actions,

---

[1] These included, for instance, claiming that (i) State law supersedes federal law and hence the licensing laws of a number of States and private organizations must be examined (*see, e.g.,* ECF 263 at 9, 17; ECF 277 at 2-4; *see also* ECF 93 at 3-9); (ii) Relator is entitled to recover more than $30 million in damages under the FCA even though no actual damages were alleged to stem from the alleged regulatory breach (ECF 243, 275); (iii) CMS's only interpretation of the governing regulation should be ignored because it is also used as part of CMS's survey process (ECF 334 at 10; ECF 338 at 9-10 & n.8); (iv) Relator could submit a declaration of a State employee without including the person on his initial disclosures when Relator could not obtain evidence from CMS to support his claims, in an attempt to create a triable issue of fact to salvage his lawsuit (ECF 334 at 20; ECF 274-3; ECF 306); and (v) that Relator should be permitted to breach a confidentiality provision and publish irrelevant, inflammatory and uncross-examined information months after discovery closed in an attempt to salvage the case when the district court questioned the validity of his claims (see ECF 312; ECF 334 at 21).

the subcommittee adopted attorneys fees sanctions to be charged against any qui tam plaintiff who brings a clearly frivolous or vexatious suit.").

The Court ruled that Defendants are entitled to reasonable attorneys' fees and expenses because of Relator's clearly frivolous action. *See* ECF 350. To award Defendants a lodestar equivalent to the fees and expenses actually incurred during litigation, in addition to an upward adjustment to Mr. Salcido's fees, would serve to award Defendants their reasonable attorneys' fees and expenses—a rare and exceptional $30 million FCA case that has involved shifting factual and legal theories, extensive discovery, voluminous briefing before this Court and the Fifth Circuit, and that has been prolonged by Relator's willingness to engage in clearly frivolous, vexatious and harassing conduct. Defendants request that the Court award fees and expenses—summarized in Ex. 1 to Defs.' Reply Mot. for Award of Atty's' Fees and Other Expenses[2]— in their entirety.[3]

---

[2] Defendants request permission to supplement their submission to seek fees incurred in briefing on the motion for reconsideration and motion for attorneys' fees. *See U.S. v. Cmty. Health Sys., Inc.*, 2015 WL 3386153, at *16 (S.D. Tex. May 4, 2015), *aff'd sub nom. U.S. ex rel. Cook-Reska v. Cmty. Health Sys., Inc.*, 641 F. App'x 396 (5th Cir. 2016) (holding prevailing party in FCA case could recover fees for time spent litigating a fee request and that such fees were not subject to a cap) (internal citation omitted).

[3] Relator does not dispute a number of facts in Defendants' initial memorandum, including:
(i) The rates billed by Robert Salcido are lower than those paid by any other client during the relevant time period in an otherwise very busy practice. *See* ECF 356-1 at ¶¶ 15-20; ECF 357 at 9, 13-14.
(ii) As a result of Mr. Salcido's work on this case, he was precluded from taking other client work for which he would have billed at a much higher rate. *See* ECF 356-1 at ¶¶ 18-19; ECF 357 at 13-14.
(iii) The amount billed by Mr. Salcido is less than that billed in comparable FCA cases with the same level of success involving GGNSC Holdings LLC and its affiliates. *See* ECF 356-1 at ¶ 21; ECF 357 at 15.
(iv) The rates charged by (i) Mitchell, McNutt & Sams, P.A. ("Mitchell McNutt & Sams"); (ii) Benesch, Friedlander, Coplan & Aronoff LLP ("Benesch"); (iii) Paul Killeen; (iv) Hardin, Jesson & Terry, PLC ("Hardin"); (v) Quintairos, Prieto, Wood & Boyer, PA ("QPWB"); (vi) Woods Rogers Vandeventer Black, PLC ("Woods"); and (vii) Hagwood and Tipton, P.C. ("HAT") are reasonable. *See* ECF 356-5 at ¶¶ 15-20; ECF 356-8 at ¶ 7; ECF 356-10 at ¶ 4; ECF 356-12 at ¶ 4; ECF 356-14 at ¶ 5; ECF 356-16 at ¶ 3; ECF 356-18 at ¶ 4; ECF 357 at 16-21.
(v) The hours expended by (i) Benesch; (ii) Mr. Killeen; (iii) Hardin; (iv) QPWB; (v) Woods; and (vi) HAT are reasonable. *See* ECF 356-8 at ¶ 4; ECF 356-10 at ¶ 5; ECF 356-12 at ¶ 6; ECF 356-14 at ¶ 5; ECF 356-16 at ¶ 4; ECF 356-18 at ¶ 5; ECF 357 at 16-21.
(vi) Expenses incurred by (i) Benesch and (ii) HAT are reasonable. *See* ECF 356-9; ECF 356-18 at ¶ 6; ECF 357 at 20-21.

