IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**UNITED STATES OF AMERICA, ex rel.**      **PLAINTIFFS**
**CAMERON JEHL**

**V.**      **NO: 3:19-CV-091-GHD-JMV**

**GGNSC SOUTHAVEN LLC D/B/A**
**GOLDEN LIVINGCENTER-**
**SOUTHAVEN; GGNSC**
**ADMINISTRATIVE SERVICES LLC**
**D/B/A GOLDEN VENTURES; AND**
**GGNSC CLINICAL SERVICES LLC**
**D/B/A GOLDEN CLINICAL SERVICES**      **DEFENDANTS**

## Memorandum Opinion Denying Relator's Motion for Reconsideration

Presently before the Court is the relator Cameron Jehl's Motion for Reconsideration [352] of the Court's prior award of attorneys' fees to the Defendants. [349]. The Defendants have responded in opposition to the present motion. The Court having considered the motion, the subsequent response and reply, and the applicable law, finds that the motion is not well taken and should be denied.

### Factual and Procedural Background

In 2005, Lionelle Trofort was working as a licensed nurse practitioner in the state of Virginia which she considered her permanent state of residence. That same year she obtained her Virginia multistate license which allowed her to work as a travelling nurse in states outside of Virginia. In 2010, she began working as a travelling nurse in medical facilities in Arizona, Arkansas, and Mississippi. Later, on February 28, 2013, Trofort's multistate license was revoked by the state of Virginia but was later reinstated on March 20, 2013, following a declaration submitted by Trofort indicating that Virginia was her permanent state of residence.

1

GGNSC Southaven, LLC, GGNSC Administrative Services, LLC, and GGNSC Clinical Services (collectively, "GGNSC") operates the Golden Living Center ("Golden Living") which is a nursing home in Southaven, Mississippi. Trofort applied to work at this location on March 22, 2013, and she was hired and began her employment on April 23, 2013. Golden Living confirmed with the Virginia nursing board that Trofort held a valid active Virginia Nursing license with multistate privileges.

During the period when Trofort's multistate license was revoked (February 28, 2013 through March 20, 2013), she worked at an Arkansas facility. GGNSC reported the revocation of Trofort's license, as it was required to do, to the Arkansas nursing board. The nursing board assigned an investigator to the matter who took issue with the fact that Trofort had a Tennessee driver's license rather than a Virginia license. Ultimately, the Arkansas board declined to take any action against Trofort as a result of this investigation.

Trofort was later suspended on February 28, 2014, and then terminated on March 4, 2014. Over a year later, on May 31, 2015, the Virginia nursing board issued a final adverse action against Trofort revoking her multistate credential. This revocation was based on an administrative settlement between Trofort and the state of Arizona in proceedings that are unrelated to this matter.

This current matter arose after the relator, Cameron Jehl, a licensed attorney and resident of Shelby County, Tennessee, not affiliated with GGNSC, deposed Trofort in an unrelated wrongful death case. The relator discovered publicly available administrative depositions posted to the state of Virginia's nursing board website. The information on the website stated that Trofort had "practiced professional nursing without a valid license or multistate compact license" between February 27 and March 19, 2013, and that she had applied to work at GGNSC's facility. Relying on this information, the relator filed this qui tam action in April 2019 on behalf of himself and the

2

United States seeking to recover damages, penalties, fees, and costs under the False Claims Act ("FCA"). 31 U.S.C. § 3729 et seq. The United States declined to intervene in this action. The relator alleged that by employing Trofort as Golden Living's Director of Nursing Services between April 23, 2013 and March 4, 2014, while she purportedly did not possess a valid Mississippi nursing license, GGNSC submitted Medicare and Medicaid claims to both the state of Mississippi and the federal government. To practice nursing legally in Mississippi and serve as Director of Nursing Services, Trofort was required to possess either a valid Mississippi nursing license or a valid multistate license from another state that gave her the privilege to practice in Mississippi. See Miss. Code Ann. §§ 73-15-3, 73-15-22; 15 Miss. Admin. Code Pt. 16, Subpt. 1, R. 45.4.1 (2013). As a result, the relator alleged GGNSC violated the FCA since GGNSC's certifications of compliance with applicable licensure laws were false within the meaning of the FCA since Trofort did not possess a Mississippi nursing license or a valid multistate license. Consequently, the relator asserted that GGNSC received millions of dollars in reimbursement payments to which it was not entitled, overall seeking damages for FCA violations and wrongful payments in excess of $30,000,000.00.

