IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**UNITED STATES OF AMERICA, ex rel.**            PLAINTIFF
**CAMERON JEHL**

V.                                                 NO: 3:19-CV-091-GHD-JMV

**GGNSC SOUTHAVEN LLC D/B/A
GOLDEN LIVINGCENTER-
SOUTHAVEN; GGNSC
ADMINISTRATIVE SERVICES LLC
D/B/A GOLDEN VENTURES; AND
GGNSC CLINICAL SERVICES LLC
D/B/A GOLDEN CLINICAL SERVICES**           **DEFENDANTS**

## MEMORANDUM OPINION

Presently before the Court are three pending motions in this matter: the Defendants' Motion for Attorneys' Fees and Other Expenses [356], the Plaintiff's Motion to Strike [367], and the Defendants' Supplemental Motion for Attorneys' Fees and Other Expenses [368]. The Court having considered the motions, the responses, the replies, and the applicable law, finds the following: the Defendant's Motion for Attorneys' Fees and Other Expenses [356] is granted in part and denied in part; the Plaintiff's Motion to Strike [367] is denied as moot; and the Defendants' Supplemental Motion for Attorneys' Fees and Other Expenses [368] is granted in part and denied in part.

The False Claims Act (FCA) permits a defendant to recover its reasonable attorneys' fees, expenses, and costs "if the defendant prevails in the action and the court finds that the claim of the person bringing the action was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment." 31 U.S.C. § 3730(d)(4). "Any one of these three conditions is sufficient for an award of attorneys' fees." *Mikes v. Straus*, 274 F.3d 687, 704-05 (2nd Cir. 2001), *abrogated*

1

*on other grounds by Univ. Health Servs., Inc. v. U.S.*, 579 U.S. 176 (2016). As previously determined in this matter, the Relator's action was groundless, frivolous, and had no chance of success, and attorneys' fees and expenses in this matter are therefore warranted.

As an initial matter, the Court will consider the Relator's Motion to Strike [367] which asserts that Robert Salcido provided information concerning the experience of attorneys in his firm, along with other billing details, in a reply declaration when this information should have been produced in the original motion for fees. As it appears to the Court, the Defendants have withdrawn their assertions presented in the reply brief in question and are instead relying on their supplemental motion for fees to accomplish the same goal. Therefore, the Court finds that the Relator's Motion to Strike [367] is moot.

The next issue is whether the Court should award those attorneys' fees requested in the Defendants' Supplemental Motion for Attorneys' Fees and Expenses [368]. The main issue, at this instance, discussed by the parties regarding this motion is whether to award fees to the Defendants for the months of April and May of 2023, which consists mainly of work done by attorneys of the Akin firm following the prior motion for fees and expenses. The Relator argues that the request was filed past the deadline set by the Court, and therefore, the Court should not award fees for this time period. The Relator does not point to any prejudice that has resulted from the Defendants filing this supplemental motion past the alleged deadline to do so. In fact, the parties acknowledge that parties may file supplemental fee motions for time spent responding to their adversary's objections to their fee motions. *Cruz v. Hauck*, 762 F.2d 1230 (5th Cir. 1985). The Relator has also been able to fully brief the response to the motion and establish his position on the matter.

The Relator next argues, which appears to be the main argument in response to the supplemental motion, that the asserted fees and/or rates are unreasonable and excessive. The Court finds, as discussed below, that the Defendants' Supplemental Motion for Attorneys' Fees [368] should be granted in part and denied in part.

Courts in this circuit "apply a two-step method for determining a reasonable attorney's fee award." *Combs v. City of Huntington*, 829 F.3d 388, 391 (5th Cir. 2016). The Court must first calculate the lodestar, "which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work." *Jimenez v. Wood County.*, 621 F.3d 372, 379 (5th Cir. 2010). When calculating the lodestar, "[t]he court should exclude all time that is excessive, duplicative, or inadequately documented." *Id.* at 379-80. Although the lodestar is presumed to be reasonable, the Court may enhance or decrease it based on the twelve *Johnson* factors. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553–54, 130 S.Ct. 1662, 176 L.Ed.2d 494 (2010); *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974).

