N THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, ex rel. | ) | |
| CAMERON JEHL, | ) | |
| | ) | |
|     Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 3:19-cv-091-GHD-JMV |
| | ) | |
| GGNSC SOUTHAVEN LLC D/B/A GOLDEN | ) | |
| LIVINGCENTER-SOUTHAVEN; GGNSC | ) | |
| ADMINISTRATIVE SERVICES LLC D/B/A | ) | |
| GOLDEN VENTURES; AND GGNSC | ) | |
| CLINICAL SERVICES LLC D/B/A GOLDEN | ) | |
| CLINICAL SERVICES, | ) | |
| | ) | |
|     Defendants. | ) | |

---

**PLAINTIFF-RELATOR'S MEMORANDUM IN
SUPPORT OF MOTION TO ALTER OR AMEND THE
AMOUNT OF THE JUDGEMENT REGARDING ATTORNEYS' FEES**

---

Pursuant to Fed. R. Civ. Proc. 59(e), the Court should reduce the amount of attorneys fees awarded in this case for the reasons set forth in of the first and second sections of the Plaintiff-Relator's memorandum opposing the full amount of attorneys' fees sought by the Defendants. In granting a fee award of $1,058,373.97, the Court failed to address the two arguments in those sections.[1]  The arguments are at pp. 3-6 of Doc. 363.  They are alternative arguments and they raise important issues.  If either had been accepted, the fee award would have reduced by several hundred thousand dollars.

"The failure to address a key legal argument is an appropriate basis for a Rule 59(e) motion." *Garziano v. Louisiana Log Home Co., Inc.*, 569 Fed.Appx. 292, 300 (5th Cir. 2014)

---

[1] The Court's opinion is at Doc. 377.

The arguments are fairly short and can be reviewed in full very easily. But for present purposes, the best way to summarize the first argument, at pp. 3-4 of Doc. 363, is to quote this excerpt:

> "If it is not apparent that an action lacks merit at its inception, but the result becomes obvious at some point in the litigation, a prevailing defendant may recover fees incurred after that point." *Palazzolo v. Sonne*, 2009 WL 86706 *1 (N.D. Cal. 2009). Here, defense counsel Salcido, despite his years of experience and extensive knowledge, did not mention the CMS guidance to the court until he filed an expert report on April 19, 2021 that explained it. Docket 224 (notice of service of expert report). He did not mention it to the Court until he filed the defendants motion for summary judgment on May 13, 2021. Docket 247 at 10 and n. 13. Given that he apparently did not know about it when he filed the motion to dismiss, or if he did know, did not deem it of sufficient importance to mention it, how was the relator supposed to know about it? The relator should not be charged with failing to notice something that the defendants did not mention in their pleadings. See, *Gonzalez v. Planned Parenthood of L.A.*, 2015 WL 12659936 at *12 (C.D. Cal. 2015) ("[T]he fact that Defendants did not argue the issue of scienter in seeking dismissal of Plaintiff's Third Amended Complaint . . . undercuts Defendants' assertion now that the result was obvious from the start of the litigation.").
> ….
>
> Accordingly, the defendants should not recover fees for the time prior to raising the CMS guidance.

Doc. 363 at 3-4.

> The second argument, in the alternative, is best summarized by these excerpts:
>
> In responding to the Relator's motion for reconsideration, the defendants said that when the motion to dismiss was denied, "the Court did not know" a number of things, including that the theory of the Relator's second amended complaint was "directly contrary to the relevant federal agency's interpretation of when that professional's license becomes invalid." Docket 355 at 9-10. According to the defendants, this demonstrated the relator's claim was "clearly frivolous." Id. at 11. As it turned out, the Court did not know about "the plain language of public federal law," docket 350 at 6, *because the defendants did not mention it in the motion to dismiss*.
> . . . .
>
> [A]ssuming the Court believes that the relator should not have pursued the theory of his initial complaint because Nurse Trofort's Virginia multistate license had been reinstated, and should not have pursued the theory of his second amended complaint because the CMS interpretation foreclosed it, the only time that is compensable is the time the defendants needed to spend moving to dismiss those complaints. Any time they spent thereafter was their own fault for failing to raise this "clear" and "unequivocal" and "plain" language which they say "demonstrate[d] Relator's action [was] clearly frivolous."

2

Accordingly, they should not be compensated for any time spent after the motion to dismiss was denied on December 14, 2020.  Docket 131.

Doc. 363 at 5-6.  *See also, Browning Debenture Holders' Committee v. DASA Corp.*, 560 F.2d 1078, 1088 (2d Cir. 1977) ("The Bank may not recover attorneys' fees based on a protracted defense if it could have minimized the disbursement by obtaining an earlier dismissal.").

In the event the Court agrees with either the first or second argument raised in the earlier opposition to the Defendant's specific fee motion, the calculations from the charts set forth in the exhibit to the Rule 59(e) motion show the amount of fees that would be owed.  These charts list number of defense counsel hours in the relevant time periods and incorporate the hourly rates deemed reasonable by the Court and the reductions for excessiveness and vagueness imposed by the Court in its fee ruling.  Depending on which of the alternative arguments the Court accepts, one of the amounts would be substituted for the figure of $1,058,373.97 that the Court held was owed when it issued its opinion without addressing those two arguments.  If the Court agrees with the first argument, the total amount owed would be $490,646.22.   If the Court instead agrees with the second argument, the total amount owed would be $339,079.36.

