IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| **UNITED STATES OF AMERICA ex rel. CAMERON JEHL,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**GGNSC SOUTHAVEN LLC D/B/A GOLDEN LIVING CENTER-SOUTHAVEN et al.**<br><br>**Defendants.** | Case No. 3:19cv091-NBB-JMV |

**MEMORANDUM OF LAW IN SUPPORT OF RESPONSE IN OPPOSITION TO RELATOR'S MOTION TO ALTER OR AMEND THE AMOUNT OF JUDGMENT REGARDING ORDER FINDING THAT THIS CASE IS FRIVOLOUS AND GRANTING ATTORNEYS' FEES TO DEFENDANTS**

The Court should deny Relator's Motion to Alter or Amend the Amount of Judgment Regarding its Order Granting Attorneys' Fees to Defendants based upon Relator filing a frivolous False Claims Act ("FCA") action. Relator, in his brief, again contends that the Court should not award attorneys' fees for certain time periods because Defendants' counsel did not inform Relator's counsel of the public, unambiguous law that rendered Relator's allegation in his Second Amended Complaint ("SAC") frivolous (because it had no chance of success) until the discovery phase of this case. ECF 381 at 1-3.

The Relator, in his Rule 59(e) motion, openly concedes that he is overtly rehashing precisely the same arguments made multiple (four) times over the course of this litigation both regarding Defendants' entitlement to fees and the quantum of fees to be awarded. *See id.*; *see also* ECF 334 at 9-10; ECF 353 at 6; ECF 358 at 2-3, 5-6; ECF 363 at 3-6.

Countless courts have consistently ruled that it is inappropriate to invoke Rule 59(e) to simply repeat previously raised arguments.[1] The Court should deny Relator's Motion for at least two reasons. First, the Motion should be denied because a party simply repeating the same arguments that it previously raised does not provide a court an adequate basis to reconsider a prior ruling. Second, the Motion should be denied because Relator's contentions are just as meritless as the last four times Relator raised these same arguments and the Court rejected them.

## I. PROCEDURAL AND FACTUAL BACKGROUND

On March 30, 2022, after permitting extensive briefing, the Court granted Defendants' motion for summary judgment. ECF 327. The Court concluded, after an extensive review of the record, that there was a "complete failure of proof" of every essential element to establishing FCA liability. *Id.* at 13. Relator appealed the Court's ruling.

---

[1] *See e.g., Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486 n.5 (2008) ("Rule 59(e) permits a court to alter or amend a judgment, but it 'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'") (quoting 9B C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 2537); *Agbonzee v. Wal-Mart Stores Texas, L.L.C. #772*, No. 21-20395, 2022 WL 3137428, at *3 n.2 (5th Cir. Aug. 5, 2022); *Budri v. FirstFleet, Inc.*, 860 F. App'x 306, 308-09 (5th Cir. 2021) (rejecting motion because party merely "sought to rehash the arguments and legal theories that he had already put forth in is myriad filings before the district court"); *Willbern v. Bayview Loan Servicing, L.L.C.*, 842 F. App'x 865, 868-69 (5th Cir. 2021) ("A Rule 59(e) motion is inappropriate to relitigate old matters or raise arguments or claims that could, and should, have been made before the judgment issued.") (internal quotation and citation omitted); *Perez v. Physician Assistant Bd.*, 765 F. App'x 960, 964 (5th Cir. 2019); *Quinn v. Guerrero*, 863 F.3d 353, 360 (5th Cir. 2017); *Kie v. Williams*, 697 F. App'x 388, 390 (5th Cir. 2017) (same); *Naquin v. Elevating Boats, L.L.C.*, 817 F.3d 235, 240 n.4 (5th Cir. 2016) (same); *Mitchell v. Sikorsky Aircraft*, 533 F. App'x 354, 358-59 (5th Cir. 2013); *Winding v. Grimes*, 405 F. App'x 935, 937 (5th Cir. 2010) (same); *Worrell v. Houston CanA Acad.*, 287 F. App'x 320, 327-28 (5th Cir. 2008) (same); *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004); *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002); *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990); *Pickle v. Cain*, No. 4:21CV9-SA-JMV, 2021 WL 2346104, at *1 (N.D. Miss. June 8, 2021); *Robinson v. Mississippi*, No. 4:17-CV-145-DMB-DAS, 2020 WL 1521745, at *1-2 (N.D. Miss. Mar. 30, 2020); *Sharp v. United States*, No. 3:19CV86-SA-JMV, 2020 WL 1467393, at *1 (N.D. Miss. Mar. 26, 2020); *Jones v. United States*, No. 4:08CR90-SA-DAS, 2016 WL 11783397, at *1 (N.D. Miss. June 14, 2016); *Atkins v. Marathon Le Tourneau Co.*, 130 F.R.D. 625, 626 (S.D. Miss. 1990).

