# Exhibit 10

**E-mail correspondence from August 16, 2024, August 19, 2024, August 27, 2024, September 8, 2024, and September 9, 2024.**

**Robert McDuff**

---

| | |
|---|---|
| **From:** | Salcido, Robert <rsalcido@AKINGUMP.COM> |
| **Sent:** | Monday, September 9, 2024 9:27 AM |
| **To:** | Robert McDuff; Gerry, Emily |
| **Subject:** | RE: Jehl settlement discussions |

Rob – Thanks for your email. In evaluating these issues, it is very important to set forth the context for where we currently stand. This dispute stems from a lawsuit that has been in active litigation for roughly five years. As you know, every court that has reviewed this matter has ruled that your client brought a clearly frivolous claim against our clients evinced by the "complete failure of proof on each of the essential elements" of his claim against our clients and that your client has carried on a campaign of vexatious and harassing litigation. *See, e.g., U.S. ex rel. Jehl v. GGNSC Southaven, LLC*, No. 3:19-CV-091-NBB-JMV, 2022 WL 983644, at *7 (N.D. Miss. Mar. 30, 2022) ("The defendants here have demonstrated a complete failure of proof on each of the essential elements of the relator's claims."; *U.S. ex rel. Jehl v. GGNSC Southaven, L.L.C.*, No. 22-60209, 2022 WL 17443684, at *5 (5th Cir. Dec. 6, 2022) ("[W]e agree with the district court that GGNSC has demonstrated a complete failure of proof on each of the essential elements of the relator's claims." (internal quotation marks and citation omitted)); *U.S. ex rel. Jehl v. GGNSC Southaven, LLC*, No. 3:19-CV-091-NBB-JMV, 2023 WL 2668514, at *4 (N.D. Miss. Mar. 28, 2023) (holding that "relator's lawsuit was patently and demonstrably frivolous" and noting that "the court is also persuaded by the defendants' arguments in regard to" vexatiousness and harassment); *U.S. ex rel. Jehl v. GGNSC Southaven, LLC*, No. 3:19-CV-091-GHD-JMV, 2024 WL 409382, at *3 (N.D. Miss. Feb. 2, 2024) ("As previously determined by the Court, CMS's authoritative interpretation of the governing regulations and easily obtainable public facts lead to the conclusion that the relator's action was groundless, frivolous, and had no chance of success."). While you seem to contend that your client paying $1 million is reasonable for filing this clearly frivolous action, it ignores the fact that our client has had to incur more than double that amount defending against, what multiple courts have already found, is the clearly frivolous action your client filed (and with no guarantee that additional frivolous actions will not be filed).

There are a couple reasons why it is important to know whether your client, or his agents, is undertaking additional lawsuits against Defendants. First, as noted in an e-mail sent to you at the time settlement discussions first failed, it is common in FCA lawsuits that upon settlement, the parties assure themselves that a settlement will indeed end all litigation between the parties or, if there are additional lawsuits, the parties have notice and can take that into account as they resolve the litigation. Second, that concern is heightened when, as here, your client has engaged in a multi-year campaign of clearly frivolous, vexatious, and harassing litigation against our client, as found by multiple courts.

As to your "upon reflection" contention regarding Mississippi Rule of Professional Conduct 5.6(b)—despite the fact that we have addressed this in identical fashion verbally, unequivocally, on *at least* two occasions upon your raising the same point in settlement discussions—let us be clear so that additional frivolous litigation is not initiated. DEFENDANTS ARE NOT SEEKING TO RESTRICT ANY LAWYER'S RIGHT TO PRACTICE AS PART OF A SETTLEMENT. Any lawyer can litigate against any party that the lawyer wishes to pursue. Nothing in any discussion or in any draft settlement agreement seeks to restrict a lawyer's right to practice, as you know. All that is requested here is notice. The reason that notice is

important, as you have been informed continuously, is because Defendants want to know whether by settling—at least as of the date of settlement—no other actions against them by your client, or his agents, exist (in which case settlement is a viable option), or whether your client or agents have additional litigation pending against Defendants.  If so, and if settlement does not end disputes among the parties, Defendants would prefer to proceed with this litigation and recover the full amount (more than $2 million) that they believe they are entitled to recover here based on the existing frivolous action to help them to defend against the other actions that your client, and/or his agents, have filed.   Having such notice is clearly reasonable, and the fact that you have refused to provide a response is alarming.  Thanks, R.S.

