IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. CAMERON JEHL,<br><br>**Plaintiffs,**<br><br>v.<br><br>**GGNSC SOUTHAVEN LLC D/B/A GOLDEN LIVING CENTER-SOUTHAVEN et al.**<br><br>**Defendants.** | Case No. 3:19cv091-GHD-JMV |

**DECLARATION OF ROBERT SALCIDO IN SUPPORT OF DEFENDANTS' RESPONSE IN OPPOSITION TO RELATOR'S MOTION TO ENFORCE SETTLEMENT AGREEMENT AND DISTRIBUTE THE APPEAL BOND FUNDS IN THE COURT'S REGISTRY IN ACCORDANCE WITH THE SETTLEMENT**

I, Robert Salcido, having personal knowledge of the facts contained in this Declaration and being competent to testify to them, hereby state as follows:

1. I am a partner at Akin Gump Strauss Hauer & Feld, LLP (hereinafter "Akin") and have represented GGNSC Southaven LLC; GGNSC Administrative Services LLC; and GGNSC Clinical Services LLC in this litigation since November 2019.

2. I have worked in the Health Care and Life Sciences Practice Group at Akin for approximately 30 years. Essentially all of my work concerns responding to government investigations and defending litigation involving the False Claims Act, 31 U.S.C. §§ 3729 – 3733 (hereinafter "FCA"). I have been a partner at Akin since 1999.

3. Prior to joining Akin, from 1988 to 1993, I was a trial attorney with the United States Department of Justice ("DOJ") in the Civil Fraud Unit, which has nationwide jurisdiction over the FCA. In my five years at DOJ, I worked exclusively on

prosecuting and resolving FCA actions, including actions brought under the FCA's *qui tam* provisions. In my five years at DOJ working in the Civil Fraud Unit, every FCA settlement in which I participated, or I saw a colleague complete, was in writing and contained mutual releases. My understanding was that this practice was required and universal.

4. I have authored books and chapters in books regarding the FCA and health care fraud and abuse issues, including the Fifth Edition to FALSE CLAIMS ACT & THE HEALTH CARE INDUSTRY: COUNSELING & LITIGATION (American Health Law Association 2024), a treatise more than 1,000 pages long. I have also authored a number of articles related to the FCA and health care fraud and abuse law, including many that have been cited to and relied upon by federal appellate and district courts. Moreover, I have lectured extensively, at over 70 conferences, on defenses to FCA actions, health care coding compliance and FCA whistleblower litigation.

5. I have successfully litigated dozens of FCA actions at the pleading, summary judgment and trial stages, as well as on appeal. I have also negotiated settlements in more than fifty FCA actions and have drafted, or supervised the drafting, of settlement agreements in those actions. I am very familiar with the process FCA practitioners use to negotiate FCA settlement agreements with relators and the common language and releases used in those agreements.

6. In my 36-year career of working exclusively on FCA actions, there is not a single instance in which I participated in which there was an FCA settlement resolving disputed claims that was not subjected to a written agreement that included written releases. Part of the reason for this is that, because FCA actions are filed under seal, no

2

defendant wants to be placed in the position of settling one lawsuit against a relator and not knowing whether the same relator has another action pending against the same defendant that is under seal. Thus, common in this practice area, as was noted to Relator's counsel during the settlement process, *see* ECF 398-8; ECF 398-10, is to obtain assurances that no other such action is pending and to obtain mutual releases.

7. In my experience, when FCA practitioners agree "to settle" for a certain payment amount, such practitioners are referring to a formalized, executed settlement agreement containing negotiated releases, which are typically broad and release the parties from FCA liability as well as other types of liability, along with imposing other contractual terms.

8. The proposed settlement agreement filed as ECF 398-7 is typical of FCA settlement agreements resolving claims to attorneys' fees, costs, and expenses that I have successfully negotiated, as well as being typical of settlement agreements that I have seen other FCA practitioners commonly successfully negotiate.

9. Requiring attorneys who are signatories to FCA settlement agreements resolving claims to attorneys' fees, costs, and expenses to represent that they have filed no other lawsuits or initiated any other proceedings against defendants that are currently pending, *see* ECF 398-7 at 4, is a common term in FCA settlements.

10. In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

_____
Robert Salcido

Executed on this 26th day of September, 2024

3