**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI**

**UNITED STATES OF AMERICA ex rel.
CAMERON JEHL,**

**Plaintiffs,**

**v.**

**GGNSC SOUTHAVEN LLC D/B/A
GOLDEN LIVING CENTER-
SOUTHAVEN et al.**

**Defendants.**

Case No. 3:19cv091-GHD-JMV

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' RESPONSE IN
OPPOSITION TO RELATOR'S MOTION TO ENFORCE SETTLEMENT
AGREEMENT AND DISTRIBUTE THE APPEAL BOND FUNDS IN THE COURT'S
REGISTRY IN ACCORDANCE WITH THE SETTLEMENT**

# TABLE OF CONTENTS

I.    THE DISTRICT COURT DOES NOT HAVE JURISDICTION TO RESOLVE RELATOR'S MOTION. .................................................................................2

    A.    Jurisdiction Over This Action Was Transferred Upon Notice of Appeal. ................2

    B.    The District Court No Longer Retains Jurisdiction Over the Purported "Settlement Agreement" in Any Event. ...............................................................3

II.    THERE IS NO ENFORCEABLE SETTLEMENT AGREEMENT. ...................................7

III.    DEFENDANTS' PROPOSED SETTLEMENT TERM IS NOT A VIOLATION OF MISSISSIPPI ETHICAL RULES ...............................................................................14

IV.    CONCLUSION ...............................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allard v. Anderson*,
   260 F. App'x 711 (5th Cir. 2007) ............................................................2

*Brooks v. Brooks*,
   145 Miss. 845 (1927) ...........................................................................8, 11

*Dayton Indep. School Dist. v. United States Mineral Prods. Co.*,
   906 F.2d 1059 (5th Cir. 1990) ..............................................................2, 3

*East v. East*,
   493 So. 2d 927 (Miss. 1986) ...................................................................7

*Goudelock v. McLemore*,
   985 F. Supp. 2d 816 (N.D. Miss. 2013) ...................................................5

*Griggs v. Provident Consumer Disc. Co.*,
   459 U.S. 56 (1982) ..................................................................................2

*Gulf Coast Hospice LLC v. LHC Grp. Inc.*,
   273 So. 3d 721 (Miss. 2019) ........................................................9, 12, 13

*Hastings v. Guillot*,
   825 So. 2d 20 (Miss. 2002) ......................................................................8

*Hinds Cnty. Econ. Dev. Dist. v. W & G Props., LLC*,
   203 So. 3d 49 (Miss. Ct. App. 2016) ...................................................7, 11

*Howard v. TotalFina E & P USA, Inc.*,
   899 So. 2d 882 (Miss. 2005) ....................................................................9

*J. Russell Flowers, Inc. v. Itel Corp.*,
   495 F. Supp. 88 (N.D. Miss. 1980) .....................................................9, 12

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994) ..........................................................................4, 5, 6

*Logan v. RedMed, LLC*,
   377 So. 3d 956 (Miss. 2024) ........................................................... *passim*

*Lopez Dominguez v. Gulf Coast Marine & Assocs., Inc.*,
   607 F.3d 1066 (5th Cir. 2010) .................................................................2

*McManus v. Howard,*
   569 So. 2d 1213 (Miss. 1990) .................................................................................7

*Mooneyham v. Progressive Gulf Ins. Co.,*
   910 So. 2d 1223 (Miss. Ct. App. 2005) ...................................................................8

*Morris v. Liberty Mut. Ins. Co.,*
   659 F. Supp. 201 (N.D. Miss. 1987) ........................................................................8

*Peacock v. Thomas,*
   516 U.S. 349 (1996) .........................................................................................4, 6

*Thompson v. White,*
   328 So. 3d 210 (Miss. Ct. App. 2021) ......................................................... *passim*

*Thornhill, LLC v. NVR, In*c.,
   No. CIV.A. 3:05CV36, 2006 WL 3717917 (N.D.W. Va. Dec. 14, 2006) ................3

*Travelers Ins. Co. v. Liljeberg Enterprises, Inc.,*
   38 F.3d 1404 (5th Cir. 1994) .............................................................................2, 3

*Viverette v. State Highway Comm'n of Miss.,*
   656 So. 2d 102 (Miss. 1995) ...................................................................................8

*White Farm Equip. Co. v. Kupcho,*
   792 F.2d 526 (5th Cir. 1986) .............................................................................4, 5

*Winchester v. U.S. Att'y for S. Dist. of Texas,*
   68 F.3d 947 (5th Cir. 1995) .....................................................................................2

*Zimmerman v. City of Austin, Texas,*
   969 F.3d 564 (5th Cir. 2020) .............................................................................4, 6

**Statutes**

28 U.S.C. § 1332(a) .......................................................................................................6

False Claims Act, 31 U.S.C. §§ 3729-3733 .............................................. *passim*

**Other Authorities**

17 C.J.S. Contracts § 32.................................................................................................9

495 F. Supp. at 92 ...................................................................................................9, 12

Fed. R. App. P. 7............................................................................................................3

Fed. R. Civ. P. 58..........................................................................................................5

Fed. R. Civ. P. 62.1 ....................................................................................................................1

7 James W. Moore et al., Moore's Federal Practice, ¶ 60.30[2] (2d ed. 1995) ..............................2

20 Moore's Federal Practice, ¶ 303.32[b][ii] (Matthew Bender & Co., 2024)..............................3

Mississippi Rule of Professional Conduct 5.6(b) .................................................................14, 16

Restatement (Second) of Contracts § 26 (Am. L. Inst. 1981)........................................................9