## II. DEFENDANTS SHOULD BE AWARDED ATTORNEYS' FEES AND EXPENSES INCURRED OVER THE ENTIRETY OF THIS LITIGATION BECAUSE THE DUTY NOT TO ENGAGE IN FRIVOLOUS CONDUCT RESTS ON RELATOR.

Relator asserts that the Court should limit attorneys' fees only to fees incurred (i) after April 19, 2021, when he was served an expert report detailing dispositive guidance from the Centers for Medicare & Medicaid Services ("CMS"), ECF 363 at 3-4, or (ii) prior to December 14, 2020, when he survived a motion to dismiss, ECF 363 at 5-6. These "alternatives" are restatements of the same argument: that there was a duty on Defendants to ensure that Relator did not engage in frivolous conduct. This argument runs contrary to the FCA and the Federal Rules of Civil Procedure and ignores the many efforts Defendants undertook to inform Relator that his action was meritless.

*First*, the legal duty not to make frivolous claims rests squarely on Relator. 31 U.S.C. § 3730(d)(4) allows for the award of reasonable fees and expenses "if the defendant prevails … and the court finds that the claim of the person bringing the action was clearly frivolous." A court is tasked with assessing the frivolousness of "the claim of the person bringing the action"—not the degree to which the defendant informed relator that the claim is frivolous. That the duty rests squarely on Relator is also evident from the Federal Rules. Under Rule 11, presenting a pleading or motion constitutes a certification that the legal and factual contentions are non-frivolous "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances." *See* Fed. R. Civ. P. 11(b).[4] It is the duty of plaintiff's counsel to assert non-

---

(vii) Defendants are entitled to all fees and expenses for Mr. Killeen; QPWB; and e-discovery vendor KLDiscovery Ontrack, LLC ("KLD") during the relevant time period. *See* ECF 356-11; ECF 356-15; ECF 356-21; ECF 357 at 20-22; ECF 363 at 29.

[4] Counsel must certify that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law" and "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b). *See also Thomas v. Cap. Sec. Servs., Inc.*, 836 F.2d 866, 875-76 (5th Cir. 1988). This case presents what is, in fact, a striking breach of what Rule 11 and the FCA require. Relator's failure to conduct any pre-suit investigation occurred *after* being told under oath on six separate occasions by Nurse Trofort herself

3

frivolous positions—not the duty of defense counsel to educate plaintiff's counsel in the hope that they will not engage in frivolous conduct. Relator utterly failed to discharge this duty.[5]

*Second*, in any event, Defendants *did* undertake prompt action to deter Relator's frivolous course of conduct. Relator's assertion that Defense counsel should have informed him sooner of CMS's public law and interpretations disregards the fact that his allegations were a moving target and that, nevertheless, Defense counsel repeatedly informed him that his action was frivolous over the course of this litigation.[6] Defendants were hopeful these efforts would minimize litigation costs, given Relator's duty not to present clearly frivolous claims. Instead, Relator ignored facts and law and did what he thought necessary to keep his $30 million claim alive—such as committing discovery violations and breaching a confidentiality provision. *See* ECF 357 at 3-4.

---

that she held a Virginia multistate nursing license and failing to perform a five-minute inquiry into public information that would reveal the basis of his entire lawsuit was clearly frivolous. *See* ECF 338 at 3 n.2.

[5] Relator poses the following question to the Court: If Defendants did not inform Relator of dispositive CMS guidance until summary judgment, "how was the relator supposed to know about it?" ECF 363 at 3-4. He asserts that he "should not be charged with failing to notice something that the defendants did not mention in their pleadings." *Id.* at 4. It is well-established that "ignorance of the law or legal procedure is no excuse for filing a frivolous action." *Granger v. Young*, 1994 WL 904639, at *1 (E.D. Tex. June 28, 1994) (internal citation omitted) (applying this principle even to *pro se* litigants). The cases Relator cites in his defense center on whether there was *sufficient* factual support to render a claim non-frivolous. *See Palazzolo v. Sonne*, 2009 WL 86706, at *1-2 (N.D. Cal. Jan. 9, 2009) (holding an action became frivolous because "*if* [Plaintiff] had been able to discover evidence to support his theory, he could have made out a viable due process claim"); *Gonzalez v. Planned Parenthood of Los Angeles*, 2015 WL 12659936, at *13 (C.D. Cal. Feb. 4, 2015) (holding an FCA action was not frivolous where "Plaintiff's scienter allegations were not so devoid of factual support as to render the FCA claims clearly frivolous"). Here, by contrast, Relator's factual contentions have been, as this Court has already concluded, "bereft of any objective factual support" and thus "clearly had no chance of success" and therefore are "frivolous." ECF 350 at 5.