      This case was originally assigned to United States District Judge Michael Mills of the Northern District of Mississippi, who later recused from the matter on August 12, 2021. Before recusal, Judge Mills denied the Defendants' motion to dismiss and later issued an order to show cause addressing multiple concerns with the case. The case was reassigned within the Northern District to Judge Neal B. Biggers. Judge Biggers, during his time with this case, granted the Defendants' motion for summary judgment [326] finding that the "defendants here have demonstrated a complete failure of proof on each of the essential elements of the relator's claims." [327]. The granting of Defendants' motion for summary judgment was appealed to the United

States Court of Appeals for the Fifth Circuit. The Fifth Circuit affirmed Judge Biggers' decision on December 6, 2022, agreeing with the district court that "GGNSC has 'demonstrated a complete failure of proof of the essential elements of the relator's claims[.]'" *United States ex rel. Jehl v. GGNSC Southaven, LLC*, No. 22-60209, 2022 WL 17443684 (5th Cir. 2022) (quoting *United States ex rel. Jehl v. GGNSC Southaven, LLC*, No. 3:19-cv-091-NBB-JMV, 2022 WL 983644, at *4 (N.D. Miss. Mar. 30, 2022)).

Following the Fifth Circuit's ruling, the Defendants' filed a motion for attorneys' fees and the relator filed a motion objecting to the clerk's taxation of costs. Judge Biggers found that the relator's claims were "patently and demonstrably frivolous" under the FCA's fee shifting provision, thus, providing for an award of attorneys' fees to the Defendants. Judge Biggers also denied the relator's objection to the taxation of costs. Following Judge Biggers' untimely passing, this case was reassigned to the undersigned Judge.

Presently, the relator has moved for this Court to reconsider the previous award of attorneys' fees. [352].

**Analysis**

The first inquiry to take up in this matter is determining which standard applies to the motion for reconsideration; either Fed. R. Civ. P. 54(b) or 59(e) applies to the relief requested in the present motion. As stated by the D.C. Circuit and acknowledged by the Fifth Circuit:

> Rule 59(e), understandably, sets a high threshold for parties to raise a new argument for the first time after judgment has already been entered. ... In contrast, Rule 54(b)'s approach to the interlocutory presentation of new arguments as the case evolves can be more flexible, reflecting the "inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires."

*Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336-37 (5th Cir. 2017) (citing *Cobell v. Jewell*, 802 F.3d 12, 25–26 (D.C. Cir. 2015)).

4

The Fourth Circuit explained that "[t]he power to reconsider or modify interlocutory rulings 'is committed to the discretion of the district court,' and that discretion is not cabined by the 'heightened standards for reconsideration' governing final orders." *Saint Annes Dev. Co. v. Trabich*, 443 Fed.Appx. 829, 831–32 (4th Cir. 2011) (quoting *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514–15 (4th Cir. 2003)). Therefore, the ruling in this matter concerning attorneys' fees does not adjudicate all rights of all parties as the specific amount of fees is yet to be determined, and thus, under Rule 54(b), "the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990) (citing FED. R. CIV. P. 54(b)).

The relator now requests that the Court reconsider Judge Biggers' determination that attorneys' fees were warranted to the Defendants in this matter given the frivolousness of the relator's claims. The relator's primary argument seems to be centered on the fact that Judge Mills previously allowed the relator's claims to proceed following the Defendants' motion to dismiss. Specifically, the relator cites to language used by Judge Mills in ruling on the prior motion to dismiss where each parties' arguments were described as "reasonable" and in "good faith." [131].