Therefore, the first step in determining the amount of attorneys' fees to be awarded in this matter is to calculate the hourly rate of each attorney involved with the Defendants' representation. The first attorney the Court will inquire into is Robert Salcido. To determine the reasonable hourly rate, the Court looks to "the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). The prevailing market rate is the rate in the relevant community "for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* Generally, the "relevant market for purposes of determining the prevailing rate to be paid in a fee award is the community in which the district court sits." *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002). However, the Defendants assert that the home, Washington D.C., rates should be used to calculate the lodestar for Robert Salcido and the Akin firm as it was necessary to obtain

3

counsel outside of the Northern District of Mississippi in this matter. An out-of-district counsel's "'home' rates should be considered as a starting point for calculating" the reasonable hourly billing rate where "abundant and uncontradicted evidence prove[s] the necessity of [the movant's] turning to out-of-district counsel." *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 382 (5th Cir. 2011).

The Defendants assert that due to Mr. Salcido's experience in FCA litigation, the necessity of this experience in this litigation, and the lack of in-district counsel that could provide expert representation involving an FCA matter, the Court should use Mr. Salcido's Washington D.C. rates. The Defendants have provided the declaration of another attorney in this matter, Margaret Sams Gratz, who practices within the Northern District of Mississippi. This declaration asserts that Ms. Sams Gratz is familiar with the local legal market and is aware of no firms with similar specialized FCA experience. Also relevant, Ms. Sams Gratz appeared to only inquire into the largest firms in Oxford, Mississippi, which the Court notes is within the Northern District of Mississippi.

The Relator argues that the Court should not only consider the availability of appropriate and experienced FCA counsel in the Northern District of Mississippi but that the Court should also look to the Southern District of Mississippi. The Defendants assert that the relevant inquiry, which again is whether there is the necessity to turn to out-of-district counsel, should be taken literally. This would mean that if there is not counsel in a specific district with the necessary FCA expertise then seemingly any qualified attorney in the country should be allowed to bill their home rates, even if there are numerous qualified attorneys in the state of litigation.

Applying these arguments to this case specifically, it does appear to the Court that the Defendants have put forth sufficient unrebutted evidence that there was a need to turn to out-of-district counsel due to the lack of experienced FCA counsel in the Northern District of Mississippi.

However, the relevant inquiry then turns to whether the Court should consider the numerous attorneys based in the Southern District of Mississippi who seemingly have the requisite FCA expertise that the Defendants sought when obtaining counsel for this matter.

As stated in *Pickett*, "Mississippi does not enjoy a large market for legal services, by national or regional standards[,]" and "[t]here is no reason to be hyper-local in the Court's lodestar analysis." *Pickett v. Mississippi Board of Animal Health*, 2021 WL 4979009 (S.D. Miss. Oct. 26, 2021). The Relator has presented substantial evidence that the Southern District of Mississippi has numerous qualified attorneys with substantial FCA litigation practice and experience. The Court believes that when viewing qualified Mississippi attorneys in a more general sense, rather than focusing on a specific locality, the necessity of turning to out-of-state counsel becomes less obvious. As stated in *Pickett*, "it is appropriate to determine the prevailing community standard for hourly rates by reference to the entire state of Mississippi." *Id.* Courts in this district have previously considered other federal courts in the state of Mississippi when determining a reasonable fee. *Sentry Select Insurance Company v. Cockrell*, 2023 WL 4035910 (N.D. Miss. June 15, 2023). In *Cockrell*, the Court considered fees awarded in the Southern District of Mississippi when determining the reasonableness of the requested fees in the Northern District of Mississippi. *Id.* In sum, there does not exist abundant and uncontradicted evidence of the need to turn to out-of-state counsel for representation in this manner, and the Court will not award, although it will consider, the home rates of Robert Salcido and the Akin Firm.