As mentioned earlier, Rule 59(e) is an appropriate means of addressing an important argument that previously was not addressed.  In addition, a Rule 59(e) motion can be invoked to "prevent manifest injustice."  *Hood v. Cent. United Life Ins. Co.*, 664 F. Supp. 2d 672, 674 (N.D. Miss. 2009).   There would be a manifest injustice if Relator Cameron Jehl is required to pay hundreds of thousands of dollars for both (1) defense counsel's attorney's fees for work *prior to* the time that defense counsel (a False Claims Act expert) informed Mr. Jehl, his counsel, and the Court of the CMS guidance that led to the summary judgment and (2) defense counsel's attorney's fees *after* the motion to dismiss was denied given that defense counsel presumably

3

could have obtained a dismissal had he relied on the CMS guidance (which he says "demonstrate[d] Relator's action [was] clearly frivolous") in support of his motion to dismiss. Even if Mr. Jehl has to pay the defense fees for one of these time periods, he should not be required to pay both. As it is now, however, the Court has not addressed either of these alternative arguments, which puts Mr. Jehl in the position of having to pay over a million dollars for defense counsel's work over both time periods.

As noted at p. 4 of doc. 363 where we previously raised these two arguments about fees, the District Court held that even though Nurse Trofort's Virginia license had been reinstated, the Relator still had a "good faith argument" to proceed with the Second Amended Complaint and accordingly denied the motion to dismiss. As we explained then: "Given the Court's denial of that motion, the relator had good reason to believe the case was not frivolous and could proceed. To the extent the theory was frivolous because of the CMS guidance, the relator became aware of it much later [when he was finally informed of it by defense counsel]." Doc. 363 at 4.

Although Relator Cameron Jehl is an attorney, he had no prior experience with the False Claims Act and is not an expert in the False Claims Act. But defense counsel Robert Salcido is. Moreover, as previously mentioned, doc. 353 at 3, Mr. Jehl was represented by three reputable law firms. (They are Neal & Harwell, the law office of Bill Luckett prior to his death, and the law office of Richard Barrett). Neal & Harwell is experienced in False Claims Act cases as reflected on their website. Mr. Jehl was justified in relying on his attorneys and proceeding with the pleadings that his counsel prepared, particularly given that the Court denied the motion to dismiss and allowed him to proceed at a time when defense counsel had yet to mention the CMS guidance and none of the parties, their attorneys, or the Court seemed to be aware of it or aware

of its purported relevance.[2]  It would be a manifest injustice to require Mr. Jehl to pay the full

amount of $1,058,373.97 without reducing it in accordance with either the first alternative

argument or the second one that were previously raised but not addressed.

For these reasons, and for the reasons set forth in doc. 363 at pp. 3-6, this motion should

be granted and the amount of fees should be adjusted accordingly.

Respectfully submitted,

/s/ *Robert B. McDuff*
Robert B. McDuff (MSB # 2532
Law Office of Robert B. McDuff
767 North Congress Street
Jackson, MS 39202
601.259.8484 (Telephone)
rbm@mcdufflaw.com

Philip N. Elbert (admitted pro hac vice)
Nathan C. Sanders (admitted pro hac vice)
NEAL & HARWELL, PLC
1201 Demonbreun Street, Suite 1000
Nashville, TN  37203
(615) 244-1713 – Telephone
pelbert@nealharwell.com
ksamson@nealharwell.com
nsanders@nealharwell.com

---

[2] In responding to the motion for reconsideration of the initial order requiring the payment of the Defendant's attorneys' fees, the Defendant took note of the fact that Mr. Jehl had not been informed of the CMS guidance until he learned of it through the discovery process.  The Defendant then put the blame on Mr. Jehl's counsel.  "Relator's counsel, at a minimum, when accusing Defendants of fraud for violating law, should be aware of what the law actually provides, including the relevant federal agency's authoritative public interpretation of the law."  Doc. 355 at 5 n.1.  In making this statement, Defendant never explained why Mr. Jehl's counsel should know about it when defense counsel either did not know about it or did not perceive its relevance until he raised it during discovery.   Moreover, even though Defendant lays much of the blame for this failure at the feet of Mr. Jehl's counsel, Defendant never made a Rule 11 claim against Mr. Jehl's counsel or asked that his counsel share in the liability for any fees. This compounds the unfairness of requiring Mr. Jehl to pay over one million dollars in fees.

Richard R. Barrett (MSB #99108)
Law Office of Richard R. Barrett, PLLC
2086 Old Taylor Road
Suite 1011
Oxford, MS 38655
662.380.5018 (Telephone)
rrb@rrblawfirm.net

*Counsel for Relator*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 10th day of April, 2024, the foregoing was served on all counsel of record by operation of the Court's electronic filing system.

/s/ *Robert B. McDuff*