2

On April 13, 2022, immediately after the Court's ruling, Defendants moved for attorney fees and expenses under the FCA's fee-shifting provision. *See* ECF 331. In Defendants' Motion, as the Court set forth in its Ruling on Defendants' Motion for Fees, Defendants established why from start to finish Relator's action was clearly frivolous, clearly vexatious, and brought primarily for purposes of harassment, including:

1. [R]elator filed the action without checking easily accessible public information regarding whether his false core allegation and the false basis for the lawsuit—that [Nurse] Trofort's multistate license had never been reinstated—was correct when he, a licensed attorney, would have learned his allegation was false had he performed a simple fact check, as [Nurse] Trofort held an active, valid multistate license throughout her employment with GGNSC.

2. [R]elator filed common law claims which dozens of courts have rejected because they have no legal basis and are therefore frivolous.

3. After learning from the [D]efendants that his core allegation regarding [Nurse] Trofort's licensure was false and that the Defendants had twice confirmed the validity of [Nurse] Trofort's licensure during her employment with GGNSC, Relator altered his theory to one that, as this court has already noted, Relator's own expert had rejected.

4. After learning from the [D]efendants that [the Centers for Medicare & Medicaid Services ("CMS")] guidelines clearly and unambiguously reject his theory, [R]elator engaged in discovery abuse to salvage his lawsuit by futilely attempting to create a triable issue of fact.

5. After the [C]ourt objected to [R]elator's theory, [R]elator engaged in the same type of discovery abuse again in an attempt to salvage his lawsuit by referencing treatment to a non-federally funded patient—an approach which one circuit had already rejected as facially frivolous.

6. Relator publicly disclosed the conditions of a prior settlement which contained a confidentiality provision in an attempt to salvage his lawsuit.

ECF 350 at 4-5 (citations and footnotes omitted); *see also* ECF 338 at 1.

On December 6, 2022, the Fifth Circuit affirmed this Court's summary judgment ruling on the merits. *See U.S. ex rel. Jehl v. GGNSC Southaven, LLC*, No. 22-60209, 2022 WL 17443684 (5th Cir. Dec. 6, 2022). After a detailed review, the Fifth Circuit, like this Court before, concluded that there was, under the facts and law, a clear complete failure of proof as to each essential element

3

of FCA liability. *Id.* at *5 ("In sum, we agree with the district court that [Defendant] has 'demonstrated a complete failure of proof on each of the essential elements of the relator's claims.'").

After the Fifth Circuit's ruling, on March 28, 2023, this Court granted Defendants' motion for attorneys' fees and expenses. Based upon a detailed review of the record, the Court concluded that Relator's lawsuit "was patently and demonstrably frivolous" from start to finish. ECF 350 at 6. The Court concluded that "the relator's lawsuit was patently and demonstrably frivolous because an application of the plain language of public federal law—that is, the CMS's authoritative interpretation of its governing regulation regarding licensure set forth in the *State Operations Manual*—and application of the easily obtainable public facts—that Trofort held a valid, active multistate license during her employment with the defendants—lead to the inexorable conclusion that the relator's action is groundless." *Id.*

In the course of briefing leading to the Court's ruling regarding entitlement to fees, and in its aftermath, Relator has now raised the same argument he raises here on four separate occasions, Defendants have specifically responded to Relator's contention each time, and the Court has rejected it in reaching its ruling.