---

**From:** Robert McDuff <rbm@mcdufflaw.com>
**Sent:** Sunday, September 8, 2024 1:35 PM
**To:** Salcido, Robert <rsalcido@AKINGUMP.COM>; Gerry, Emily <egerry@akingump.com>
**Subject:** Jehl settlement discussions


Dear Robert and Emily,

Neither of you has responded to my email of August 27, set out below, or to the question I posed in it:  "[I]f it turns out that Cameron or Neal & Harwell . . . ha[s] a case against one of 300 plus affiliates, are you saying that your clients . . . will only go through with the settlement if the lawyers withdraw from representing that client?"  However, Emily stated in a subsequent telephone conversation that one of your clients' corporate counsel confirmed that any representation by these lawyers of a plaintiff suing one of the affiliates would be a "material" consideration that might lead them to refuse to finalize the settlement.

Upon reflection, we believe that the condition added to the settlement agreement by you and your clients' corporate counsel violates Mississippi Rule of Professional Conduct 5.6(b).  The rule states:  "A lawyer *shall not participate in offering or making*:  . . . (b) an agreement in which a restriction on the lawyer's right to practice is part of the settlement of a controversy between private parties."  (Emphasis added).  The comment to the rule states:  "Paragraph (b) prohibits a lawyer from agreeing not to represent other persons in connection with settling a claim on behalf of a client."   We intend to raise our concern in motions before both the District Court and the Court of Appeals --- which we hope to file tomorrow or Tuesday --- seeking to disburse the funds in the Court's Registry in accordance with the terms of the settlement agreement we reached by email at 7:33 AM and again at 2:11 PM on August 12.  We intend to file the motion with the District Court and soon thereafter to file a motion with the Court of Appeals seeking to stay proceedings on appeal or alternatively remand the case to the District Court if necessary to insure it has jurisdiction to resolve the motion to disburse.

While our motion will address the ethical issue, we will argue that even if the actions of your clients and their counsel do not violate Rule 5.6(b), the settlement agreement should still be enforced for the reasons explained in my August 27 email.  Of course, if you have any contrary reasoning or authority --- either on whether the emails constitute an agreement or whether Rule 5.6(b) has been violated --- please send it so we can consider it prior to submitting any motions.  We have been discussing this situation for over three weeks now and you have had time to consider these questions.

Either Jehl Law Group PLLC and/or Neal & Harwell have a case against one of the hundreds of affiliates or they don't.  You and your clients have insisted they demonstrate that they don't before the clients will finalize the settlement.   This insistence indicates that if the lawyers do have such cases, the only way your clients will finalize the settlement is for the lawyers to withdraw from any such cases.  This would, in effect, require the lawyers to "agree[] not to represent" their current clients in order to "settl[e] [the] claim" that your clients have against Cameron.   This violates Rule 5.6(b).  *See also* Tennessee Formal Ethics Opinion 2016-F-161 ("if a

[settlement] provision does affect a lawyer's ability to represent another client and that effect is negative, the provisions would be impermissible under Rule 5.6(b)"; ABA Formal Ethics Opinion 93-371 ("a lawyer cannot agree to refrain from representing present or future clients against a defendant pursuant to a settlement agreement on behalf of current clients . . . .")

Perhaps your clients could have decided in advance not to negotiate a potential settlement with Cameron because his firm (or Neal & Harwell) might be representing someone else who has sued one of their hundreds of affiliates. But once your clients negotiated and we reached an agreement on August 12, their subsequent insistence that Cameron and Neal & Harwell have no clients with pending cases against the affiliates seems to violate the rule.