Restatement (Second) of Contracts § 38 (Am. L. Inst. 1981)........................................................8

Restatement (Second) of Contracts § 39 (Am. L. Inst. 1981)........................................................7

**Non-TOA References**

Exhibit 1, Declaration of Robert Salcido ......................................................................11, 12, 15

ECF 326 .......................................................................................................................................5

ECF 350 .......................................................................................................................................1

ECF 378 .......................................................................................................................................5

ECF 393 .......................................................................................................................................7

ECF 397. ....................................................................................................................................11

ECF 398 .....................................................................................................................................13

ECF 398-2 ...........................................................................................................................11, 12

ECF 398-3 ...........................................................................................................................10, 12

ECF 398-4 .....................................................................................................................11, 12, 13

ECF 398-5 .................................................................................................................10, 11, 12

ECF 398-6 ...........................................................................................................................10, 12

ECF 398-7 ...........................................................................................................................12, 14

ECF 398-8 .....................................................................................................................11, 12, 13

ECF 398-9 ...........................................................................................................................12, 13

ECF 398-10 ...............................................................................................................12, 13, 15

ECF 399 ............................................................................................................................. *passim*

In his Motion to Enforce Settlement Agreement and Distribute the Appeal Bond Funds in the Court's Registry in Accordance with the Settlement, ECF 399 (hereinafter the "Motion to Enforce Settlement" or "Motion"), Relator tries to circumvent the parties' negotiation process and rewrite history. Rather than continue to engage in good-faith negotiations to reach a settlement with respect to the $1,058,373.97 in attorneys' fees the Court has awarded Defendants following Relator's patently frivolous lawsuit and a years-long campaign of frivolous, vexatious and harassing conduct[1], *see* ECF 350, 378, Relator has instead decided to continue this conduct by asking the Court to enforce a non-existent settlement agreement (hereinafter the "Purported Settlement Agreement") over which it lacks jurisdiction and by irrelevantly pointing to and mischaracterizing a standard False Claims Act settlement term to suggest it violates state ethical rules.

Relator's Motion should be denied because this Court does not have jurisdiction to resolve Relator's claims. If the Court finds that it has jurisdiction or is inclined to make a ruling pursuant to Federal Rule of Civil Procedure 62.1, the Court should deny the motion as no settlement agreement has been reached. In the alternative, the Court should defer ruling pending resolution of the appeal and cross-appeal.

The grounds for this Opposition are set forth below.

---

[1] This includes, but is not limited to (i) filing an action without deigning to check easily accessible public information regarding whether his core allegation regarding licensure status was, in fact, correct; (ii) filing common law claims dozens of courts have rejected; (iii) rather than dismissing his lawsuit upon learning his core allegation was publicly wrong, changing his theory to one his own expert rejected; (iv) engaging in discovery abuse by attempting to produce an affidavit long past the close of discovery; (v) engaging in discovery abuse by referencing treatment to a non-federally funded patient, which one circuit has rejected as facially frivolous; and (vi) publicly disclosing the conditions of a prior settlement that contained a confidentiality provision. *See* ECF 350 at 4–5.

## I. THE DISTRICT COURT DOES NOT HAVE JURISDICTION TO RESOLVE RELATOR'S MOTION.

The Court does not have jurisdiction to resolve Relator's motion because (i) jurisdiction has transferred to the Fifth Circuit and (ii) the Court has already entered judgment in this case. As Relator acknowledges, "there is a question as to whether this Court currently has jurisdiction to resolve this motion" due to the "notices of appeal and cross-appeal." ECF 399 at 4. But the case law makes clear that the answer to this question is "No."

### A. Jurisdiction Over This Action Was Transferred Upon Notice of Appeal.

*First*, jurisdiction over this action transferred to the Fifth Circuit upon Relator filing the notice of appeal in this action when settlement discussions broke down. It is "generally understood that a federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously." *Griggs v. Provident Consumer Disc. Co*., 459 U.S. 56, 58 (1982); *see also Allard v. Anderson*, 260 F. App'x 711, 716 (5th Cir. 2007) (finding that it is "well established that once a party files a notice of appeal, the district court no longer has jurisdiction over the case"); *Lopez Dominguez v. Gulf Coast Marine & Assocs., Inc.*, 607 F.3d 1066, 1073–74 (5th Cir. 2010).

The Fifth Circuit has recognized an exception to this general rule whereby a district court retains jurisdiction "in aid of the appeal until the case is remanded to it by the appellate court, or to correct clerical errors under Rule 60(a)." *Travelers Ins. Co. v. Liljeberg Enterprises, Inc*., 38 F.3d 1404, 1408 n.3 (5th Cir. 1994) (citing 7 James W. Moore et al., Moore's Federal Practice, ¶ 60.30[2] (2d ed. 1995)). But jurisdiction is only retained in aid of the appeal when ruling on a motion would act in *furtherance* of the appeal—not when ruling on a motion would "alter the status of the case as it rests before the Court of Appeals." *Dayton Indep. School Dist. v. United States Mineral Prods. Co*., 906 F.2d 1059, 1063 (5th Cir. 1990); *see also Winchester v. U.S. Att'y*

*for S. Dist. of Texas*, 68 F.3d 947, 949 (5th Cir. 1995) (noting that, in *Travelers Ins. Co.*, the Fifth Circuit "recognized [ ] the power of the district court to consider on the merits and *deny* a 60(b) motion filed after a notice of appeal, because the district court's action is in furtherance of the appeal" but emphasizing that a Rule 60(b) motion could not be *granted* without leave of the court of appeals) (emphasis in original) (quoting *Travelers Ins. Co.*, 38 F.3d at 1408 n.3) (internal quotation marks omitted)).[2]