[6] Defense counsel, among other things, (i) informed Relator that his action had no factual basis after verifying Nurse Trofort's licensure with her licensing body upon receiving Relator's initial complaint, see Salcido Reply Decl. at ¶ 4 (attached at Ex. 2 to Defs.' Reply Mot. for Award of Att'ys' Fees and Other Expenses); (ii) provided Relator with additional evidence that the initial and First Amended Complaints were based on a demonstrably false factual premise after submitting, at its own expense, a Freedom of Information Act request to Virginia (after Relator continued to fail to make a reasonable inquiry), *id.* at ¶¶ 5-7; (iii) warning Relator that a claim that rests upon a false factual premise is frivolous under the FCA fee-shifting provision, *id.* at ¶ 7, Ex. A; and (iv) after Relator, rather than dismissing the action, filed a Second Amended Complaint that radically changed his theory of FCA liability, *see id.* at ¶ 8; ECF 90, conducting a review of CMS's official, public interpretation of law as to when a license becomes invalid and alerting Relator to the fact that his position was so blatantly contrary to law as to be frivolous, *see* ECF 246.

4

The fact that Defense counsel took the most efficient means of informing and attempting to stop Relator's frivolous conduct does not negate Relator's duty. Relator breached this duty, and Defendants should be awarded fees and expenses incurred over the entirety of the litigation.

### III. DEFENDANTS SHOULD BE AWARDED A LODESTAR FOR SERVICES AKIN PERFORMED CONSISTENT WITH OUT-OF-DISTRICT RATES, AS UNCONTRADICTED EVIDENCE SHOWS THAT THE REQUISITE SPECIALIZED EXPERTISE WAS NOT AVAILABLE IN THE DISTRICT.

In support of awarding Akin discounted out-of-district "home" rates, Defendants have demonstrated that attorneys within the Northern District of Mississippi did not possess the requisite specialized FCA expertise to defend this action. *See* ECF 356-1 at ¶¶ 2-5; ECF 365-5 at ¶¶ 13-14; ECF 357 at 6-9. Relator argues that Mr. Salcido's lodestar rate should be $450. He claims, first, that the fact that there are attorneys in the Southern District of Mississippi who have litigated FCA cases means that there is requisite in-district FCA expertise.[7] He then asserts that the fact that his claim was frivolous means that specialized FCA expertise was not required to defend this action. Neither argument contradicts the abundant evidence Defendants have provided that the requisite specialized FCA expertise to defend this case was not located within the Northern District.

---

[7] Relator acknowledges that, of the attorneys whom he claims have requisite expertise, "many of these attorneys are located in the Jackson area." ECF 363 at 10. In actual fact, every attorney Relator explicitly cites as having the requisite "experience and skill to defend complicated False Claims Act qui tam cases" is located in the Southern District of Mississippi. *See id.* at 7-10; Sams Gratz Reply Decl. at ¶ 5 (attached at Ex. 3 to Defs.' Reply Mot. for Award of Att'ys' Fees and Other Expenses). With the exception of Mitchell, McNutt & Sams attorneys Michael Chase and John Wheeler, every attorney or law firm office otherwise listed in this section of Relator's memorandum is out-of-state or based in the Southern District. *See* ECF 363 at 7-10; Sams Gratz Reply Decl. at ¶¶ 5-6. Mr. Chase and Mr. Wheeler are successful general litigators who recently represented a local accounting firm, one of ten defendants named in an FCA action. *See U.S. ex rel. Monsour v. Performance Accts. Receivable, LLC*, 2022 WL 16840338, at *1 (S.D. Miss. Nov. 9, 2022). Their client was dismissed with prejudice due to lack of evidence that their client, which simply prepared cost reports, had scienter or engaged in a conspiracy to violate the FCA. *Id.* This type of representation does not require specialized FCA expertise, nor do Mr. Chase and Mr. Wheeler, who have handled a single FCA case, hold themselves out as FCA specialists. *See* Sams Gratz Reply Decl. at ¶ 6.