While the Court gives considerable value and deference to Judge Mills' ruling on the motion to dismiss [131], it must also be considered that this ruling was made early in the case in December 2020. Judge Mills then recused shortly after entering a show cause order [303] in July 2021 addressing potential issues with the case, and Judge Biggers then issued a summary judgment ruling in March 2022 dismissing the relator's claims. In sum, the Court acknowledges that Judge Biggers was the presiding judge in this matter that analyzed the full extent of the evidence in this case, rather than the allegations, when issuing a ruling in favor of the Defendants, and therefore,

5

the Court is hesitant to question the judgment of the Judge actively involved in this matter at the time of the decision.

Further, the Court also awards considerable value and weight to the Fifth Circuit's ruling which is directly relevant to the relator's current motion. The Fifth Circuit stated that "GGNSC has 'demonstrated a complete failure of proof on each of the essential elements of the relator's claims'" and held that summary judgment in favor of GGNSC was proper. *United States ex rel. Jehl,* 2022 WL 17443684 at *5 (5th Cir. 2022) (quoting *United States ex rel. Jehl,* No. 3:19-cv-091-NBB-JMV, 2022 WL 983644, at *4 (N.D. Miss. Mar. 30, 2022)).

The relator points to no argument or evidence demonstrating that the Court should reconsider the previous award of attorneys' fees. The present motion to reconsider merely attempts to reinstate arguments made to and evaluated by this Court and the Fifth Circuit which certainly does not establish that "justice requires" reversing the prior ruling. *Austin v. Kroger Texas, L.P.,* 864 F.3d 326, 336-37 (5th Cir. 2017).

Without conducting a complete, and redundant, analysis of the award of attorneys' fees in this matter, the Court will briefly touch on a few key points. The FCA permits a defendant to recover its reasonable attorneys' fees, expenses, and costs "if the defendant prevails in the action and the court finds that the claim of the person bringing the action was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment." 31 U.S.C. § 3730(d)(4). "Any one of these three conditions is sufficient for an award of attorneys' fees." *Mikes v. Straus,* 274 F.3d 687, 704-05 (2d. Cir. 2001), abrogated on other grounds by *Univ. Health Servs., Inc. v. U.S.,* 579 U.S. 176 (2016). The district court has broad discretion in awarding fees. See, e.g., *U.S. ex rel. Rafizadeh v. Cont'l Common, Inc.,* 553 F.3d 869, 875 (5th Cir. 2008).

"A claim is frivolous if it has no arguable support in existing law or any reasonably based suggestion for its extension." *U.S. ex rel. Bain v. Georgia Gulf Corp.*, 208 F. App'x 280, 83 (5th Cir. 2006). As previously established in this matter, the relator does not dispute that prior to filing this action, he failed to conduct an online inquiry of Virginia's public records. This inquiry would have informed him that the entire basis of his lawsuit, that Trofort lacked a valid multistate license, was "demonstrably wrong." [350]. Before applying to GGNSC, and during the alleged fraudulent billing dates of her employment, Trofort undisputedly had the necessary multistate nursing credential. Further, as Judge Biggers previously held, GGNSC's certifications that the relator takes issue with were accurate and followed The Center for Medicare and Medicaid Services' ("CMS") guidance. The CMS rules clearly state a facility such as GGNSC only breaches the licensure regulation when a final adverse action has been taken to invalidate Trofort's multistate license, which undisputedly was not the case in this matter.

In sum, the relator provides no justification or reasoning for the Court to deviate from the previous ruling. As previously determined by the Court, CMS's authoritative interpretation of the governing regulations and easily obtainable public facts lead to the conclusion that the relator's action was groundless, frivolous, and had no chance of success. Therefore, the Court finds the motion for reconsideration [352] to not be well taken and thus denied.

### Conclusion

For the foregoing reasons, it is hereby ORDERED that the relator's motion for reconsideration [352] is not well taken and should be DENIED. A separate order in accordance with this opinion will issue this day.

SO ORDERED, this the 2nd day of February, 2024.

_____
SENIOR U.S. DISTRICT JUDGE

7