In concluding that Mississippi is the appropriate community to determine the billing rates for the Defendants' attorneys, mainly those from the Akin firm, the Court turns to the case of *Aldrige*. *Aldrige on behalf of United States v. Corporate Management Inc.*, 2022 WL 983167 (S.D. Miss. March 30, 2022). In this recent case, which appropriately considered the billing rate

5

of a partner attorney who specialized in FCA *qui tam* cases, the Court found that a $450 per hour billing rate was reasonable in the relevant community for an attorney with this background. *Id.* The Court finds comparable to *Aldridge* the background and experience of Robert Salcido along with the complexities of this litigation. It appears that a $450 per hour billing rate for Robert Salcido is appropriate given his experience and background while also considering the complexities and high-stake nature of this case. In making this determination, the Court will also adjust the billing rates of other attorneys from the Akin firm in turn.

The Court is aware of other Akin attorneys who worked on this matter including Catherine Creely, Maureen McDonald, and Emily Gerry. The Akin firm charged $720 per hour for Creely's time, $695-$740 per hour for McDonald's time, and $500 per hour for Gerry's time. It appears that during the relevant time of this case, Creely had approximately 12 years of experience, McDonald had approximately 4-5 years of experience, and Gerry had approximately 1-2 years of experience.

As previously established, the Court is using Mississippi as the relevant market to determine hourly rates and will apply the same previous analysis to the above listed attorneys since they constitute the majority of the billing done by the Akin firm besides Robert Salcido. The Court concludes, following the case law and prior awards, that the following rates should be awarded: $250 per hour for Creely's time, $200 per hour for McDonald's time, and $150 per hour for Gerry's time. *Berkley v. Lafayette County., Miss.,* 2022 WL 533051 (N.D. Miss. Feb. 22, 2022); *Griggs v. Chickasaw County., Miss.,* 2020 WL 853532 (N.D. Miss. Feb. 20, 2020).

The Court must next inquire into the reasonableness of the hours billed by the Akin firm. The Relator primarily appears to assert that the Akin firm billed an excessive and unnecessary number of hours in this litigation. Those seeking attorney's fees must "prov[e] that they exercised

6

billing judgment" which "requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant." *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006). Examples pointed out by the Relator include billing $118,349 (153.7 hours) for preparing a motion to dismiss and reply brief; $57,050 (74.1 hours) for preparing for the Relator's deposition, and $68,607 (89.1 hours) for preparing to depose the Relator's experts. While these are just a few examples noted by the Relator, the Court agrees that there were excessive hours billed on more than one occasion. Further, a "court may properly reduce or eliminate hours when the supporting documentation is too vague to permit meaningful review." *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995). There exist numerous entries that are too vague to be reviewed for their reasonableness. The Court is aware of the complexities of a FCA *qui tam* case, but it is apparent that a more efficient and detailed logging approach could have been utilized. The Court believes that a 20% reduction, taking into consideration the above, in the billed hours is appropriate for the time billed by the Akin firm. The Court does not find that a 75% reduction, as requested by the Relator, is justified. The Court acknowledges that the Relator set the tone for this litigation following the allegations against the Defendants along with seeking over $30,000,000.00 in damages. It is therefore reasonable that the Defendants, and their counsel, would find the need to investigate and litigate this case fully and extensively.

  The total hours billed by the Akin firm, before the supplemental motion for fees, comes out to be 2,238.2 hours. As concluded, a 20% reduction in this amount is warranted, bringing the total hours down to 1790.6. Applying the appropriate adjusted hourly rates and reduced hours, the lodestar amount comes out to be $727,270.00.