Relator first asserted that Relator's lawyers should not be held responsible for their failure to know the government's public interpretation of law, which resulted in his action having no chance of success, in his Opposition to Defendants' Motion for Attorneys' Fees. *See* ECF 334 at 9-10. In response, Defendants, in their Reply, pointed out that Relator's contention that his action was not frivolous because he only learned of CMS's governing interpretation of law late in the litigation, was meritless because Relator, at that time, did not move to dismiss even after learning of CMS's rule but instead decided to engage in what the Court has found to be discovery abuse to

4

attempt to create a triable issue of fact which is additional proof of vexations and harassing conduct. *See* ECF 338 at 7 n.6. The Court, "[u]pon due consideration of the motions, responses, exhibits, and applicable authority," ruled that Relator's action was "patently and demonstrably frivolous" because, among other reasons, "relator ignored the CMS rules published in its *State Operations Manual*" which "plainly and unambiguously" rejected the position Relator advanced in this lawsuit such that Relator's lawsuit had no chance of success. ECF 350 at 1, 5-6.

The next time Relator asserted that he should not be responsible for filing a frivolous allegation because he failed to check the public law underlying his claim was in his first Motion for Reconsideration. *See* ECF 353 at 6. Relator next, at length, made precisely the same argument in his Reply brief in support of this motion as well. *See* ECF 358 at 2-3, 5-6. Defendants, in response to Relator's motion, pointed out that Relator, as plaintiff, should know the government's public interpretation of law when he asserts that Defendants fraudulently violated that same law. Defendants observed that once they had to point out to Relator what the law is, Relator did not dismiss the action but, instead, elected to (i) engage in an accelerated campaign, on multiple occasions, of discovery abuse, (ii) advance a contention that one appellate court had already branded as facially frivolous and (iii) breach a confidentiality provision in a settlement agreement with Defendants all in an attempt to salvage his case. ECF 355 at 5 n. 1. The Court, after "having considered the [Relator's] motion, the subsequent response and reply, and the applicable law," denied Relator's motion, reasoning that Relator "points to no argument or evidence demonstrating that the Court should reconsider the previous award of attorneys' fees" and this is, again, because "CMS's authoritative interpretation of the governing regulations and easily obtainable public facts lead to the conclusion that the relator's action was groundless, frivolous, and had no chance of success." ECF 375 at 1, 6, 7.

5

Next, Relator contended that he should not be responsible for filing a frivolous claim because he failed to check the public law underlying his claim in his Response to Defendants' Motion for an Award of Attorneys' Fees. *See* ECF 363 at 3-6. Indeed, Relator, in his current Motion for Reconsideration even quotes extensively from this same prior filing, as if the Court did not read these passages the first time they were filed. *See* ECF 381 at 2-3. Defendants, in their Reply, again addressed Relator's contention in detail, noting that (i) under the FCA's fee-shifting provision, Relator has a duty not to file frivolous claims; (ii) ignorance of the law or legal procedure is not an excuse for filing a frivolous action (citing *Granger v. Young*, 1994 WL 904639, at *1 (E.D. Tex. June 28, 1994)); and (iii) on multiple occasions during the course of this litigation, defense counsel actively sought to dissuade Relator from pursuing a frivolous, vexations, and harassing course of conduct by, among other things, (a) informing Relator that his action had no factual basis after verifying Nurse Trofort's licensure with her licensing body upon receiving Relator's initial complaint; (b) providing Relator with additional evidence that the initial and First Amended Complaints were based on a demonstrably false factual premise after submitting, at Defendants' own expense, a Freedom of Information Act request to Virginia (after Relator continued to fail to make a reasonable inquiry); (c) informing Relator, in a detailed e-mail and multiple calls, that a claim that rests upon a demonstrably false factual premise is frivolous under the FCA fee-shifting provision; and (d) after Relator, rather than dismissing the action, filed a SAC that radically changed his theory of FCA liability, conducting a review of CMS's official, public interpretation of law as to when a license becomes invalid and alerting Relator to the fact that his position was so blatantly contrary to law as to be frivolous. *See* ECF 365 at 4 & n.5, n. 6. The Court, again, rejected Relator's position. *See* ECF 377. Noting that it had "considered the motions, the responses, the replies, and the applicable law," the Court determined, contrary to Relator's

position, to award attorneys' fees for the duration of the lawsuit because "Relator's action was groundless, frivolous, and had no chance of success." *See id.* at 1-2.