Emily has assured me in recent phone conversations that your clients have made a commitment to finalize the settlement if Cameron's firm does not represent anyone suing them or their hundreds of affiliates but that if he does, this is a "material" consideration that might prevent them from finalizing it. For reasons already mentioned, this is troubling. However, in an effort to expedite matters, I have informed you as a courtesy that neither Jehl Law Group PLLC nor Neal & Harwell have any pending cases against your three clients and do not think they have any against their hundreds of affiliates. I have advised Emily that if you give us a list of the 300 plus affiliates, Cameron will, as a further courtesy, review it to determine if he has suits pending against any of them (I also note that in our phone conversations since my August 27 email, Emily says your client is now concerned about approximately 500 affiliates, not just the 300 plus mentioned previously). But your clients have refused to do that and instead insisted that Jehl Law Group PLLC's list of defendants (and maybe Neal & Harwell's) be given either to your firm so you can conduct the review. It is unclear why your clients want your firm to have the list of everyone Jehl Law Group PLLC (and Neal & Harwell) are suing at the moment but we are not going to provide that.

In summary, we have tried to expedite matters but your clients through their corporate counsel seem to be insisting that they will not go through with the settlement unless Cameron and Neal & Harwell prove that they will not be pursuing any current litigation against any of your clients' 500 affiliates. However, if I am misunderstanding your clients' position, or if they and you will reconsider this insistence, perhaps we can move forward and finalize this settlement on the basis previously discussed. After all, under that settlement, your clients would receive $1 million of the $1,192,807.15 Cameron presently owes them in exchange for him foregoing an appeal that could lead to a reversal or all of a significant part of that fee award. If you and your clients are willing for finalize this settlement without us filing motions before the District Court and the Court of Appeals, please let me know as soon as possible.

Please also provide a copy of this email to the corporate counsel who are responsible for this matter.

Best wishes,

**Rob**

Robert B. McDuff
Attorney
767 North Congress Street
Jackson, MS 39202
(601) 969-0802 (o)
(601) 259-8484 (m)
rbm@mcdufflaw.com

**From:** Robert McDuff <rbm@mcdufflaw.com>
**Sent:** Tuesday, August 27, 2024 7:43 AM
**To:** 'Gerry, Emily' <egerry@akingump.com>
**Cc:** 'Salcido, Robert' <rsalcido@AKINGUMP.COM>
**Subject:** RE: Jehl settlement discussions

Dear Robert and Emily:

In response to your client's request, we are not going to provide a list of all the defendants in all of Cameron's pending cases and will not ask Neal & Harwell to do so. As a courtesy, we have already informed you that Cameron has no pending cases against the Defendants and neither does Neal & Harwell (and neither do I). As an additional courtesy, I will tell you that neither Cameron nor Neal & Harwell think they have any pending cases against any of the Defendant's affiliates but we can't be sure since you now say there are over 300. (And I don't have any).

In our view, we have an enforceable settlement agreement as of my email at 7:33 AM on August 12 when I informed you that we had accepted you counteroffer of $1 million. Later that day, I asked if that $1 million includes the costs already paid. You said it did not and I responded at 2:11 PM stating that this was OK and I attached a draft stipulation for the total settlement amount of $1million.

Later that day, after the emails demonstrate a meeting of the minds on these terms, you all started adding terms, most particularly a paragraph 5 in a draft settlement agreement stating that "Relator and Counsel for Relator represent that they have filed no other lawsuits or initiated any other proceedings against Defendants that are currently pending other than the Civil Action." Although we believed this new condition was irrelevant and inappropriate, I later informed you as a courtesy that Cameron and Neal & Harwell have no such pending cases. In the meantime, in a separate subsequent email, you added as still another condition that they have no pending actions against the "affiliates" of the defendants I subsequently asked you to provide a list of the affiliates. You responded with your email below saying there were over 300 affiliates and your clients wanted a list of the defendants in all pending cases of Cameron and his counsel.

In a settlement of an attorneys' fee award to your client, the after-the-fact conditions relating to the current dockets of Cameron and his lawyers are not relevant. Even if they had been relevant, your clients could have determined from their own dockets whether any such cases were pending prior to engaging in negotiations by making their counteroffer. They obviously did not. Instead, they counteroffered, we accepted, then they later added the condition that Cameron and his attorneys not represent any clients presently suing the Defendants, and subsequently they added the condition that Cameron and the attorneys not represent any clients suing the Defendants and over 300 of their affiliates.