Here, enforcing a settlement agreement would certainly alter the status of this case before the Fifth Circuit, and, thus, the Court lacks jurisdiction to rule on Relator's Motion. *See Dayton Indep. School Dist.*, 906 F.2d at 1063; *see also, e.g., Thornhill, LLC v. NVR, In*c., No. CIV.A. 3:05CV36, 2006 WL 3717917, at *2 (N.D.W. Va. Dec. 14, 2006) (explaining that *Griggs*' "jurisdictional transfer principle prevents a district court from taking any action that would impermissibly 'alter the status of the case as it rests before the Court of Appeals,'" and holding that because "[i]f this Court were to enforce the purported settlement agreement . . . no issues would remain for appeal," the Court "does not have subject matter jurisdiction to consider the [ ] motion to enforce settlement" (quoting *Dayton Indep. School Dist.*, 906 F.2d at 1063)).

## B.    The District Court No Longer Retains Jurisdiction Over the Purported "Settlement Agreement" in Any Event.

*Second*, while, as set forth below, there is plainly no settlement agreement for the Court to enforce, the Court, in any event, lacks jurisdiction to enforce the Purported Settlement Agreement.

---

[2] *See also* 20 Moore's Federal Practice, ¶ 303.32[b][ii] (Matthew Bender & Co., 2024) (providing examples of "steps that will aid the circuit court's handling of the appeal," citing to steps authorized by Fed. R. App. P. 7 (supersedeas bond), 8 (stay pending appeal), 9(b) (applications for release), 10(e), 11(e) (preparation and transmission of record), 22(b) (certificate of appealability), 24(a) (leave to proceed in forma pauperis) and 39(e) (taxing costs associated with appeal), as well as citing to *denials* of Rule 60(b) motions).

"Federal courts have the inherent power to enforce settlement agreements *entered into by the parties litigant in a pending case*." *White Farm Equip. Co. v. Kupcho*, 792 F.2d 526, 529 (5th Cir. 1986) (emphasis added). But, like here, when there is no longer any litigation pending before a federal court where a party is moving to enforce settlement, "enforcement of [a] settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381–82 (1994) (finding federal court did not retain jurisdiction, including ancillary jurisdiction, over motion to enforce settlement agreement following dismissal of federal lawsuit, explaining, "The short of the matter is this: The suit involves a claim for breach of a contract, part of the consideration for which was dismissal of an earlier federal suit. No federal statute makes that connection (if it constitutionally could) the basis for federal-court jurisdiction over the contract dispute. The facts to be determined with regard to such alleged breaches of contract are quite separate from the facts to be determined in the principal suit, and automatic jurisdiction over such contracts is in no way essential to the conduct of federal-court business"); *see also Peacock v. Thomas*, 516 U.S. 349, 355–60 (1996) (finding federal court did not retain jurisdiction, including ancillary jurisdiction, over claim to pierce the corporate veil following entry of judgment in federal lawsuit); *Zimmerman v. City of Austin, Texas*, 969 F.3d 564, 566–69 (5th Cir. 2020) (rather than finding district court could continue to rely on federal question jurisdiction, finding, instead, district court would need to retain ancillary jurisdiction over motion for attorneys' fees pursuant to 42 U.S.C. § 1988(b) where (i) district court entered judgment on the merits of the underlying § 1983 claim; (ii) the Fifth Circuit affirmed judgment on the merits and declined to rule on the question of whether plaintiff-appellant waived his right to attorneys' fees; (iii) plaintiff-appellant then moved district court for attorneys' fees incurred at trial and on appeal; and (iv) district court denied fee request due to waiver). The

Supreme Court has recognized one exception whereby a district court can retain jurisdiction by conditioning dismissal on compliance with the terms of the settlement agreement, noting that "[i]f the parties *wish* to provide for the court's enforcement of a dismissal-producing settlement agreement, they can seek to do so" by requesting that the district court "embody the settlement contract" or otherwise state that it is retaining jurisdiction over the settlement contract in its order dismissing the case. *Kokkonen*, 511 U.S. at 381–82.

Given the facts at issue in this action, it is clear that the Court does not retain jurisdiction over Relator's Motion. Here, judgment has been entered both with respect to the merits of the False Claims Act action, *see* ECF 326, and with respect to attorneys' fees, *see* ECF 378. *Accord* Fed. R. Civ. P. 58. As such, enforcement of any purported settlement agreement is left to a state court, unless there is an independent basis for federal jurisdiction. *See Kokkonen*, 511 U.S. at 381–82. Relator never attempts to suggest there is such a basis. Rather, Relator asserts that the issue of whether an enforceable settlement agreement has been reached is "determined by reference to state substantive law governing contracts generally," ECF 399 at 5 (quoting *White Farm Equip. Co.*, 792 F.2d at 529), and accordingly analyzes enforceability of the agreement under Mississippi law. To properly exercise jurisdiction over a claim resting on state contract law, the Court would need to retain ancillary jurisdiction. *See Kokkonen*, 511 U.S. at 381–82; *see also Goudelock v. McLemore*, 985 F. Supp. 2d 816, 818 (N.D. Miss. 2013) (explaining that, where the plaintiff moved to enforce settlement, "the claim the current parties assert is a state law contract claim to enforce the Settlement Agreement").[3]

---

[3] With respect to other bases for subject-matter jurisdiction, we note that Relator has never asserted that the parties are diverse. Assuming, *arguendo*, that the parties are, in fact, diverse, which, given the existence of federal question jurisdiction over the False Claims Act allegations in this lawsuit, the Court has never had cause to analyze, this is still not sufficient for *this* Court to retain jurisdiction over enforcement of the settlement agreement. *See Goudelock*, 985 F. Supp. 2d