*First*, Relator's assertion that requisite FCA expertise is available in the Southern District is not relevant. In determining whether to use an attorney's home rate, courts in this Circuit analyze the necessity of "turning to *out-of-district* counsel." *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 382 (5th Cir. 2011) (emphasis added). As such, the relevant inquiry is not whether there are attorneys somewhere in the *state* with the requisite qualifications,[8] but rather whether there are attorneys in the district where the case is being litigated. *See id.* at 378-84[9]; *accord United States v. Bollinger Shipyards, Inc.*, 2015 WL 5306233, at *5 (E.D. La. Sept. 10, 2015) (awarding lodestar based on home rates where counsel submitted a declaration describing lack of expertise in New Orleans).[10] Relator has offered no evidence to contradict the abundant evidence Defendants have provided as to the lack of availability of specialized FCA expertise in the Northern District.[11]

---

[8] The Southern District attorneys whom Relator cites as having the requisite skill and experience to defend complicated FCA actions have much more limited FCA litigation experience than does Mr. Salcido. In fact, Mr. Salcido has litigated almost the same number of FCA cases as have all six attorneys combined. *See* Salcido Reply Decl. at ¶¶ 9-10, Ex. B, Ex. C. This is not to say that these attorneys are not generally skilled and experienced—it is simply to say that they do not have the level of specialized FCA experience to defend a $30 million action involving complex and shifting theories of FCA liability involving CMS and state licensure permeated by frivolous claims and discovery violations. *See id.* at ¶¶ 11-13.

[9] While the appellant provided, in addition to evidence as to lack of availability of counsel in the Eastern District, other evidence as to lack of availability of counsel elsewhere in the State, the latter evidence did not form the basis of the district court or the Fifth Circuit's opinion. *Id*.

[10] In *United States ex rel. Rigsby v. State Farm Fire & Cas. Co.*, the case on which Relator extensively relies, the court declined to award home rates on the basis that the relator had not provided sufficient evidence as to unavailability of counsel in the Southern District of Mississippi. 2014 WL 691500, at *11 (S.D. Miss. Feb. 21, 2014). In fact, the court discounted two declarations submitted by plaintiff's counsel because they only addressed the availability of counsel in Jackson and not in Gulfport, where the court sits. *Id.*; *compare* ECF 356-5 at 13-14 (describing the lack of local expertise based on Ms. Sams Gratz's familiarity with the local legal market and analysis of availability of counsel in Oxford); Sams Gratz Reply Decl. at ¶¶ 1-2.

[11] Relator attempts to skirt *McClain* by telling the Court it "can take judicial notice that many Southern District attorneys also practice in the Northern District, and many Northern District attorneys also practice in the Southern District." ECF 363 at 10. These are distinct communities with distinct legal markets. *See* Sams Gratz Reply Decl. at ¶¶ 1-4. Moreover, considering an out-of-district attorney to be "in-district" merely because they sometimes litigate cases in the district where the case has been brought or practice in-state would erode the Fifth Circuit standard set out in *McClain* and create significant administrability issues. Would attorneys in the Western District of Tennessee who sometimes litigate in the Northern District of Mississippi be considered "in-district"? Would a person prosecuting or defending a case in Tyler, Texas be required to prove they assessed the availability of counsel 300 miles away in San Antonio?

*Second*, Relator argues that Mr. Salcido's specialized FCA expertise was not necessary because both of his theories were frivolous. ECF 363 at 10-11. In actual fact, this demonstrates why Mr. Salcido's expertise *was* necessary. In some instances, defending against a clearly frivolous FCA lawsuit may not require retaining an attorney with specialized expertise. But, like here, where a relator is determined—as illustrated by the more than 360 docket entries—to plead around and avoid a plain application of the FCA and laws governing federal health care programs and to engage in discovery abuse in an attempt to create a triable issue of fact, *see* ECF 350 at 4-5,[12] specialized expertise is necessary. *See, e.g., Sierra Club v. Energy Future Holdings Corp.*, 2014 WL 12690022, at *5-7 (W.D. Tex. Aug. 29, 2014) (finding "claims "frivolous, unreasonable, or groundless," noting "[s]ome frivolous cases impose large costs on defendants," and awarding defendants "requiring more specialized and sophisticated legal services" $6.45 million in attorneys' fees based on counsel's "home" rates).

Given the need for Mr. Salcido's specialized FCA litigation expertise and the lack of such expertise in the Northern District, the Court should award fees for Mr. Salcido and Akin attorneys consistent with the discounted home rates charged to Defendants.