7

The Court may next increase or decrease the lodestar based on the relative weights of the twelve factors set forth in *Johnson*. *Johnson*, 488 F.2d at 717-19. The *Johnson* factors, as they are commonly known, are as follows:

(1) the time and labor required;
(2) the novelty and difficulty of the questions;
(3) the skill required to perform the legal service properly;
(4) the preclusion of other employment by the attorney due to the case;
(5) the customary fee;
(6) whether the fee is fixed or contingent;
(7) time limitations imposed by the client or the circumstances;
(8) the amount involved and the results obtained;
(9) the experience, reputation, and ability of the attorneys;
(10) the "undesirability" of the case;
(11) the nature and length of the professional relationship with the client; and
(12) awards in similar cases.

*Johnson*, 488 F.2d at 717-19.

The Defendants are requesting an increase to the lodestar amount for Mr. Salcido of the Akin firm pursuant to the *Johnson* factors. Specifically, the Defendants request an upward adjustment to the lodestar by 17.6% for 2019, 20.4% for 2020, 30.6% for 2021, and 34.5% for 2022. The Defendants point to the great number of hours that were required in this case, the novelty of FCA litigation, the discounted rates offered, the special skill involved, and the successful outcome of the litigation, all of which the Defendants claim justify an upward adjustment to the lodestar amount.

Though the lodestar is presumed reasonable, it may be adjusted where it "does not adequately take into account a factor that may be properly considered in determining a reasonable fee." *Perdue*, 559 U.S. at 554. Courts frequently pronounce that lodestar enhancements are rare. *Combs*, 829 F.3d at 394. Each factor discussed by the Defendants to support an upward adjustment to the lodestar has already been considered by the Court when initially calculating the lodestar amount. *Shipes v. Trinity Indus.*, 987 F.2d 311, 320 (5th Cir.1993). There is no doubt that a vast

8

amount of work on this case required an experienced FCA attorney, but as the Court has discussed, this required experience and expertise was previously considered when awarding the attorneys at the Akin firm hourly rates that are at the very top end of awarded rates in Mississippi. The Court also believes that the reduction in billed hours was very reasonable while balancing the complexities and novelties of this litigation with the need to be efficient and provide detailed billing records. Also, the Defendants were successful in this case, which the Court factored into determining the adjustment to the reasonable number of hours expended on this litigation.

As stated previously, parties may file supplemental fee motions for time spent responding to their adversary's objections to their fee motions. *Cruz*, 762 F.2d at 1230. The Defendants seek supplemental attorneys' fees in this matter regarding the briefing done concerning attorneys' fees in the amount of $197,357.00 for the Akin firm's work completed during the months of April and May of 2023. Some of this amount is from the work completed on the previously denied Motion to Reconsider [352], but as the Court has found, it is appropriate to consider at this stage and results in no prejudice to the Relator. The Akin firm states they are writing off some of the billing, which reduces the total to $180,083.00 requested. The Court must, as previously done, determine the applicable rates of each attorney. The rate of Robert Salcido will be reduced to $450 per hour, $150 per hour for Emily Gerry, $150 per hour for Jenna Becker, $200 per hour for Caroline Kessler, and $200 per hour for Oluwaremilekun Mehner. These rates were either previously calculated by the Court or were calculated using the same prior analysis. The attorneys Becker, Kessler and Mehner had very similar experience to those attorneys discussed previously, and therefore, the applicable rates and analysis were identical in calculating these adjustments. The billing of Alexa Rummel will not be considered as the Defendants assert that the time of Alexa Rummel should be written off as her total billing was under $5,000.00.

9

The Court must next inquire into the reasonableness of the hours charged by the Akin firm for responding to the Motion for Reconsideration and for briefing the Motions for Fees and Expenses. The Court notes that the amount sought for these two months accounts for approximately 10% of the entire attorney fee award sought up until this point, which represents years of work. The Akin firm billed a total of 283.7 hours for these two months, which does not include hours that Akin has stated will be written off. The Court again finds the hours billed of the Akin firm to be excessive, and thus, the billed hours should be reduced by 20%. Therefore, using the adjusted locality rates and the adjusted reasonable billed hours, the Court finds the lodestar amount for the supplemental fee motion to be $56,950.00.