## II. LEGAL BACKGROUND

A Rule 59(e) motion "calls into question the correctness of a judgment," *In re Transtexas Gas Corp.*, 303 F.3d at 581, and, therefore, is an "extraordinary remedy that should be used sparingly," *Templet*, 367 F.3d at 479 (internal citation omitted).

As such, a Rule 59(e) motion "must clearly establish *either* a manifest error of law or fact *or* must present newly discovered evidence." *Simon*, 891 F.2d at 1159 (quoting *Federal Deposit Ins. Corp. v. Meyer*, 781 F.2d 1260, 1268 (7th Cir. 1986)) (emphasis added). Courts have uniformly held that a Rule 59(e) motion *cannot*, on the other hand, be used to rehash arguments that have already been fully briefed before the court. *See Exxon Shipping Co.*, 554 U.S. at 486 n.5; *see also Agbonzee*, 2022 WL 3137428, at *3 n.2; *Budri*, 860 F. App'x at 308-09 ("[Appellant] sought to rehash the arguments and legal theories that he had already put forth in his myriad filings before the district court. He also sought to advance new arguments and claims that could have been previously offered. In short, [Appellant] offered nothing that would justify a decision by the district court to reconsider its judgment."); *Willbern*, 842 F. App'x at 868-69; *Perez*, 765 F. App'x at 964; *Quinn*, 863 F.3d at 360; *Kie*, 697 F. App'x at 390; *Naquin*, 817 F.3d at 240 n.4; *Mitchell*, 533 F. App'x at 358-59; *Winding*, 405 F. App'x at 937; *Worrell*, 287 F. App'x at 327-28; *Templet*, 367 F.3d at 479-80; *In re Transtexas Gas Corp.*, 303 F.3d at 581; *Simon*, 891 F.2d at 1159; *Pickle*, 2021 WL 2346104, at *1 ("[W]hatever may be the purpose of Rule 59(e) it should not be supposed that it is intended to give an unhappy litigant one additional chance to sway the judge. . . . Rule 59 may not be used merely to re-urge an argument." (quoting *Atkins v. Marathon Le Tourneau Co.*, 130 F.R.D. 625, 626 (S.D. Miss. 1990)) (internal quotation marks omitted)); *Robinson*, 2020 WL 1521745, at *1-2; *Sharp*, 2020 WL 1467393, at *1; *Jones*, 2016 WL 11783397, at *1.

**ARGUMENT**

**I.     COURT SHOULD DENY RELATOR'S RULE 59(e) MOTION BECAUSE RELATOR ONLY REPEATS THE SAME ARGUMENTS THE COURT PREVIOUSLY CONSIDERED AND REJECTED**

Here Relator does not state anywhere that he is offering new facts that were previously unavailable nor does Relator purport to offer any new case law. Instead, all Relator unapologetically offers are *precisely* the same contentions that this Court has already rejected in its rulings.

Because Relator seeks nothing more than to repeat prior arguments, he has provided no basis to alter or amend the Judgment and hence his Rule 59(e) motion should be rejected under clear and unambiguous law. *See, e.g., Exxon Shipping Co.*, 554 U.S. at 486 n. 5; *Agbonzee*, 2022 WL 3137428, at *3 n.2; *Budri*, 860 F. App'x at 308-09; *Willbern*, 842 F. App'x at 868-69; *Perez*, 765 F. App'x at 964; *Quinn*, 863 F.3d at 360; *Kie*, 697 F. App'x at 390; *Naquin*, 817 F.3d at 240 n.4; *Mitchell*, 533 F. App'x at 358-59; *Winding*, 405 F. App'x at 937; *Worrell*, 287 F. App'x at 327-28; *Templet*, 367 F.3d at 479-80; *In re Transtexas Gas Corp.*, 303 F.3d at 581; *Simon*, 891 F.2d at 1159; *Pickle*, 2021 WL 2346104, at *1; *Robinson*, 2020 WL 1521745, at *1-2; *Sharp*, 2020 WL 1467393, at *1; *Jones*, 2016 WL 11783397, at *1.[2]