You have said your clients want "peace" going forward. As mentioned earlier, neither Cameron nor Neal & Harwell have any claims against the Defendants and they don't think they have any against the affiliates. . Accordingly, your clients have more "peace" (if you define "peace" by the likelihood these lawyers don't have any cases against the Defendants and their affiliates) now than they did when they made the $1 million counteroffer that we accepted. But if it turns out that Cameron or Neal & Harwell are wrong and one of them does have a case against one of 300 plus affiliates, are you saying that your clients will only achieve "peace" and will only go through with the settlement if the lawyers withdraw from representing that client?

We are prepared to file a motion asking the Court to distribute the money in the Court's registry in accordance with the settlement agreement we reached by email on August 12 before your client added conditions. I believe

4

the case law supports us.  *See, Morris v. Liberty Mut. Ins. Co.,* 659 F. Supp. 201, 204 (N.D. Miss. 1987) ("It is well established in Mississippi that to make a contract by correspondence, one party must make a proposition and the other accept the same as made; in other words, the minds of the parties must meet upon a definite proposition, and the acceptance of the proposal must be made."); *Williams v. Winona Manor Healthcare, LLC,* 2014 WL 5090620 (N.D. Miss. Oct. 19, 2014) ("Though the plaintiff now regrets her decision to compromise her claim, there was indeed a meeting of the minds and an enforceable contract for settlement.")  In *Morris,* the Court held there was "a meeting of the minds" after correspondence similar to ours (although the Court voided the agreement because one of the parties was unaware of a Workers' Compensation Commission decision in the case at the time he made).  We think the Court will conclude that there was an agreement reached here as well.

Of course, we would prefer not to file a motion and not to spend any further time on this if you are willing to go forward and agree to that distribution without the additional conditions.  Please let me know at your earliest convenience whether we can do so.

Best wishes,

Rob McDuff

---

**From:** Gerry, Emily <egerry@akingump.com>
**Sent:** Monday, August 19, 2024 3:33 PM
**To:** Robert McDuff <rbm@mcdufflaw.com>
**Cc:** Salcido, Robert <rsalcido@AKINGUMP.COM>
**Subject:** RE: Jehl settlement --- costs

Greetings, Rob.  As an FYI, we will be filing a cross-appeal to preserve our rights in the event we cannot reach agreement to settle.  To move towards settlement, our clients still need confirmation that there are also no pending lawsuits against their affiliates.  Given that there are over 300 entities our clients own or control, they have asked that Mr. Jehl and Mr. Jehl's counsel provide a list of entities against whom they have any pending claims.  As we noted previously, it is crucial for our clients to know that they are truly achieving peace with this settlement.  Once we learn what you folks can reasonably offer in this vein, we can communicate that to our clients to see whether we can come to a final resolution.  Thanks much.

**Emily I Gerry**
**Akin**
Direct: +1 202.887.4169 | Internal: 24169
Pronouns: she/her/hers (What's this?)

**From:** Robert McDuff <rbm@mcdufflaw.com>
**Sent:** Friday, August 16, 2024 1:20 PM
**To:** Gerry, Emily <egerry@akingump.com>
**Cc:** Salcido, Robert <rsalcido@AKINGUMP.COM>
**Subject:** RE: Jehl settlement --- costs

Hi Emily,

Cameron confirms that his firm does not have any pending lawsuits against Defendants and Neal & Harwell confirms the same.  We agree to the release language in paragraphs 2 and 3.  Consistent with the emails below, may I go ahead and file the latest version of the stipulation with your edits?   Thanks.

Rob

**From:** Gerry, Emily <egerry@akingump.com>
**Sent:** Monday, August 12, 2024 6:51 PM
**To:** Robert McDuff <rbm@mcdufflaw.com>
**Cc:** Salcido, Robert <rsalcido@AKINGUMP.COM>
**Subject:** RE: Jehl settlement --- costs

Are you able to ask whether they have any pending lawsuits against Defendants or their affiliates? It is material to us insofar as our client's intent in entering into this agreement is to achieve peace going forward.

Re "agree to the release language," that is correct: paragraphs 2 ("Relator's Release") and 3 ("Defendants' Release").