But, in light of Supreme Court precedent, it is clear that the Court would *not* retain ancillary jurisdiction over Relator's Motion to Enforce Settlement following entry of judgment in this case. *See Kokkonen*, 511 U.S. at 379–82 (explaining that the "heads" of ancillary jurisdiction are not satisfied when moving to enforce settlement post-resolution of the case because (i) the facts underlying the claims in the original action and the motion to enforce the settlement agreement "have nothing to do with each other" rather than being "factually interdependent" and (ii) ancillary enforcement jurisdiction is not needed because "the only order here was that the suit be dismissed, a disposition that is in no way flouted or imperiled by the alleged breach of the settlement agreement" (citations omitted)); *see also Peacock*, 516 U.S. at 359–60 (finding the district court lacked ancillary jurisdiction over a subsequent claim where a party "has obtained a valid federal judgment," cautioning that "[a]ncillary enforcement jurisdiction is, at its core, a creature of necessity"); *Zimmerman*, 969 F.3d at 568 (concluding that ancillary jurisdiction based on claims being factually interdependent "would have 'disappear[ed]' with entry of judgment").[4] Moreover, it is indisputable that the Court did not expressly retain jurisdiction of the Purported Settlement Agreement in this case, nor does Relator assert that the parties requested that the Court do so.

---

at 818 (denying plaintiff's motion to enforce settlement post-dismissal despite the parties' arguments that diversity jurisdiction continued to exist, stating, "If there is, in fact, jurisdiction over the contract claim under 28 U.S.C. § 1332(a), the parties may bring an action asserting the state law claim in federal district court, but because the facts surrounding a breach of contract claim are largely independent from the facts of the original suit, it is more appropriately brought as a new contract action seeking to enforce the Settlement Agreement"). While Relator moves to enforce settlement under state and not federal law, the same logic would apply to federal question jurisdiction—*i.e.*, that because the facts are not interdependent, a motion to enforce settlement is a breach of contract claim more appropriately brought as a new action.

[4] The court in *Zimmerman* found, in contrast, that ancillary enforcement jurisdiction was retained with respect to ruling on attorneys' fees post-judgment, distinguishing the recognized ability of courts to retain ancillary jurisdiction to rule on "collateral issues" such as costs and attorney's fees from their inability to enforce settlement agreements post-dismissal. *Zimmerman*, 969 F.3d at 569.

In sum, the Court does not retain jurisdiction over Relator's Motion to Enforce Settlement, and, hence, the Motion should be denied.

## II. THERE IS NO ENFORCEABLE SETTLEMENT AGREEMENT.

As Relator's own arguments and exhibits demonstrate, Relator's claim that an "enforceable settlement agreement has been created" is meritless and distorts the principles of contract law because there was plainly no meeting of the minds. Relator's argument that, by agreeing to a settlement amount conditioned, on its face, on material written terms to be further negotiated by the parties, the parties had a "clear and unambiguous" meeting of the minds, ECF 399 at 7–9, is not only unsupported by law but belied by his Counsel's own words throughout the ongoing settlement negotiations, which indicate that he is fully aware that no final, enforceable settlement agreement has been reached. Relator's Motion is nothing but an attempt to create a settlement agreement where none exists to circumvent good-faith settlement negotiations and obviate the need to litigate an appeal that is meritless. *See* ECF 393. As such, the Court should deny his Motion to Enforce Settlement.

It is well established that settlement agreements are contracts and that claims of the existence of a settlement agreement are evaluated under contract law principles. *See McManus v. Howard*, 569 So. 2d 1213, 1215 (Miss. 1990); *East v. East*, 493 So. 2d 927, 931–32 (Miss. 1986).

As a preliminary matter, when one party responds to the other's offer with a proposal that contains additional or different terms, "it is a counter-offer and serves as a rejection." *Thompson v. White*, 328 So. 3d 210, 215 (Miss. Ct. App. 2021) (citing Restatement (Second) of Contracts § 39 (Am. L. Inst. 1981)); *see also Hinds Cnty. Econ. Dev. Dist. v. W & G Props., LLC*, 203 So. 3d 49, 51 (¶ 7) (Miss. Ct. App. 2016) (noting that when "[a] reply to an offer . . . purports to accept but is conditional on the offeror's assent to terms additional to or different from those offered[, it] is . . . a counter-offer" (internal citations omitted)). Mississippi courts have stated that "[a] rejected

offer cannot constitute an enforceable promise" because "[w]hen an offer has been rejected, it ceases to exist." *Mooneyham v. Progressive Gulf Ins. Co.*, 910 So. 2d 1223, 1226 (¶ 11) (Miss. Ct. App. 2005). When a rejection occurs and the offeror subsequently declares that the original offer "will continue in effect despite [the] rejection[,]" the offeror effectively makes a new offer that, again, must be accepted. *Thompson*, 328 So. 3d at 216–17 (quoting Restatement (Second) of Contracts § 38 (Am. L. Inst. 1981)).

Consideration and a meeting of the minds between competent contracting parties are the essential elements of a valid, binding agreement. *Brooks v. Brooks*, 145 Miss. 845, 850 (1927); *Viverette v. State Highway Comm'n of Miss.*, 656 So. 2d 102, 102 (Miss. 1995). Under Mississippi law, it is the burden of the party claiming benefit from the settlement to prove by a preponderance of the evidence that there was a meeting of the minds. *Hastings v. Guillot*, 825 So. 2d 20, 23 (Miss. 2002). In the context of negotiations conducted by written correspondence, such as by email, one party must make a proposition and the other accept the same as made; in other words, "the minds of the parties must meet upon a definite proposition," and the terms must be identical. *Morris v. Liberty Mut. Ins. Co.*, 659 F. Supp. 201, 204 (N.D. Miss. 1987).