**IV. THE LODESTAR FOR SERVICES PERFORMED BY MR. SALCIDO SHOULD BE ADJUSTED UPWARD, AS APPLICATION OF THE *JOHNSON* FACTORS DEMONSTRATE THAT THIS IS A RARE AND EXCEPTIONAL CASE.**

Relator argues that Defendants have failed to demonstrate that this case is "rare" or "exceptional." ECF 363 at 13-14. But, as previously illustrated, *see* ECF 357 at 1-5, 13-15, applying the *Johnson* factors to this action—a case that has involved, over the last four years,

---

[12] Relator suggests that in describing his theories of liability as "complex," Defendants are conceding they are non-frivolous. *See* ECF 363 at 11 n.2. This suggestion is absurd. Relator's claim that Defendants violated the FCA was based on a complex false certification theory involving assertions about the role of surveyors, state nursing boards, nursing compacts, multi-state privileges, domicile, etc. *See, e.g.,* ECF 285. It was also so contrary to federal law as to be frivolous. *See* ECF 350.

7

complex and changing theories of FCA liability based on frivolous factual and legal assertions, extensive briefing before this Court and briefing before the Fifth Circuit, and blatant discovery abuse—demonstrates that it is rare and exceptional. *See Aldridge ex rel. United States v. Corp. Mgmt. Inc.*, 2022 WL 983167, at *14-*15 (S.D. Miss. Mar. 30, 2022) (finding that three of the *Johnson* factors demonstrated that this was a rare and exceptional case); *see also* ECF 350 at 4-5. As previously stated, applying the first, second, third, fourth, seventh, ninth, eleventh and twelfth *Johnson* factors demonstrates that this is precisely the type of rare and exceptional case for which an upward adjustment is appropriate. *See* ECF 357 at 12-15.[13] This adjustment would be consistent with adjustments made in similarly complex and protracted FCA cases litigated in this Circuit. *See id.* at 13; *Aldridge*, 2022 WL 983167, at *14 (awarding a 15% upward adjustment based on the second, eighth and twelfth factors); *U.S. ex rel. Garibaldi v. Orleans Par. Sch. Bd.*, 46 F. Supp. 2d 546, 572 (E.D. La. 1999), *vacated on other grounds*, 244 F.3d 486 (5th Cir. 2001) (awarding a 50% upward adjustment based on the second and eighth factors). As such, Defendants request an upward adjustment to Mr. Salcido's lodestar of 17.6% for fees incurred in 2019, 20.4% for 2020, 30.6% for 2021, 34.5% for 2022, and 38.9% for 2023.[14]

---

[13] These factors consist of (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (7) time limitations imposed by the client or the circumstances; (9) the experience, reputation, and ability of the attorneys; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See* ECF 357 at 12-15. To the extent any of the *Johnson* factors are fully reflected in the calculation of reasonable hourly rate or hours expended in the lodestar awarded to Defendants, Defendants do not, as Relator implies, ECF 363 at 14, ask the Court to "double-count" these factors. Defendants note that the first and seventh factors would not be fully subsumed by the lodestar unless they were awarded fees consistent with all billable hours Mr. Salcido expended in litigating this case. The third and ninth factors would not be reflected unless Defendants were awarded fees consistent with Mr. Salcido's home rate. In the event any or all of those factors were reflected in Mr. Salcido's lodestar, the remaining factors would, on their own, support the requested adjustment.

[14] This adjustment—essentially an approximation of Mr. Salcido's preclusion from other employment over the last four years of litigation, consistent with the fourth *Johnson* factor, *see* ECF 357 at 15-16; ECF 356-1 at 6-7—would constitute adequate compensation in light of the time and expense required to defend

8

### V. RELATOR HAS NOT DEMONSTRATED THAT DEFENDANTS ARE NOT ENTITLED TO ALL ATTORNEYS' FEES AND EXPENSES INCURRED IN DEFENSE OF THIS LITIGATION.

Finally, Relator makes a number of arguments as to why Defendants should not receive their reasonable attorneys' fees and expenses.[15] All of these arguments are unavailing.

#### A. Relator has not Demonstrated that Defendants are not Entitled to Attorneys' Fees and Expenses for Benesch, HAT, Hardin, or Woods or Expert Witness Expenses.

*First*, Relator asserts that Defendants are simply not entitled to fees and expenses for work Benesch and HAT performed because these firms worked to secure the voluntary dismissal of Drumm Merger Corp. ("Drumm") and Ronald Silva from this action and because their claims are time-barred. ECF 363 at 15-16. *First*, it is clear that Relator voluntarily dismissed Drumm and Mr. Silva because his claims were frivolous, as evidenced by Defendants' initial motion to dismiss, ECF 32, and the Court's holding that Relator's action was clearly frivolous, ECF 350.[16] A defendant can be a prevailing party when a plaintiff voluntarily dismisses a claim "to avoid a disfavorable judgment on the merits." *Dean v. Riser*, 240 F.3d 505, 511 (5th Cir. 2001).[17] It is clear from the record that there was no motivation for dismissing these defendants other than the

---

against Relator's highly complex but clearly frivolous lawsuit and contend with Relator's vexatious and harassing conduct.