Following the same *Johnson* factor discussion as above, the Court concludes that this lodestar amount is presumptively reasonable and appropriate. The adjusted billed hours and rates take into consideration the complexities involved, the length of litigation, the opposition involved in the motions, and the success of the Defendants, and thus, no adjustment to the lodestar will be made based on the *Johnson* factors.

The Court will next inquire into the attorneys' fees and expenses to be awarded to Margaret Sams Gratz and other members of her firm Mitchell, McNutt & Sams. As previously discussed, the first step in determining the amount of attorneys' fees to be awarded in this matter it to calculate the hourly rate of each attorney. Generally, the relevant market for determining the hourly rate to be paid in a fee award is the community of the district court. *Tollett,* 285 F.3d at 368.

Mitchell, McNutt & Sams requests a total attorneys' fee award of $174,383.30 as a result of their representation in this matter. Regarding attorneys' fees and expenses of Mitchell, McNutt & Sams, the total requested award includes fees billed by partners, attorneys, a paralegal, and, as later discussed, retained experts. The requested hourly rates for the attorneys and paralegal are as

follows: $160 - $200 for Margaret Sams Gratz, shareholder; $160 for Brad Dillard, shareholder; $160 for William Armistead, attorney; $140 - $160 for Amanda Burch, attorney, and $67 - $90 for Casey Burgess, paralegal.

The Court initially notes that the hourly rates requested by Mitchell, McNutt & Sams are not contested, however, the Court will conduct further inquiry into their reasonableness. "When an attorney's billing rate is not contested, it is prima facie reasonable." *DeArmond v. Alliance Energy Services, LLC*, 2018 WL 2463207, at *5 (E.D. La. June 1, 2018) (citing *La. Power & Light Co.*, 50 F.3d at 328). Also, this Court has previously approved "a $385 hourly rate for ... an attorney with twenty years of experience; ... a $285 hourly rate for ... an attorney with four years of experience; and ... a $150 hourly rate for ... a paralegal." *Mass. Mut. Life Ins. Co. v. Williamson*, No. 4:15-CV-166, 2020 U.S. Dist. LEXIS 4318, at *4–5 (N.D. Miss. Jan. 10, 2020); *See Also Berkley*, 2022 WL 533051 at 5; *Griggs*, 2020 WL 853532 at 2.

Therefore, the rates of Margaret Sams Gratz, Brad Dillard, William Armistead, Amanda Burch, and Casey Burgess are supported by both the declarations, case law, and the Court's prior awards; the rates are within the range of rates previously approved by this Court and are therefore concluded to be reasonable.

The Court must next inquire into the reasonableness of the hours charged by Mitchell, McNutt & Sams. Those seeking attorney's fees must "prov[e] that they exercised billing judgment" which "requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant." *Saizan*, 448 F.3d at 799.

The Relator argues that the Court should exclude a significant number of hours billed by Mitchell, McNutt & Sams due to unreasonably vague entries, duplicative entries, and excessive billing. The Relator asserts that a substantial amount of billing information has been redacted,

11

thus preventing a meaningful review of what work was done. A "court may properly reduce or eliminate hours when the supporting documentation is too vague to permit meaningful review." *Louisiana Power & Light Co.,* 50 F.3d at 324. "Redaction of billing records is acceptable as long as the court has sufficient information to form an opinion on the reasonableness of the fees." *Randolph v. Dimension Films*, 634 F. Supp. 2d 779, 800 (S.D. Tex. 2009). However, redacted entries must be excluded if they do not provide sufficient information to classify and evaluate the activities and hours expended. *Id.*

When reviewing the billing records of Mitchell, McNutt & Sams, the Court notes that there are numerous entries of "Work on 'redacted[,]'" "Research 'redacted[,]'" and other similar vague entries. [356]. These entries reach the point of being vague to the extent that the subject matter of the billing is unable to be determined, thus, a reduction to the lodestar of Mitchell, McNutt, and Sams is warranted in the amount of 10% due to the numerous entries that reach this categorization.