---

[2] Relator also appears to know that rehashing prior arguments in the context of Rule 59 motion is improper and contrary to Rule 59(e). When Relator filed a previous motion to reconsider under Rule 54, Relator contrasted his Rule 54 motion, where he claimed rehashing a prior argument is proper, with Rule 59(e), **"which would not allow submission of prior arguments."** ECF 358 at 3 ("[D]efendants claim in their opposition that this Court should apply the Rule 59(e) standard, which would not allow submission of prior arguments.") (emphasis added) (citation omitted). And, here, Relator is not simply rehashing an argument raised once, but on *four* separate occasions. This lays bare the true intent of Relator's motion, which is not to succeed, but to continue the pattern of vexatious and harassing conduct to delay and impede Defendants' ability to collect the debt owed. The two cases Relator cites also reaffirm why his motion is meritless under Rule 59(e). *See* ECF 381 at 1 (citing *Garzino v. La. Log Home Co., Inc.*, 569 Fed. App'x 292, 300 (5th Cir. 2014) and at 3 (citing *Hood v. Cent. United Life Ins. Co.*, 664 F. Supp. 2d 672, 674 (N.D. Miss. 2009)). Both *Garzino* and *Hood* repeat the standard rule, which undermines Relator's motion here, that Rule 59(e) can only apply when there is (i) an intervening change in

## II. RELATOR'S MOTION SHOULD ALSO BE DENIED BECAUSE RELATOR'S SAME ARGUMENTS ARE AS BASELESS AS THE LAST FOUR TIMES RELATOR RAISED THEM AND THE COURT REJECTED THEM

Further, even if the Court were inclined to review the same contentions that Relator raised previously on four separate occasions and that the Court rejected, these same arguments should be rejected again because they are just as meritless now, on the fifth occasion he has raised them, as they were the last four times he raised them.

First, Relator's factual assertion that the Court failed to address his contention that Relator should not be responsible for filing a frivolous claim because he failed to check the public law underlying his claim is wrong. As each of the Court's rulings reflect, the Court was fully conversant with all the parties' contentions and briefs. *See* ECF 350 at 5-6; ECF 375 at 6, 7; ECF 377 at 1-2. Defendants' position is that Relator's lawsuit, from start to finish, is patently and demonstrably frivolous because, as the Court previously concluded: (i) "an application of the plain language of public federal law—that is, the CMS's authoritative interpretation of its governing regulation regarding licensure set forth in the *State Operations Manual*"—and (ii) an "application of the easily obtainable public facts—that Trofort had a valid, active multistate license during her employment with the defendants," leads to the "inexorable conclusion that the relator's action is groundless." ECF 350 at 6. Relator's position, briefed previously on four occasions, is that his action is not frivolous and that, as proof that his action is not frivolous, Defendants did not inform

---

controlling law, (ii) new evidence not previously available, or (iii) need to correct clear error of law or prevent manifest injustice. *See Garziano*, 569 Fed. App'x at 298; *Hood*, 664 F. Supp. 2d at 675. But they permitted the motion for reconsideration based upon issues not raised here – legal error and new evidence in *Garziano*, 569 Fed. App'x at 299, and legal error resulting in manifest injustice in *Hood*, 664 F. Supp. 2d at 675-76. Here Relator does not contend legal error (*e.g.*, that the FCA fee-shifting provision does not apply as a matter of law or the Court misconstrued governing precedent under this statute), but only wants to repeat factual contentions raised on four prior occasions to sway the Court that it should not apply controlling law. Courts uniformly rule that this is an improper use of Rule 59(e). *See, e.g.,* note 1 above (citing cases).