**Emily I Gerry**
**Akin**
Direct: +1 202.887.4169 | Internal: 24169
Pronouns: she/her/hers (What's this?)

**From:** Robert McDuff <rbm@mcdufflaw.com>
**Sent:** Monday, August 12, 2024 7:49 PM
**To:** Gerry, Emily <egerry@akingump.com>
**Cc:** Salcido, Robert <rsalcido@AKINGUMP.COM>
**Subject:** RE: Jehl settlement --- costs

Emily,

When you say "agree to the release language," do you mean the language of the two mutual release paragraphs?

**From:** Gerry, Emily <egerry@akingump.com>
**Sent:** Monday, August 12, 2024 5:55 PM
**To:** Robert McDuff <rbm@mcdufflaw.com>
**Cc:** Salcido, Robert <rsalcido@AKINGUMP.COM>
**Subject:** RE: Jehl settlement --- costs

Hi, Rob—so long as counsel for Relator can confirm they have filed no other lawsuits or initiated any other proceedings against Defendants that are currently pending other than the Civil Action per proposed paragraph 5, we are fine with stripping out counsel and related language consistent with the attached redline. If you can confirm that you folks agree to the release language, we are fine with your filing the stipulation.

**Emily I Gerry**
**Akin**
Direct: +1 202.887.4169 | Internal: 24169
Pronouns: she/her/hers (What's this?)

**From:** Robert McDuff <rbm@mcdufflaw.com>
**Sent:** Monday, August 12, 2024 6:39 PM
**To:** Gerry, Emily <egerry@akingump.com>
**Cc:** Salcido, Robert <rsalcido@AKINGUMP.COM>
**Subject:** RE: Jehl settlement --- costs

6

PS:  Cameron says it will be later this evening before he can review.  Can we go ahead and file the stipulation now?  I'm fine if you want to add the releases to the stipulation (preferably in shorter form).

Also, the settlement agreement is between the parties and not their attorneys so I think the language about it the attorneys being parties to the agreement should be removed.  I'm happy to sign it as Cameron's lawyer.  But Barrett and Phil and Nathan were not part of the discussion on this settlement and their signatures are not needed.  You can go ahead and make that change and I'll get back to you further after Cameron reviews.   Thanks.

**From:** Robert McDuff <rbm@mcdufflaw.com>
**Sent:** Monday, August 12, 2024 5:32 PM
**To:** 'Gerry, Emily' <egerry@akingump.com>
**Cc:** 'Salcido, Robert' <rsalcido@AKINGUMP.COM>
**Subject:** RE: Jehl settlement --- costs

Thanks Emily.  The changes to the two documents are fine.  I'm trying to track down Cameron to review the settlement agreement.  It seems unnecessary and quite wordy to me and in the unlikely event Judge Davidson didn't sign the order, I think it's a bit much to require Cameron to come up with $1 million in 48 hours.  But let me see what he says.  I'll get back to you.

**From:** Gerry, Emily <egerry@akingump.com>
**Sent:** Monday, August 12, 2024 5:07 PM
**To:** Robert McDuff <rbm@mcdufflaw.com>
**Cc:** Salcido, Robert <rsalcido@AKINGUMP.COM>
**Subject:** RE: Jehl settlement --- costs

Hi, Rob—attached, please find minor proposed edits to the stipulation and proposed order.  Also attached is a proposed draft settlement agreement, which sets forth mutual releases to protect both parties.  We are pleased to consider any revisions that you have to it.  Thanks very much, and let us know if you have any questions or would like to discuss further.

**Emily I Gerry**
**Akin**
Direct: +1 202.887.4169 | Internal: 24169
Pronouns: she/her/hers (What's this?)

**From:** Salcido, Robert <rsalcido@AKINGUMP.COM>
**Sent:** Monday, August 12, 2024 4:40 PM
**To:** Robert McDuff <rbm@mcdufflaw.com>
**Cc:** Gerry, Emily <egerry@akingump.com>
**Subject:** RE: Jehl settlement --- costs

Thanks.  We are working on this and coordinating with the client.  We (cc'ing my colleague Emily Gerry, who is helping on this) will be back shortly.  Thanks, R.S.

**From:** Robert McDuff <rbm@mcdufflaw.com>
**Sent:** Monday, August 12, 2024 12:11 PM