Parties can simply engage in settlement discussions without agreeing to be bound by an agreement as a whole. *See, e.g.*, *Logan v. RedMed, LLC*, 377 So. 3d 956, 966 (Miss. 2024) (holding that the "parties indeed agreed to some material terms on their way to forming what might have become a binding contract, but they never agreed to be bound by the agreement as a whole"); *see also Thompson*, 328 So. 3d at 216 ("[A] manifestation of willingness to enter into a bargain is not an offer if the person to whom it is addressed knows or has reason to know that the person making it does not intend to conclude a bargain until he has made a further manifestation of assent.")

8

(quoting Restatement (Second) of Contracts § 26 (Am. L. Inst. 1981)) (internal quotation marks omitted)).

A "contract to make a contract" is not an enforceable agreement. *See J. Russell Flowers, Inc. v. Itel Corp.*, 495 F. Supp. 88, 92 (N.D. Miss. 1980) (finding correspondence did not constitute a binding settlement agreement and that, "even if it was a preliminary agreement or 'contract to make a contract,' [it] cannot be given legal effect"). When determining whether the parties intend to be bound by a preliminary agreement, courts look to "whether the contract is usually one put in writing; whether there are few or many details; whether the amount involved is large or small; whether it requires a formal writing for a full expression of the covenants and promises; and whether the negotiations themselves indicate that a written draft is contemplated as the final conclusion of the negotiations." *Id.* at 91–92 (citation omitted).

Courts also look to other evidence of the parties' "words, acts, and outward expressions" to determine whether there has been mutual assent to be bound by an agreement as a whole. *Logan*, 377 So. 3d at 965 (citing 17 C.J.S. Contracts § 32). For instance, courts have found the following contextual clues to indicate that mutual assent or a "meeting of the minds" did not occur: (i) the lack of a signed settlement agreement, *see, e.g., id.*; (ii) statements characterizing a proposed settlement agreement and provisions therein as "proposed" or "draft," *see, e.g., Howard v. TotalFina E & P USA, Inc.*, 899 So. 2d 882, 890 (¶ 22) (Miss. 2005); (iii) parties continuing to engage in negotiation over material terms, *see, e.g., Gulf Coast Hospice LLC v. LHC Grp. Inc.*, 273 So. 3d 721, 736 (¶ 42) (Miss. 2019) (deeming one party's assertion that a contract existed based on his "unilateral decision" an acquisition was complete and claim that "nothing remained to be negotiated" to be "not supported by the record" where the parties subsequently continued to engage in due diligence and negotiations); (iv) "[c]ontinual redrafting of the specific terms of a

proposed agreement," *id.* at 739 (¶ 53); (v) statements indicating that all terms of a settlement agreement had not yet been worked out because questions "continue[d] to remain unanswered with regard to the purported settlement agreement," *Howard*, 899 So. 2d at 889–90 (¶¶ 21–22); (vi) statements by counsel indicating that their client had concerns about the terms of a settlement or a party's behavior during ongoing negotiations, *see, e.g., Thompson*, 328 So. 3d at 215, 217 (pointing to an email in which counsel for one of the parties wrote, "[M]y clients are concerned about the lack of transparency regarding Mr. Thompson's law firm," as evidence of lack of mutual assent); and (vii) an attorney's "question[ing] of whether previously discussed terms were enforceable," *Logan*, 377 So. 3d at 965.

Here, Relator claims an enforceable settlement agreement was created when, on August 12, 2024, (i) Defendants' counsel Robert Salcido sent an email stating that "[t]he payment amount we will need to settle is $1,000,000, exclusive of any costs previously received" (hereinafter "Defendants' Purported Counteroffer"); and (ii) Relator's Counsel Robert McDuff responded, "OK" and attached a "draft stipulation of dismissal and proposed order that recited the terms of the settlement" (hereinafter "Relator's Purported Acceptance"). ECF 398-3 at 2; ECF 398-5; ECF 398-6; ECF 399 at 8–9. But this is wholly insufficient to constitute a settlement agreement under basic contract law principles.

*First*, Relator's Purported Acceptance was not an "acceptance" at all, but rather itself a counteroffer. The only term definitively set forth in Defendants' Purported Counteroffer was the payment amount. But Relator's Purported Acceptance included material, additional settlement terms he proposed to present to the Court—namely, what, precisely, Defendants would get in consideration for such a settlement. *See* ECF 398-5 at 2 (proposing $1,000,000 as a "compromise amount to resolve the prior court-ordered payment of a larger amount of attorneys' fees to the

Defendants plus interest" and stating that "[b]oth parties agree not to appeal the attorneys fee award" (subsequent redline omitted)). These are obviously material terms, as consideration is an essential element of a contract. *See Brooks*, 145 Miss. at 850.[5] As such, Relator's Purported Acceptance was, in actual fact, a counteroffer that had the effect of rejecting Defendants' Purported Counteroffer, and thereby creating no enforceable agreement. *See Thompson*, 328 So. 3d at 215; *see also Hinds Cnty. Econ. Dev. Dist.*, 203 So. 3d at 51 (¶ 7). And Relator does not contend, nor can he, that Defendants accepted his counteroffer, as Defendants responded with additional and different terms material to settlement. *See* ECF 398-4 at 4; ECF 399 at 9–10.