As noted in Section II, Relator does *not* dispute (1) the reasonableness of rates charged by seven attorneys/firms; (2) the reasonableness of the hours expended by six attorneys/firms; (3) the reasonableness of expenses incurred by Benesch or HAT; or (4) the reasonableness of the rates charged by experts. Relator concedes that Defendants are entitled to all fees and expenses for Mr. Killeen, QPWB; and KLD.

[15] In Defendants' motion to dismiss, Drumm and Mr. Silva argued that they "had no involvement in the events underlying this case" and that their "the allegations in this case . . . requires their dismissal because they did not cause any false or fraudulent claims to be presented." ECF 32 at 5-6 n.5.

[16] Courts have applied this standard to dismissal without prejudice and in non-§ 1988 contexts. *See, e.g., Penick R&C, LP v. City of Fredericksburg, Texas*, 2020 WL 7973914, at *4-5 (W.D. Tex. Apr. 6, 2020); *Novedea Sys., Inc. v. Colaberry, Inc.*, 2022 WL 4360541, at *8-9 (E.D. Tex. Sept. 20, 2022). Consistent with the policy behind § 3730(d)(4), *see* Appendix B-2. S. Rep. No. 99-345 (1986), this rule was formulated to "not upset the delicate balance that Congress intended to exist between encouraging the policy of private plaintiffs effecting the vigorous vindication of [] rights and protecting [] defendants from the burdens of frivolous lawsuits." *Dean*, 240 F.3d at 512. Its application to the FCA is appropriate.

9

completely meritless nature of Relator's claims. *See* Salcido Reply Decl. at ¶¶ 14-15. *Second*, because Defendants paid the fees and expenses for Benesch and HAT, *see* ECF 356-20 at ¶¶ 9-10, 13, Defendants, who "prevail[ed] in the action," may move for them as "reasonable attorneys' fees and expenses" under section 3730(d)(4)'s plain language. *Finally*, this action is not time-barred, as section 3730(d)(4) has no such limitations.

*Second*, Relator seeks to exclude fees that Ms. Almefty of Hardin received as a 30(b)(6) witness. ECF 363 at 16-17. But nothing in section 3730(d)(4) precludes defendants from moving for 30(b)(6)-related expenses. *See, e.g., Assocs. Against Outlier Fraud v. Huron Consulting Grp., Inc.*, 817 F.3d 433, 437 (2d Cir. 2016) (noting Rule 54(d)(1) and the FCA have different definitions of "expenses"). As such, Defendants should be awarded these expenses.

*Third*, Relator argues that Defendants should not be awarded attorneys' fees for services Mark Brennan of Woods (formerly Vandeventer Black, LLP) performed because it was "unreasonable" to investigate Nurse Trofort's licensure status when a five-minute check evinced she was fully licensed. ECF 363 at 17. As outlined in Section I, after Relator took no action in response to being repeatedly informed that Nurse Trofort was licensed, Defendants were forced to acquire additional evidence to prove to Relator his action was frivolous. Defendants should be awarded fees incurred due to Relator's failure to investigate the merits of his claim.

*Fourth*, Relator appears to argue that Defendants should not be awarded expert fees in this case because it was a "frivolous case barred by clear federal law." ECF 363 at 17-18. Essentially, Relator argues that Defendants should not recover standard discovery expenses incurred to defend against a clearly frivolous claim, under a provision intended to sanction "clearly frivolous" claims, because his claim was clearly frivolous. Such an argument is absurd and inconsistent with the intent behind 31 U.S.C. § 3730(d)(4). Defendants should be awarded all expert expenses incurred.

10

## B. Relator has not Demonstrated that Akin's and Mitchell, McNutt & Sams's Lodestar should be Reduced.

*First*, Relator seeks to reduce the Akin's and Mitchell, McNutt & Sams's lodestar because their invoices are purportedly vague. *See* ECF 363 at 19-21. First, all time entries reflect legal services performed in support of this litigation. *See* Sams Gratz Reply Decl. at ¶¶ 7-8; Salcido Reply Decl. at ¶¶16-18. As such, where information is redacted in these invoices—such as the subject matter of calls, legal research, internal work product, legal strategy or mental impressions, *see, e.g.,* ECF 356-3 (Akin's redacted invoices); *accord* ECF 362-4 (Relator's list of "vague time entries")—it is hardly "impossible" for the Court to assess the entries for reasonableness. *C.f. Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 326-27 (5th Cir. 1995).[18] Most importantly, Defendants submitted redacted invoices for the purpose of maintaining the attorney-client privilege and work product protection. *See* Sams Gratz Reply Decl. at ¶ 9; Salcido Reply Decl. at ¶ 19. Legal invoices often contain attorney-client or work product-protected information. *See, e.g, Auto Parts Mfg. Mississippi Inc. v. King Constr. of Houston, LLC*, 2017 WL 1233901, at *2 (N.D. Miss. Apr. 3, 2017) (noting that "[i]t stands to reason that invoices revealing the nature of the services provided, including the areas of legal research, and strategy are [ ] privileged").[19]