The Relator further asserts that Mitchell, McNutt & Sams engaged in excessive billing through the paralegal, who billed over 80 hours working on a chronology of the case. However, there is no further remarks as to why this amount is excessive. Also, the relator asserts there has been duplicative entries in this matter, specifically with billing for depositions. The Relator takes issue where attorneys with Mitchell, McNutt & Sams attended depositions with Robert Salcido and both parties billed for the matter.

"If more than one attorney is involved, the possibility of duplication of effort along with the proper utilization of time should be scrutinized." *Johnson,* 488 F.2d at 717. "Compensation is sought for more than one attorney's time at depositions, hearings, negotiations, or other activities only if there was a legitimate need for the involvement of more than one attorney." *Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 768 (5th Cir. 1996). The Defendants have alleged that

12

Robert Salcido only attended depositions in which his FCA expertise was needed, however, it appears that Margaret Sams Gratz attended Robert Salcido's depositions because she was required to under the local rules. It has not been made abundantly clear to the Court that Margaret Sams Gratz's billing of chargeable time while attending Robert Salcido's depositions was necessary under the circumstances, and thus, a reduction to the lodestar calculation of 2% is warranted.

Lastly, as previously discussed, the Court may increase or decrease the lodestar based on the relative weights of the twelve factors set forth in *Johnson*. *Johnson*, 488 F.2d at 717-19. The Court typically applies analysis of each of these factors requested by the moving party to determine if an adjustment to the lodestar is appropriate under the circumstances, however, the Defendants do not seek an upward adjustment to the lodestar and the Relator does not seek a downward adjustment. The argument surrounding attorneys' fees of Mitchell, McNutt & Sams centered around the initial lodestar calculation instead of any later adjustment to it. The Court finds that attorneys' fees in the amount of $153,457.33, which is an overall 7% reduction of the requested amount of $174,383.30, should represent the final lodestar amount to be awarded, as a full review of the *Johnson* factors does not support any deviation. The Court in making this calculation finds the amount to be fair and reasonable under the circumstances and facts of this case and fully supported by the *Johnson* factors as established by the record.

The Defendants also seek fees for Lily North of the firm Benesch, Friendlander, Coplan, & Arnoff, LLP; Michael Phillips of Hagwood and Tipon, P.C.; Kynda Almefty of Hardin, Jesson, & Terry, PLC; KLDiscovery Ontrack, LLC; Paul Killeen; Jan Ahrens of Quintarios, Prieto, Wood & Boyer, PA; and Mark Brennan of Woods Rogers Vandeventer Black, PLC.

To begin, the Defendants seek fees in the amount of $21,165.73 for the work of Lily North based on an hourly rate of $450; however, the Court finds that a $250 hourly rate is instead