Relator that the government's own public interpretation of the governing regulation regarding licensure rendered Relator's action frivolous until discovery and after the Court had ruled on Defendants' motion to dismiss. *See* ECF 334 at 9-10; ECF 353 at 6; ECF 358 at 2-3, 5-6; ECF 363 at 3-6. Rather than overlook Relator's contention, the Court simply rejected it, instead finding that the fact that Relator "ignored" CMS's "unambiguous[]" "public" rules, along with other factors, were sufficient to establish the frivolity of Relator's action notwithstanding Relator's consistently stated position that defense counsel should have notified Relator of the government's public and unambiguous rules that directly undermined his lawsuit earlier in the lawsuit in order for his action to be found to be frivolous. *See* ECF 350 at 6.[3]

---

[3] Relator's contention that the court should not permit the full amount of fees owed because defense counsel did not inform Relator of the public law that renders his action frivolous until discovery is baseless, as noted previously, for several reasons. First, the FCA itself authorizes the payment of fees when Relator files a clearly frivolous action and does not require any notice be provided to Relator in advance for the provision to apply (although Defendants did notify Relator of the governing law during discovery and, rather than dismissing the action, Relator, instead, accelerated his campaign of vexatious and harassing conduct as outlined in the Court's prior decision finding that Defendants are entitled to obtain fees). *See* ECF 350 at 4-5. Second, Relator has a duty in the first instance to know the public law relevant to claims; indeed, it is well established that "ignorance of the law or procedure is no excuse for filing a frivolous action." *Granger*, 1994 WL 904639, at *1 (internal citation omitted) (applying this principle even to *pro se* litigants). Third, as defense counsel has stated on other occasions when Relator has raised precisely the same argument, defense counsel only informed Relator that unambiguous, authoritative guidance from the federal government directly undermined his lawsuit during discovery, rather than the onset of the litigation, because prior to the SAC, defense counsel's focus had been in demonstrating to Relator that his initial factual premise that Nurse Trofort did not have a valid license was erroneous based upon defense counsel's erroneous assumption that Relator would immediately dismiss the action once he learned that the premise of the lawsuit was false. *See* ECF 365 at 4, n. 6. Instead, without researching public governing law, Relator, when he filed the SAC, believed that he could simply plead around inconvenient facts by declaring himself that Nurse Trofort's license was "invalid" without recognizing under public law that only State Nursing Board's (i.e., the body actually issuing a license) had such authority. Thus, it was only after Relator's SAC, defense counsel had occasion to review the issue and notify Relator that the foundation for his SAC had no basis in law. And, again, Relator's ignorance of the law in asserting otherwise in his SAC is not an excuse in determining frivolity. *See Granger*, 1994 WL 904639, at *1.

10

Second, as to Relator's attempt to shift blame to his counsel for the filing of the frivolous lawsuit and contention that an injustice would occur if he were held responsible for the frivolous lawsuit rather than counsel, Relator's contention lacks merit for several reasons. *See* ECF 381 at 4-5. As an initial matter, Congress, itself, in the FCA's fee-shifting provision, determined that the party who should bear the cost of a frivolous action is the relator and not the defendant. Specifically, the statute provides that a successful defendant can recover its reasonable attorneys' fees, expenses, and costs "if the defendant prevails in the action and the court finds that the claim of the person bringing the action was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment." 31 U.S.C. § 3730(d)(4). Congress urged courts to apply this provision to protect innocent companies from abusive FCA claims. *See* S. Rep. No. 99-345, at 29 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5294 ("The Committee added this language in order to create a strong disincentive and send a clear message to those who might consider using the private enforcement provision of this Act for illegitimate purposes. The Committee encourages courts to strictly apply this provision in frivolous suits or suits brought for purposes of harassment, as well an any applicable sanction available under the Federal Rules of Civil Procedure."); *see also generally U.S. ex rel. Grynberg v. Praxair, Inc.*, 389 F.3d 1038, 1058 n.22 (10th Cir. 2004) (finding purpose of fee-shifting provision is to penalize a plaintiff that "has misused his statutory privilege and distorted the intent of the legislation").