*Second*, even assuming that Relator's Purported Acceptance created a preliminary agreement, which it did not, it is clear that the parties did not intend to be bound by such an agreement, and, thus, it is unenforceable. Here, (i) this type of contract is usually one that is put in writing, *see* Salcido Decl. at ¶¶ 3, 6; (ii) there were few details in the purported "preliminary agreement"—just the settlement amount and statement that the parties would forego appeals related to the amount of settlement—as compared to the many details in the draft settlement agreement circulated to Mr. McDuff by Defendants' Counsel on August 12, 2024 in response to

---

[5] Beyond the fact that there are facially obvious differences between the terms in Defendants' Purported Counteroffer (simply identifying that the amount "we will need to settle is $1,000,000") and the terms in Relator's Purported Acceptance, there are at least two additional pieces of support for the fact that the terms in Relator's Purported Acceptance are additional or different and therefore constituted a counteroffer. *First*, Mr. McDuff's earlier counteroffer at 7:33 AM states that "Cameron [Jehl] agrees to forego the appeal and will pay the slightly reduced amount of $1 million instead of the larger amount currently owed." ECF 398-2 at 2. But Relator's Purported Acceptance requires *both* parties to agree not to appeal the attorneys' fee award. ECF 398-5 at 2. Obviously, asking Defendants to relinquish their legal rights to appeal in consideration of settlement—particularly given that Defendants have filed a cross-appeal in this case. *See* ECF 397. *Second*, as set forth in Exhibit 1, Declaration of Robert Salcido (hereinafter "Salcido Decl."), the term "to settle," in a False Claims Act context, generally refers to drafting a written agreement that will contain broad, negotiated releases related to False Claims Act and other types of liability—not just a document wherein the parties have agreed solely to forego appeal. Salcido Decl. at ¶ 7; *see also* ECF 398-8 at 2.

Relator's Purported Acceptance, *see* ECF 398-7[6]; (iii) a settlement agreement in a False Claims Act case requires a formal writing for a full expression of the covenants and promises, *see* Salcido Decl. at ¶¶ 3, 6; and (iv) the negotiations plainly indicate that a written draft is contemplated as the final conclusion of negotiations, *see* ECF 398-2 at 2 (wherein Mr. McDuff inquires of Mr. Salcido, "Are you all in a position to draft the order *and any other papers necessary to memorialize[] this agreement*?" (emphasis added)); ECF 399 at 8 (wherein Relator explains that Mr. McDuff sent a "draft stipulation of dismissal and proposed order" to Defendants); ECF 398-4 at 4 (wherein Defendants' Counsel Ms. Gerry provides proposed edits to both documents along with a proposed draft settlement agreement to memorialize the agreement). In sum, under state contract law, even assuming a preliminary agreement was reached, it "cannot be given legal effect." *J. Russell Flowers, Inc.*, 495 F. Supp. at 92.

*Finally*, the parties' "words, acts, and outward expressions" over the course of settlement negotiations demonstrate that there has been no mutual assent to be bound by any agreement as a whole. *Logan*, 377 So. 3d at 965. Namely, (i) there is no signed settlement agreement, *see, e.g., id.*; (ii) both parties have consistently characterized settlement documents as "proposed" or "draft," *see* ECF 398-2 at 2; ECF 399 at 8; ECF 398-4 at 4; *Howard*, 899 So. 2d at 890 (¶ 22); (iii) the parties have both clearly continued to negotiate settlement long following Relator's Purported Acceptance, *see* ECF 399 at 9–15; *Gulf Coast Hospice*, 273 So. 3d at 736 (¶ 42); (iv) there has been continual redrafting of the specific terms of a proposed settlement agreement, *see* ECF 398-3; ECF 398-4; ECF 398-5; ECF 398-6; ECF 398-7; ECF 398-8; ECF 398-9; ECF 398-10; *Gulf*

---

[6] Defendants' initial draft agreement consists of 14 paragraphs, which include, but are not limited to, details as to the timing of payment, the scope of releases (which are much broader and much more detailed than simply agreeing to forego appeal), and a representation that no other actions are pending against Defendants. *See* ECF 398-7.

*Coast Hospice*, 273 So. 3d at 739 (¶ 53); (v) the parties have both repeatedly represented that questions remain unanswered with respect to the material term of the settlement, *see* ECF 398-4; ECF 398-8; ECF 398-9; ECF 398-10; ECF 399 at 9–15; *Howard*, 899 So. 2d at 889–90; (vi) both parties have indicated client concerns regarding the terms of settlement and behavior of parties, *see* ECF 398-4 at 2 (Mr. McDuff stating, "There are other things in the agreement that we have concerns about and that require further discussion"), 3 (Ms. Gerry asking, "Are you able to ask whether they have any pending lawsuits against Defendants or their affiliates? It is material to us insofar as our client's intent in entering into this agreement is to achieve peace going forward"); ECF 398-9 (Ms. Gerry stating, "[U]ltimately, what's material to our clients in terms of being able to agree to any settlement is knowing whether Mr. Jehl, in his individual or legal capacity, or any of his attorneys have any pending actions against defendants or any of their affiliates"); *Thompson*, 328 So. 3d at 215, 217; and (vii) Relator has questioned Defendants as to whether proposed terms are enforceable, *see* ECF 398 at 3–6; ECF 399 at 15–16; *Logan*, 377 So. 3d at 965.