---

[17] In this case, this Circuit affirmed the district's court decision not to exclude hours where time entries simply read, e.g., "review documents" and "correspondence," describing these entries as "indeed scanty as to subject matter" but acknowledging "the district court's familiarity with this case, including the quality of the attorneys' work over a period of several years" and the fact that "practical considerations of the daily practice of law in this day and age preclude 'writing a book' to describe in excruciating detail the professional services rendered for each hour or fraction of an hour." *Id.*

[19] Defendants believe that the invoices are sufficient to demonstrate the reasonableness of all hours claimed by Akin and Mitchell, McNutt & Sams. If the Court believes that *in camera* review of Defendants' invoices would be beneficial to assessing the reasonableness of hours billed, Defendants will submit them to the Court for review. *See Auto Parts Mfg.*, 2017 WL 1233901, at *2 (noting that "[t]he decision whether to conduct an in camera inspection is wholly within the discretion of the district court" and that "[i]n camera review protects an attorney's private thoughts from intrusion by opposing parties and their counsel and hence protects those interests which lie at the heart of the attorney work product doctrine"); *see also Robbins Hardwood Flooring, Inc. v. Bolick Distributors Corp.*, 2003 WL 21302936, at *1 (N.D. Tex. June 4, 2003) (ordering *in camera* review where "counsel for Plaintiff offered to provide its unredacted billing records").

*Second*, Relator seeks to exclude hours where both Mr. Salcido and Ms. Sams Gratz both attended a deposition. *See* ECF 363 at 21-22. But Mr. Salcido and Ms. Sams Gratz served distinct roles in this litigation, and Mr. Salcido attended only depositions for which his FCA expertise was needed. *See* Gratz Reply Decl. at ¶¶ 11-13; Salcido Reply Decl. at ¶¶ 20-22. As Relator acknowledges, under local rules, Mr. Salcido could not take depositions alone. *See* ECF 363 at 21-22; Sams Gratz Reply Decl. at ¶ 11; Salcido Reply Decl. at ¶ 21. Attendance of both attorneys at a subset of depositions was reasonable and necessary, and Defendants should likewise be awarded their reasonable attorneys' fees. *See Penthouse Owners Ass'n, Inc. v. Certain Underwriters at Lloyd's, London*, 2011 WL 6699447, at *4, *8, *10 (S.D. Miss. Dec. 21, 2011).

*Third*, Relator asks the Court to exclude or limit attorneys' fees for Akin timekeepers on the basis that Defendants did not adequately describe their experience. ECF 363 at 12-13, 22. As noted, Ms. Creely, Ms. McDonald and Ms. Gerry are counsel/associates who possess specialized FCA expertise and performed the vast majority of the work not performed by Mr. Salcido. *See* ECF 356-1 at ¶¶ 23-24; Salcido Reply Decl. at ¶¶ 23-27. The other timekeepers whose fees have been sought consist of one partner, five associates/counsel and a paralegal. *See* Salcido Reply Decl. at ¶ 28. All rates are commensurate with those of similarly experienced and educated attorneys and paralegals at Akin and other large Washington, D.C. firms. *See* ECF 356-1 at ¶¶ 23, 26; Salcido Reply Decl. at ¶ 30.

*Finally*, Relator seeks to impose a 75% reduction for excessive hours resulting from "billing, overstaffing, inefficiency, and failure to exercise billing judgment." ECF 363 at 22-26. *First*, Relator lists 18 instances in which he characterizes Akin's hours spent on litigation as "staggering" but offers no support (such as the amount his counsel billed during the litigation) for his claim that these were even outside the range of reasonableness (let alone so unreasonable as to