appropriate, thus bringing the total to $11,758.74. *Sentry Select Ins. Co.*, 2023 WL 4035910 at 2; *Volvo Financial Services, a division of VFS US LCC v. Willliamson*, 2018 WL 1096852 at 2 (S.D. Miss. Feb. 28, 2018). Fees are next sought for Paul Killeen in the amount of $18,725.00 based on a rate of $300 per hour; the Court finds the amount reasonable and appropriate given the experience relevant to this type of case. Fees are also sought for Kynda Almfefy in the amount of $14,197.50 based on a $225 hourly rate; the Court finds this amount and rate appropriate given the experience, qualifications, and billing records provided. The Defendants also seek fees in the amount of $6,454.80 based on the work of Jan Ahrens whose rate was $198 per hour; the Court finds this amount and rate to be reasonable and warranted. Also, the Defendants seek fees for Mark Brennan in the amount of $6,188.50 based on a $225 hourly rate for himself and a $115 hourly rate for his paralegal, which the Court finds reasonable and supported by previous awards in the state and district. The Defendants next seek fees for Michael Phillips in the amount of $5,676.00 based on a $240 hourly rate, which the Court finds both reasonable and appropriate, thus, the amount should be awarded. Courts have previously approved expenses for e-discovery, finding that the services can be reasonable and warranted. *Hunt Building Co., Ltd. V. John Hancock Life Ins. Co.*, 2013 WL 12094217 at 27 (W.D. Texas Oct. 3, 2013). The Court presently finds that the expenses of the e-discovery services both warranted and reasonable under the circumstances of the case and that they should be awarded in the amount of $14,197.50. In sum, the amount for these attorneys, firms, and/or services totals $77,198.04. The Court notes that the billing information of the attorneys, firms, and services discussed above were considered in a single grouping as this is how the information was presented and argued to the Court. The Court has also considered the *Johnson* factors with the lodestar amount for each attorney or firm and finds that it should not be adjusted. The amount awarded has taken into consideration each of the *Johnson* factors, including but not

limited to the time and labor required, the novelty of the case, the amount involved, and the results obtained.

The Court will next address the award of expert fees incurred by Mitchell, McNutt & Sams. Again, the FCA permits a defendant to recover its reasonable attorneys' fees, expenses, and costs "if the defendant prevails in the action and the court finds that the claim of the person bringing the action was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment." 31 U.S.C. § 3730(d)(4). Reasonable expenses can include expert fees, and courts have awarded expert fees in actions brought under the FCA. *U.S. ex rel. Maxwell v. Kerr–McGee Oil & Gas Corp.*, 793 F.Supp.2d 1260, 1263 (D.Colo.2011).

Mitchell, McNutt and Sams retained the experts Robert Lane, Rick Harris, and W. Shane Hariel for purposes of litigation in this matter. Lane was compensated at a rate of $355 per hour, and the total expenses for Lane's expert services was $7,578.60. Harris was retained for similar expert opinion services and was compensated at a rate of $400 per hour, and the total expenses for Harris' expert services was $14,680.00. Hariel was also retained to provide expert opinions as to this litigation and was compensated at a rate of $360 per hour while supervising multiple managers under him charging a rate of $130 - $265 per hour; the total amount for Hariel's expert services is $21,240.00.

As previously discussed, the tone and seriousness of this case was set by the Relator from the beginning due to the nature of the allegations along with the damages being sought in excess of $30,000.000.00. Being presented with FCA *qui tam* litigation, which typically involves complex issues generally proving to be novel and difficult, the Court finds it reasonable that the Defendants would turn to experts in the field to provide their opinions and guidance. Further, the complexity of the medical, medical licensing, nursing home, and medicare/medicaid fields provide

15

further evidence of the usefulness, reasonableness, and necessity for the Defendants to rely on experts in this case Following this, the Court finds the requested expert expenses incurred by Mitchell, McNutt & Sams to be reasonable and necessary under the facts and circumstances of the case and the award of such expenses to be justified in this matter. Therefore, the Court finds that expert expenses in the amount of $43,498.60 are supported and should be awarded to the Defendants.

The Court, having considered the Defendants' Motion for Attorneys' Fees and Other Expenses [356], the Plaintiff's Motion to Strike [367], the Defendants' Supplemental Motion for Attorneys' Fees and Other Expenses [368], and all attached exhibits, finds the following: the Defendants' Motion for Attorneys' Fees and Other Expenses [356] is granted in part and denied in part; the Plaintiff's Motion to Strike [367] is denied as moot; and the Defendants' Supplemental Motion for Attorneys' Fees and Other Expenses [368] is granted in part and denied in part. In total, the Court finds that attorneys' fees and expenses should be awarded to the Defendants in the amount of $1,058,373.97.

A separate order in accordance with this opinion shall issue this day.

SO ORDERED, this the 14th day of March, 2024.

_____
SENIOR U.S. DISTRICT JUDGE