Additionally, as to who should bear the cost of Relator's frivolous action, it would be a manifest injustice if Defendants had to bear that cost rather than Relator. For starters, the Relator, an attorney with direct experience in this matter, does not have clean hands. As the record reflects, when he deposed Nurse Trofort, in a separate lawsuit prior to filing this action, she testified six separate times under oath that she held a valid multistate license during her entire tenure at

11

Southaven. *See* ECF 338 at 3 n.2 (quoting testimony). Notwithstanding the sworn testimony, Relator, as he testified in this lawsuit, refused to check with the Virginia Nursing Board prior to filing this lawsuit to determine whether the fundamental fact underlying the lawsuit (whether Nurse Trofort possessed a valid multistate license) was true as she testified to Relator himself or false even though Nurse Trofort urged him during the deposition to simply check the public record to confirm her testimony. *See* ECF 331 at 5 (quoting Relator's testimony during his deposition: "Q. Now, before filing your action, did you ever check with the Virginia nursing board to find out whether her [Nurse Trofort's] license had been reinstated prior to the time in which she was actually hired at Southaven? A. Did I check with the Virginia nursing board? No"); *see also* ECF 338 at 3, n. 2 (Nurse Trofort testifying to Relator directly two years before he filed this action: "Q. [Relator asking] …. I'm trying to figure out if you were practicing nursing in Mississippi without a license. So I'm asking you if in February 27, 2013, prior to going to Mississippi, if your Virginia, which you were using as a multistate license, was changed from multistate to single state? A. [Nurse Trofort responding] I had a multistate license during the time in March that I started working with Golden Living [Southaven]. **And I had a valid license throughout the entire time I was at Golden Living [Southaven]. And those are public records that you can look at.** Q. … That's why I was asking the questions. A. **Well you should see that in March I had a Virginia multistate license all the way until I left [Southaven]**") (emphasis added).[4]  If Relator, or counsel, had searched the Board of Nursing database or simply called the Board prior to filing (a simple five-minute exercise, *see* ECF 338 at 2-3 & n.3), they would have learned that Nurse

---

[4] Consistent with Nurse Trofort's testimony directly to Relator before he filed this action, easily accessible public records show Virginia reinstated Nurse Trofort's multistate license on March 21, 2013; she began work at Southaven on April 23, 2013. *See* ECF 247 at 5 n.5.

12

Trofort's sworn testimony was, indeed, correct: she possessed a valid license during the whole period of her employment and the factual predicate to Relator's lawsuit was demonstrably false.

Of course, without the benefit of discovery, it is not possible for Defendants to assess who ultimately made the decision to engage in the other frivolous, vexatious and harassing conduct in this lawsuit, such as (i) upon learning of the fatal flaw to the lawsuit—that is, falsely contending that Nurse Trofort had no license when during her employment she always had an active license—Relator simply decided to try to plead around that inconvenient fact by deriving a theory of a professional's license being invalid that is directly contrary to the relevant "public" and "unambiguous[]" federal agency's interpretation of when that professional's license becomes invalid, *see* ECF 331 at 6; ECF 350 at 6; (ii) that once Defendants informed Relator's counsel that CMS's plain language interpretation of its own regulation foreclosed Relator's theory that Nurse Trofort's nursing license was invalid simply because Relator would like it to be invalid, Relator decided to engage in discovery abuse to create an issue of fact by enlisting a representative of the State to submit a declaration when CMS would not respond to Relator's discovery request, *see* ECF 338 at 11; (iii) that, once the Court in a Show Cause Order characterized Relator action as "unfair[]," "absurd[]," "unjustifiable," "disproportionate," and "unjust," ECF 303 at 3-4, 7, 10-11, Relator, in desperation, engaged in the same discovery abuse the Court previously identified by filing into the docket irrelevant, inflammatory and uncross-examined information—including deposition testimony, photographs, graphic depiction of bedsores alleged to have been sustained in a settled lawsuit—months after the close of discovery, claiming to link alleged substandard care provided to Cassie Taylor, Relator's former client, to Nurse Trofort in an attempt to salvage the lawsuit, *see* ECF 338 at 11-12; (iv) that Relator would also, in response to the Show Cause Order, assert that "Defendants['] False Certifications Were Material" by relying only upon alleged care