The parties may have agreed to engage in further discussions with regard to a settlement agreement—but there is always a chance that settlement discussions might break down, and that a final agreement is not reached. That is precisely what happened here.[7] Relator cannot rewrite history—and effectively ask the Court to draft a settlement agreement to Relator's liking—where

---

[7] As Mr. Salcido explained on August 12, 2024 when Mr. McDuff informed Defendants' Counsel that he was filing a notice of appeal after the parties could not agree on the terms of a settlement agreement:

> We all tried the best we could to get this done. We only learned of the possibility of settlement this morning, about 12 hours ago when sufficient funds were proposed and accepted. I have done nothing but False Claims Act actions for 36 years and the terms we proposed with Relator to settle are present in every FCA case I have done in 36 years so there are no surprises there (FCA settlements are public so you can pull some of them to confirm my statement). In any event, as long as our client permits, we are more than pleased to keep the dialogue going.

ECF 398-8 at 2.

no mutual assent to a final settlement agreement has been reached. Relator's counsel also cannot hide from, or ask the Court to ignore, his own statements and correspondence which clearly show that he was aware that a final settlement agreement had not been reached. Relator's Motion is absurd, meritless, and at odds with basic principles of contract law, and should be denied.

## III. DEFENDANTS' PROPOSED SETTLEMENT TERM IS NOT A VIOLATION OF MISSISSIPPI ETHICAL RULES

Relator's allegation that a proposed settlement term pursuant to which Relator and Counsel for Relator must "represent that they have filed no other [currently pending] lawsuits or initiated any other proceedings" against Defendants or their Affiliates, *see* ECF 398-7 at 4 (initial proposed term in draft settlement agreement), breaches Mississippi ethical rules is meritless, vexatious, harassing and brought in bad faith. *See* ECF 399 at 15–16. As an initial matter, as he acknowledges, Relator makes these claims not with respect to the Purported Settlement Agreement he is moving the Court to enforce, but with respect to a settlement term Defendants have simply proposed. *Id.* He does not move the Court for relief, and his allegations are thus entirely irrelevant to his Motion.

In any event, Defendants' proposed settlement term is clearly not a violation of Mississippi ethical rules, and Relator's attempt to suggest otherwise is meritless. As Defendants very clearly explained when Relator advanced his baseless accusation via email:

> As to your "upon reflection" contention regarding Mississippi Rule of Professional Conduct 5.6(b)—despite the fact that we have addressed this in identical fashion verbally, unequivocally, on at least two occasions upon your raising the same point in settlement discussions—let us be clear so that additional frivolous litigation is not initiated. DEFENDANTS ARE NOT SEEKING TO RESTRICT ANY LAWYER'S RIGHT TO PRACTICE AS PART OF A SETTLEMENT. Any lawyer can litigate against any party that the lawyer wishes to pursue. Nothing in any discussion or in any draft settlement agreement seeks to restrict a lawyer's right to practice, as you know. All that is requested here is notice. The reason that notice is important, as you have been informed continuously, is because Defendants want to know whether by settling—at least as of the date of settlement—no other actions against them by your client, or his agents, exist (in which case settlement is a viable

option), or whether your client or agents have additional litigation pending against Defendants. If so, and if settlement does not end disputes among the parties, Defendants would prefer to proceed with this litigation and recover the full amount (more than $2 million) that they believe they are entitled to recover here based on the existing frivolous action to help them to defend against the other actions that your client, and/or his agents, have filed. Having such notice is clearly reasonable, and the fact that you have refused to provide a response is alarming.

ECF 398-10 at 1–2.

As Relator correctly states, "[e]ither Jehl Law Group PLLC and/or Neal & Harwell have a case against one of the hundreds of unnamed affiliates or they do not." ECF 399 at 15.[8] If they

---

[8] Relator places emphasis on the idea that these affiliates are "unnamed," arguing Defendants "hinge settlement on whether there is pending litigation between other parties who *might be represented* by the Jehl Law Group PLLC or Neal & Harwell against any one of five hundred (500) other *unnamed* business entities who *might be 'affiliated'* with the Defendants." ECF 399 at 15 (emphasis added). As a preliminary matter, because, for all of the reasons stated herein, there was no contract and there were no ethical concerns with such a condition, it does not matter what proposed settlement conditions Defendants advanced that Relator rejected.

But, as Relator's exhibits clearly reflect, Defendants and Relator were negotiating in good faith, by email and phone, an effective solution to ensure that parties who *were* in fact represented by Relator or Relator's counsel did not have pending claims against *identified* business entities who *are* affiliated. *See* ECF 398-9 at 2 (Ms. Gerry explaining, on August 13, 2024, that "ultimately, what's material to our clients in terms of being able to agree to any settlement is knowing whether Mr. Jehl, in his individual or legal capacity, or any of his attorneys have any pending actions against defendants or any of their affiliates. Happy to discuss this further by phone if that would be helpful," and Mr. McDuff stating, on August 14, 2024, "[I]f it's not easy for the companies to check themselves, let me know who the affiliates are that you're concerned about and I will try to find out. If it's the just the 3 defendants, I can check that. But it will be easier for me if the companies can just check themselves"); ECF 398-10 at 6 (Ms. Gerry writing, on August 19, 2024, "Given that there are over 300 entities our clients own or control, they have asked that Mr. Jehl and Mr. Jehl's counsel provide a list of entities against whom they have any pending claims. As we noted previously, it is crucial for our clients to know that they are truly achieving peace with this settlement. *Once we learn what you folks can reasonably offer* in this vein, we can communicate that to our clients to see whether we can come to a final resolution") (emphasis added); ECF 398-10 at 4 (Mr. McDuff writing, on September 8, 2024, in reference to "recent phone conversations," "I have informed you as a courtesy that neither Jehl Law Group PLLC nor Neal & Harwell have any pending cases against your three clients and do not think they have any against their hundreds of affiliates. I have advised [Ms. Gerry] that if you give us a list of the 300 plus affiliates, Cameron will, as a further courtesy, review it to determine if he has suits pending against any of them"). Ultimately, Relator determined not to pursue this negotiation any further, terminated this process, and, instead, elected to seek to enforce a non-existent contract in this Court as a preferred option.