12

warrant a 75% reduction). None of these instances of "exorbitant and unnecessary hours" was unreasonable given the nature of this litigation. *See* ECF 356-1 at ¶¶ 13-14, 22-24, 34; Salcido Reply Decl. at ¶¶ 31-41.[20] *Second*, Relator's suggestion that the fact that Mr. Salcido has written an FCA treatise means that Akin does not need to expend time on legal research and drafting, ECF 363 at 24-25, is unsupported and inconsistent with the basics of litigation practice. *See* Salcido Reply Decl. at ¶¶ 33-35. *Finally*, Relator's argument that Mr. Salcido should have delegated more research and drafting to others lacks support and contradicts his assertion that Mr. Salcido is so knowledgeable that he need not expend time on such tasks. *See* ECF 363 at 25. Mr. Salcido performed these tasks much more efficiently than would junior attorneys. *See* ECF 356-1 at ¶ 6; Salcido Reply Decl. at ¶ 39.[21] In all, Relator has failed to demonstrate that any lodestar reduction—let alone his proposed and apparently unprecedented 75% reduction—is appropriate in this case.[22]

## VI. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant them their fees and expenses, outlined in full in Ex. 1.

---

[20] Relator suggests that a 75% reduction is reasonable because Akin's hours "far exceed hours that this Court previously reduced by 50% for being 'excessive and unreasonable," citing to *Stuart C. Irby Co. v. Bayview Electric Co., LLC*, 2014 WL 670230, at *1-2 (N.D. Miss. Feb. 20, 2014). But *Stuart C. Irby Co.* was a "run-of-the-mill collection action," *id.* at *3, involving a dispute over service charges amounting to $65,000, *Stuart C. Irby Co. v. Bayview Elec. Co., LLC*, 2013 WL 1984356, at *1 (N.D. Miss. May 13, 2013)—not a $30 million FCA action. Obviously, the two matters are not comparable and would not require the same number of hours with regard to briefing and other litigation tasks.

[21] Relator cites *Calsep A/S v. Intelligent Petroleum Software Sols.*, LLC, 2022 WL 508334, at *4 (S.D. Tex. Feb. 18, 2022) in support of his argument. But in *Calsep*, the court reduced the lodestar amount because, rather than staffing a matter with associates, "multiple partners performed essentially the same tasks and "two of the three partners billed excessive hours for what appears to be the same work." *Id.* In fact, this case supports that Akin was *not* overstaffing, given that the vast majority of hours in this litigation were billed by just one partner and some combination of three associates/counsel over the course of the litigation.

[22] Relator also discounts Mitchell, McNutt & Sams hours by $5,467.50 due to "excessiveness." The only support for this is a footnote suggesting that hours spent on a chronology were unreasonable. ECF 363 at 24 n.6. Again, Relator offers no support for his blanket assertion that these hours were unreasonable, particularly given the complexity of this case.

13

Date: May 26, 2023	Respectfully submitted,


                                                 */s/ Margaret Sams Gratz*
Margaret Sams Gratz, Esq. (MSB # 99231)
William Grant Armistead (MSB # 9786)
Mitchell, McNutt & Sams, P.A.
P. O. Box 7120
Tupelo, MS 38802-7120
Telephone: (662) 842-3871
Facsimile: (662) 842-8450
mgratz@mitchellmcnutt.com

Robert Salcido (*pro hac vice*)
D.C. Bar No. 447951
California Bar No. 139138
Akin Gump Strauss Hauer & Feld LLP
2001 K. Street, N.W.
Washington, D.C. 20006
Telephone: 202-887-4000
Facsimile: 202-887-4288
rsalcido@akingump.com

*Attorneys for Defendants*
**GGNSC Southaven LLC; GGNSC Administrative Services LLC; GGNSC Clinical Services**

**CERTIFICATE OF SERVICE**

This is to certify that I, Robert Salcido, one of the attorneys for GGNSC Southaven, LLC individually and on behalf of all Defendants have this day furnished a true and correct copy of the above and foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' REPLY TO RELATOR'S OPPOSITION TO DEFENDANTS' MOTION FOR AWARD OF ATTORNEYS' FEES AND OTHER EXPENSES** to the following via ECF filing:

Robert B. McDuff (MSB # 2532)
Law Office of Robert B. McDuff
767 North Congress Street
Jackson, MS 39202
Telephone: 601.259.8484
rbm@mcdufflaw.com

Richard R. Barrett (MSB #99108)
Law Office of Richard R. Barrett, PLLC
2086 Old Taylor Road
Suite 1011
Oxford, MS 38655
Telephone 662.380.5018
rrb@rrblawfirm.net

Philip N. Elbert, Esq.
Lisa P. Binder, Esq.
Nathan C. Sanders, Esq.
Neal & Harwell, PLC
1201 Demonbreun St., Suite 1000
Nashville, TN 37203
pelbert@nealharwell.com
lbinder@nealharwell.com
nsanders@nealharwell.com

This 26th day of May 2023.

                                           */s/ Robert Salcido*