13

provided to a non-Medicare, non-Medicaid patient, a contention that a Circuit Court of Appeals had branded facially frivolous in a public ruling on the FCA fee-shifting provision, *see* ECF 338 at 14-15; *see also* ECF 331 at 7 n.3; and (v) that, finally, to attempt to personally financially enrich himself, Relator caused a client to breach a confidentiality provision to attempt to prolong the inevitable dismissal of this lawsuit, *see* ECF 331 at 9-10; ECF 338 at 15-16.  But it is clear from the statute that Congress intended for the party bringing the action to bear the significant costs for engaging in this frivolous, vexatious, and harassing conduct and certainly not the innocent defendant.

## CONCLUSION

In rehashing and repeating an argument for the fifth time in the context of a Rule 59(e) motion, Relator is continuing in a pattern of engaging in vexatious, harassing, and frivolous conduct.  His motion should be denied.

Date:  April 23, 2024　　　　　　　　　　　　　Respectfully submitted,


　　　　　　　　　　　　　　　　　　　　　　　*/s/ Margaret Sams Gratz*
　　　　　　　　　　　　　　　　　　　　　　　Margaret Sams Gratz, Esq. (MSB # 99231)
　　　　　　　　　　　　　　　　　　　　　　　Gratz & Gratz, P.A.
　　　　　　　　　　　　　　　　　　　　　　　312 North Green St.
　　　　　　　　　　　　　　　　　　　　　　　Tupelo, MS 38804
　　　　　　　　　　　　　　　　　　　　　　　Tel (662) 844-5531
　　　　　　　　　　　　　　　　　　　　　　　Fax (662) 844-8747
　　　　　　　　　　　　　　　　　　　　　　　margaret@gratzandgratz.com

　　　　　　　　　　　　　　　　　　　　　　　Robert Salcido (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　　　　　D.C. Bar No. 447951
　　　　　　　　　　　　　　　　　　　　　　　California Bar No. 139138
　　　　　　　　　　　　　　　　　　　　　　　Akin Gump Strauss Hauer & Feld LLP
　　　　　　　　　　　　　　　　　　　　　　　2001 K. Street, N.W.
　　　　　　　　　　　　　　　　　　　　　　　Washington, D.C. 20006
　　　　　　　　　　　　　　　　　　　　　　　Telephone: 202-887-4000
　　　　　　　　　　　　　　　　　　　　　　　Facsimile: 202-887-4288
　　　　　　　　　　　　　　　　　　　　　　　rsalcido@akingump.com

*Attorneys for Defendants*
**GGNSC Southaven LLC; GGNSC Administrative Services LLC; GGNSC Clinical Services**

**CERTIFICATE OF SERVICE**

This is to certify that I, Robert Salcido, one of the attorneys for GGNSC Southaven, LLC individually and on behalf of all Defendants have this day furnished a true and correct copy of the above and foregoing **MEMORANDUM OF LAW IN SUPPORT OF RESPONSE IN OPPOSITION TO RELATOR'S MOTION TO ALTER OR AMEND THE AMOUNT OF JUDGMENT REGARDING ORDER FINDING THAT THIS CASE IS FRIVOLOUS AND GRANTING ATTORNEYS' FEES TO DEFENDANTS** to the following via ECF filing:

Robert B. McDuff (MSB # 2532)
Law Office of Robert B. McDuff
767 North Congress Street
Jackson, MS 39202
Telephone: 601.259.8484
rbm@mcdufflaw.com

Richard R. Barrett (MSB #99108)
Law Office of Richard R. Barrett, PLLC
2086 Old Taylor Road
Suite 1011
Oxford, MS 38655
Telephone 662.380.5018
rrb@rrblawfirm.net

Philip N. Elbert, Esq.
Lisa P. Binder, Esq.
Nathan C. Sanders, Esq.
Neal & Harwell, PLC
1201 Demonbreun St., Suite 1000
Nashville, TN 37203
pelbert@nealharwell.com
lbinder@nealharwell.com
nsanders@nealharwell.com

This 23rd day of April 2024.

*/s/ Robert Salcido*