do, Defendants will not enter into settlement and will continue to litigate the appeal and cross-appeal pending before the Fifth Circuit. Defendants are aware of no rule, regulation or standard requiring them to settle a claim with Relator for the over $1 million in attorneys' fees he owes them for bringing a patently frivolous lawsuit before this Court despite their inability to confirm with any confidence he would not engage in another campaign of frivolous, vexatious and harassing conduct against one of their affiliates. Defendants' proposed settlement term is a common one in False Claims Act settlements, *see* Salcido Decl. ¶¶ 8–9, and such a notice requirement simply is not a "restriction on the lawyer's right to practice"—"effectively" or otherwise. *See* Miss. R. Pro. Cond. 5.6(b); Tenn. Sup. Ct. R. 8, RPC 5.6(b); ECF 399 at 15–16.

The draft provision at issue initially asked that Relator and Counsel for Relator confirm "that they have filed no other lawsuits or initiated any other proceedings against Defendants that are currently pending other than the Civil Action." ECF 399 at 9-10. On September 9, 2024, counsel for Defendants clarified that a condition of settlement is whether Relator or his agents were currently "undertaking additional lawsuits against Defendants" so "the parties [can] assure themselves that a settlement will indeed end all litigation between the parties." *Id.* at 14. Further, counsel for Defendants confirmed that "Defendants are not seeking to restrict any lawyer's right to practice as part of a settlement." *Id.*

The proposed release here does not implicate the policy concerns which underlie Mississippi Rule of Professional Conduct 5.6(b). It poses no threat to the rights of potential future claimants or restricts the rights of counsel to represent claimants. Instead, it only concerns *currently pending litigation* against the Defendants—a concern most, if not all, defendants in settlement discussions share. If counsel for Relator would like to request additional changes to the

16

draft release language, he should do so through continued settlement discussions—not through a Motion that undercuts the judicial efficiencies that favor settlement in the first place.

## IV. CONCLUSION

Rather than continue through a good-faith negotiation process, Relator has decided to supplant this process by moving the Court to enforce a settlement agreement that the Court does not have jurisdiction to enforce and that the plain facts of the correspondence between the parties, as set forth in Relator's own Motion and exhibits, demonstrate does not exist. Relator's arguments are meritless and distort the basic principles of civil procedure, contract, and constitutional law.

As such, Defendants respectfully urge the Court to deny the Relator's Motion on the basis that it lacks jurisdiction to enforce a settlement agreement before the parties or on the basis that there is no enforceable settlement agreement between the parties. In the alternative, Defendants ask that the Court defer ruling on this Motion during the pendency of the Fifth Circuit appeal so that litigating Relator's meritless Motion does not derail the appellate process that the Relator, himself, invoked.

Date: September 26, 2024                    Respectfully submitted,


                                            */s/ Margaret Sams Gratz*
                                            Margaret Sams Gratz, Esq. (MSB # 99231)
                                            Gratz & Gratz, P.A.
                                            312 North Green St.
                                            Tupelo, MS 38802
                                            Tel: (662) 844-5531
                                            Fax: (662) 844-8747
                                            margaret@gratzandgratz.com

                                            Robert Salcido (*pro hac vice*)
                                            D.C. Bar No. 447951
                                            California Bar No. 139138
                                            Akin Gump Strauss Hauer & Feld LLP

2001 K. Street, N.W.
Washington, D.C. 20006
Telephone: 202-887-4000
Facsimile: 202-887-4288
rsalcido@akingump.com

***Attorneys for Defendants***
**GGNSC Southaven LLC; GGNSC
Administrative Services LLC; GGNSC
Clinical Services**

## CERTIFICATE OF SERVICE

This is to certify that I, Robert Salcido, one of the attorneys for GGNSC Southaven, LLC individually and on behalf of all Defendants have this day furnished a true and correct copy of the above and foregoing **MEMORANDUM OF LAW IN SUPPORT OF RESPONSE IN OPPOSITION TO RELATOR'S MOTION TO ENFORCE SETTLEMENT AGREEMENT AND DISTRIBUTE THE APPEAL BOND FUNDS IN THE COURT'S REGISTRY IN ACCORDANCE WITH THE SETTLEMENT** to the following via ECF filing:

Robert B. McDuff (MSB #2532)
Law Office of Robert B. McDuff
767 North Congress Street
Jackson, MS 39202
Telephone: 601.259.8484
rbm@mcdufflaw.com

Philip N. Elbert, Esq.
Lisa P. Binder, Esq.
Nathan C. Sanders, Esq.
Neal & Harwell, PLC
1201 Demonbreun St., Suite 1000
Nashville, TN 37203
pelbert@nealharwell.com
lbinder@nealharwell.com
nsanders@nealharwell.com

William O. Luckett, Jr., Esq.
Luckett Law Firm, P.A.
Post Office Drawer 1000
Clarksdale, MS 38614
wol@luckettlawfirm.com

Richard Runft Barrett
Law Offices of Richard R Barrett, PLLC
2086 Old Taylor Road
Ste 1011
Oxford, MS 38655
662-380-5018
Fax: 866-430-5459
Email: rrb@rrblawfirm.net

This 26th day of September 2024.

*/s/ Robert Salcido*
ROBERT SALCIDO